F2O3SILC                    Arraignment

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                               15 CR 93 (VEC)

SHELDON SILVER,

                 Defendant.

------------------------------x
                                            New York, N.Y.
                                            February 24, 2015
                                            3:00 p.m.


Before:

                 HON. VALERIE E. CAPRONI,

                                            District Judge


                       APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
CARRIE H. COHEN
HOWARD S. MASTER
ANDREW D. GOLDSTEIN
JAMES McDONALD
     Assistant United States Attorneys

MOLOLAMKEN, LLP
     Attorneys for Defendant
STEVEN F. MOLO
JUSTIN V. SHUR
  -and-
STROOCK & STROOCK & LAVAN LLP
     Attorneys for Defendant
JOEL COHEN
```

1            THE DEPUTY CLERK:  United States of America v. Sheldon
2    Silver.
3            THE COURT:  Good afternoon, everybody.  Please be
4    seated.
5            THE DEPUTY CLERK:  All counsel, please identify
6    yourself for the record.
7            MS. COHEN:  Good afternoon, your Honor.  Carrie Cohen,
8    Howard Master, Andrew Goldstein, and James McDonald for the
9    government.
10           THE COURT:  Good afternoon.
11           MR. MOLO:  Good afternoon, Judge.  Steven Molo and
12   Justin Shur from MoloLamken, and Joel Cohen from Stroock for
13   Mr. Silver who is appearing before the Court this afternoon.
14           THE COURT:  Good afternoon.  We are here for an
15   arraignment on the indictment, is that correct?
16           MR. MOLO:  That's correct, your Honor.
17           THE COURT:  Mr. Silver, have you had an opportunity to
18   read the indictment?
19           MR. MOLO:  He has.
20           THE DEFENDANT:  Yes.
21           THE COURT:  Have you discussed it with your attorney?
22           THE DEFENDANT:  Yes, I have.
23           THE COURT:  Do you waive a public reading of the
24   indictment?
25           MR. MOLO:  We waive the public reading of the

1    indictment and enter a plea of not guilty to all three counts,
2    your Honor.
3            THE COURT:  Terrific.  How much discovery is there in
4    the case?
5            MS. COHEN:  There is a substantial amount of
6    discovery, although it is not overly voluminous.  The
7    government is in the process of putting all the discovery on a
8    hard drive.  We talked with defense counsel, they are going to
9    get us a hard drive today or tomorrow.  We expect to be able to
10   put most of the discovery on the hard drive by the end of the
11   week.
12           In the next few weeks there will be some additional
13   discovery we will turn over.  Records we are still gathering
14   and some documents we are still scanning.
15           Just to give your Honor a sense of what the discovery
16   compromises of.  The discovery relates to the two schemes
17   charged in the indictment.  The scheme meaning the one with the
18   asbestos law firm, Weitz & Luxenberg, and the one with the real
19   estate law firm.
20           THE COURT:  Is it basically all documents?
21           MS. COHEN:  Yes, your Honor. In addition, though, the
22   defendant has made public statements about the nature of his
23   outside income that the government contends are false and
24   fraudulent and misleading. Many of those statements were
25   recorded by the Assembly office, because they were statements

1   made to the press and to the public.

2       We have obtained from the Assembly tape recordings of
3   those statements, as well as video of certain statements, and
4   we are uploading those and we will turn those over as well.  So
5   there were some tape recorded statements, and also may be some
6   relevant videos of some certain statements.  But otherwise,
7   your Honor, it is primarily all document evidence.  Bank
8   records, records of checks, requests, letters requesting state
9   grants from the doctor to Sheldon Silver, Sheldon Silver's
10  letter to DOH directing state money, the actual state grant
11  documentation.

12      On the real estate law firm side, there is the payouts
13  to Sheldon Silver through the real estate law firm, in addition
14  to other documents related to real estate, as well as documents
15  related to the Developer 1 and Developer 2 as they are named in
16  the indictment, their business before the State of New York.

17      THE COURT:  But no surreptitious taping?

18      MS. COHEN:  There are no wiretaps, there was no
19  surveillance video, he made no statements upon arrest.  So none
20  of those types of statements.

21      MR. MOLO:  To the government's credit, we sat down
22  yesterday afternoon with them and have an agreed protective
23  order that we're prepared to present to the Court today.

24      As Ms. Cohen said, we provided the government this
25  afternoon, we are doing so, with this hard drive.  And we have

1   been told that as of Friday we'll have a good chunk of the
2   documents and the information and perhaps more.
3              A couple of other things that happened that your Honor
4   should be aware of.  The government told us that they would be
5   willing to provide us with 3500 material no later than two
6   weeks prior to trial.  Hopefully we would get it even sooner
7   than that, but that is something that they've offered.  And I
8   would hope that as to Giglio material, that would be true as
9   well.  There are two people at least in this case that we are
10  aware of so far that have been immunized, so there is material
11  out there that we would like to get that sooner if that's
12  possible.  And there will be some motion practice in the case.
13             THE COURT:  I was just going to start asking you about
14  that.
15             MR. MOLO:  There is going to be some motions we are
16  going to file right now.  We are looking at attacking the
17  indictment itself.
18             Beyond that, there is a motion we're filing this
19  afternoon, Judge, which is to dismiss the indictment based on
20  improper extrajudicial statements by the prosecutor in this
21  case.
22             The case began, this is somewhat of an unusual case.
23  You might be aware, your Honor, that it began by way of
24  complaint.  And at the time of the complaint, there was an
25  arrest, a self-surrender a month ago, a little over a month

1    ago, and it was accompanied by what can be called nothing less

2    than a media firestorm.  And that media firestorm included a

3    press conference that was given by the U.S. attorney on that

4    date, followed by a speech given by the U.S. attorney at New

5    York Law School on the following date, followed by an

6    incredible interview on MSNBC.

7            And in each of these instances, they were not merely

8    announcement of the charges.  These were situations where the

9    U.S. attorney excoriated the defendant, basically deprived him

10   of the presumption of innocence, and extolled his guilt.  And

11   as a result of that, while the grand jury was proceeding, the

12   grand jury was prejudiced.

13           There was no basis for proceeding by way of complaint,

14   other than to prejudice the grand jury proceedings, and to

15   prejudice the jury that would ultimately hear this case.

16           Now, the rules quite clearly set forth, the Local Rule

17   23.1D, the Department of Justice internal rules at 20 CFR 50.2,

18   and the New York Rules of Professional Conduct, prohibit --

19   prohibit -- a prosecutor from making statements that will

20   likely have the effect of prejudicing a defendant's right to a

21   fair trial.

22           And Local Rule 23.1 says, D states that statements

23   about an accused's guilt are presumptively prejudicial.  And

24   the statements here were extraordinary.  Again, it was

25   premeditated, it was orchestrated, and it had the significant

1  effect of compromising the grand jury proceedings, as well as
2  depriving Mr. Silver of his right to a presumption of
3  innocence.
4             So, the District Court has the authority to dismiss
5  the case based on these grounds.  I am not expecting anything
6  like that to happen today, of course.  I expect the government
7  to want to have the opportunity to respond.  I look forward to
8  the response.
9             I look forward to the response that, notwithstanding
10 this was a sealed indictment, a sealed complaint, excuse me, a
11 sealed complaint, and we were told the night before to show up
12 in court, in order to allow Mr. Silver to self-surrender.  That
13 at 1:30 in the morning, before the unsealing of the complaint,
14 news reports began to run on the Internet.  The front page of
15 The New York Times, the front page of other newspapers had
16 stories about Mr. Silver being charged before the complaint was
17 ever unsealed.
18            So, maybe even before we leave court today these four
19 prosecutors could tell us how that happened.
20            But in any event, this document will be filed, this
21 motion will be filed with the Court today.  I would like a
22 little bit more time to file these other motions that will
23 attack the indictment.  And we're ready to proceed because
24 Mr. Silver is not guilty.
25            THE COURT:  Okay.

1            MS. COHEN:  If I could just respond.  There is
2    absolutely nothing unusual about the government proceeding by
3    complaint.  The government has done this in numerous cases,
4    including other public corruption cases.  There was nothing
5    extraordinary.  There was no premeditation.  All of the
6    allegations by Mr. Molo that he just made in court are
7    baseless.  We welcome our opportunity to respond in the
8    paperwork.  If we can have a week or 10 days to respond, I'm
9    sure that will be sufficient.
10           There was certainly no prejudice in the grand jury
11   proceeding by anything.
12           THE COURT:  Okay.  Well, I look forward to seeing your
13   papers.  Just to be clear, I understood Mr. Molo's complaint
14   not to be that you proceeded by way of a complaint.  But that,
15   having decided to proceed by way of a complaint, it was a
16   sealed complaint, yet there was clear press leaks before it was
17   unsealed, according to Mr. Molo, and that there were statements
18   made by the U.S. attorney that were inappropriate under the
19   various rules of professional responsibility and local rules.
20   So I don't think he was complaining per se about proceeding by
21   way of a complaint.
22           MR. MOLO:  That's correct.
23           THE COURT:  So, you only want 10 days, really?
24           MS. COHEN:  Your Honor, we'll take two weeks if you'll
25   give it to us.

1       THE COURT:  I'm happy to give you two weeks.
2       MS. COHEN:  Thank you.
3       THE COURT:  I'd rather give it to you now than have
4  you ask for it in the future.  So the government's brief in
5  response to the motion to dismiss will be due on March 6.
6       How long do you want to reply?
7       MR. MOLO:  If I could have a week, that would be fine.
8       THE COURT:  You can have a week.  So the reply will be
9  due on March 13.  You indicated you're also going to make a
10 separate motion to dismiss the complaint.
11      MR. MOLO:  Yes, your Honor.
12      THE COURT:  On another ground?
13      MR. MOLO:  Under Rule 12 attacking the indictment,
14 yes.
15      THE COURT:  So I don't want to presuppose that your
16 first motion is going to be denied, but let's go ahead and
17 schedule that just in case.
18      MR. MOLO:  I agree.
19      THE COURT:  So how long do you want on that?
20      MR. MOLO:  Would 30 days be appropriate?
21      THE COURT:  30 days from today?
22      MR. MOLO:  Yes.  Or if you want to go 45, or whatever
23 is better for the Court.
24      THE COURT:  At this point in this case I'm willing to
25 accommodate you.

1           MR. MOLO:  Okay.
2           THE COURT:  We're going to stop the clock with your
3   motion you're giving us today.
4           MR. MOLO:  Then give us 45 days.
5           THE COURT:  45 days.  Okay.  So why don't I give you
6   until April 6.
7           Do you want it due on a Monday or Friday?
8           MR. MOLO:  I prefer --
9           THE COURT:  Do you want to torture your associates or
10  not?
11          MR. MOLO:  Now that you've put it that way, the answer
12  is Friday.  I'm not going to torture my associates.
13          THE COURT:  April 3 your larger motion to dismiss the
14  indictment is due.
15          How long does the government want to respond?
16          MS. COHEN:  Three weeks, your Honor.
17          THE COURT:  That will make your response due on
18  April 24.  I'll give you a week for reply which will be May 1.
19          So on the assumption that all of these motions are
20  denied, how long do you think this trial will take?
21          MS. COHEN:  Your Honor, the government believes it can
22  present its direct case in about three weeks.
23          THE COURT:  Three weeks?
24          MS. COHEN:  We expect to call 20 to 25 witnesses,
25  there's numerous documents.  We think it will be about three

1   weeks on our direct case.
2               THE COURT:  How about the defense?
3               MR. MOLO:  On the assumption that no Rule 29 motion is
4   granted.
5               THE COURT:  Let's plan for the worst from your
6   perspective.
7               MR. MOLO:  I assume at this point there would be a
8   defense case, and it would be about a week.
9               THE COURT:  We're talking about a month-long trial.
10  Okay.  Do the parties have a view on when you would like to go
11  to trial?
12              MS. COHEN:  Your Honor, I think given the scheduling
13  your Honor just laid out, the government would be prepared to
14  go to trial in the beginning of June, if that works with your
15  Honor's schedule.
16              THE COURT:  How is that from the defense perspective?
17              MR. MOLO:  Judge, we'll be ready whenever you tell us
18  to be ready.  It seems a little short, given the nature of this
19  case and given the issues that are involved.  I do want to
20  advise the Court there's two complications in the fall I want
21  you to be aware of.  One is the Jewish holidays.
22              THE COURT:  That's always a problem.
23              MR. MOLO:  It is always a problem.
24              THE COURT:  We can work around it.
25              MR. MOLO:  I just want you to be aware Mr. Silver is

1   observant of those holidays.  As well as I start a jury trial
2   out of town in the end of September that will last three weeks.
3   So November.
4           THE COURT:  I would like to do this before you go out
5   of town.  But, you tell me.  You told me that you're pleading
6   not guilty and you want a quick trial.  I thought that's what
7   you told me earlier, so I'm prepared to accommodate you.  If
8   you want fall, I can accommodate you on that too.  You tell me.
9           MR. MOLO:  I think right now November looks like it
10  would be a more appropriate time.  If you want us to come back
11  after the motions have been filed where we've exchanged
12  discovery and check schedules then, that's fine too.  Whatever
13  you want to do.  I think that the fall would be more
14  appropriate given the nature of the issues in the case.  But if
15  it has to be earlier, we'll be ready.
16          THE COURT:  Let's do this.  There are too many moving
17  pieces.  I've got a trial scheduled in September that may or
18  may not happen.  It looks like all the briefs will be done by
19  the beginning of May.
20          So why don't I see you all again on May 7 at
21  2 o'clock.  At that point all your briefing will be in, and
22  we'll have a sense of where we're going with it, and we can set
23  a trial date at that point.
24          MR. MOLO:  Okay.  I think that's fine.  Your Honor,
25  would it be possible to excuse Mr. Silver's presence from that

1  hearing?
2             THE COURT:  If you'll waive his presence, you can.
3             MR. MOLO:  Yes.
4             THE COURT:  Government, any objection?
5             MS. COHEN:  No objection, your Honor.
6             THE COURT:  Okay.
7             MR. MOLO:  Excuse me a moment, your Honor.
8             (Defendant conferring with his counsel)
9             MR. MOLO:  We're just checking the calendar.
10            MS. COHEN:  Your Honor, I believe you might have to
11 just have a brief colloquy with the defendant regarding his
12 waiver of his presence.
13            THE COURT:  Okay.
14            (Pause)
15            MR. MOLO:  We'll keep the May 7 date, and if for any
16 reason there is an issue before then, we'll talk with the
17 government and speak with the clerk.
18            THE COURT:  That's fine.
19            Mr. Silver, you have the right to be at every
20 occurrence in this trial.  Do you agree that if your lawyer
21 says he's waiving your presence, that's okay with you?
22            THE DEFENDANT:  Yes.
23            THE COURT:  Fine.  Anything further from the
24 government?
25            MS. COHEN:  Your Honor, as the defense counsel stated,

1  we do have a proposed protective order on consent that the
2  parties have signed and a cover letter from the government.  We
3  just request to hand this up to the Court.
4           THE COURT:  Okay.
5           MS. COHEN:  Thank you, your Honor.
6           THE COURT:  Anything further from the defense?
7           MR. MOLO:  There is not.  Thank you very much.
8           THE COURT:  Bail has already been set?
9           MR. MOLO:  It has.  The government has agreed to
10 continue the conditions of release.
11          THE COURT:  What are the conditions of release?
12          MR. MOLO:  It is a $200,000 personal recognizance
13 bond, there has been two cosigners to it.  There is some
14 limitations on travel with it.  In fact, if it were up to the
15 Court at this point especially, can we amend to allow travel
16 within the 48 continental United States?  Is there an issue
17 with that?
18          THE COURT:  Work it out with the government.  If it is
19 okay with the government, it is likely to be okay with me.
20          MS. COHEN:  With regard to the Speedy Trial Act, your
21 Honor, I believe we have not seen yet the motion, I don't
22 believe it has been filed yet on ECF.  If it is to be filed,
23 that would stop the speedy trial clock.
24          THE COURT:  I'm trusting him at his word.  If it
25 doesn't come in today, then we'll revisit the issues.

F2O3SILC                    Arraignment

1          MR. MOLO:  It will be filed.  Thank you very much.
2          THE COURT:  Thank you.
3                              o0o
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25