UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| V. | ) CRIMINAL NO. 15-CR-93 |
| | ) |
| SHELDON SILVER | ) |

MEMORANDUM OF NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS AND NEW YORK STATE ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS AS *AMICI CURIAE* IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Joshua L. Dratel
Co-Chair, Amicus Curiae Committee,
  National Association of Criminal
  Defense Lawyers
Law Offices of Joshua L. Dratel, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707
jdratel@joshuadratel.com

Marc Fernich
Co-Chair, Amicus Curiae Committee
New York State Association of Criminal
Defense Lawyers
810 Seventh Avenue, Suite 620
New York, NY 10019
(212) 446-2346
maf@fernichlaw.com

*Counsel for New York State Association of
Criminal Defense Lawyers*

Joel B. Rudin
Vice Chair, Amicus Curiae Committee,
  National Association of Criminal
  Defense Lawyers
Law Offices of Joel B. Rudin, P.C.
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 752-7600
jbrudin@rudinlaw.com

*Counsel for Amicus Curiae National
Association of Criminal Defense Lawyers*

Richard D. Willstatter, Esq.
Vice Chair, Amicus Curiae Committee,
  National Association of Criminal
  Defense Lawyers
Green & Willstatter
200 Mamaroneck Avenue, Suite 605
White Plains, New York 10601
(914) 948-5656
willstatter@msn.com

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES................................................................. i

INTRODUCTION............................................................................. 1

INTEREST OF AMICI CURIAE......................................................... 2

ARGUMENT.................................................................................... 4

    I.    Public Advocacy By The United States Attorney Conflicts With the Proper Role Of A Federal Prosecutor.......... 4

    II.    Dismissal Of The Indictment, Polling The Grand Jury, Or Conducting An Evidentiary Hearing Are Appropriate And Lawful Sanctions For Inappropriate Prosecutorial Grandstanding.................................................................... 7

    III.    The Word 'Alleged" Does Not Talismanically Erase Prejudice............................................................................ 9

CONCLUSION................................................................................ 13

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Case*                                                                                               *Page*

*Berger v. United States*, 295 U.S. 78 (1935)..................................................... 4, 5

*Sheppard v. Maxwell*, 384 U.S. 333 (1966)........................................................ 8

*United States v. Dempsey*, Case No. 89-cr-666, 1990 WL 139276
    (N.D. Ill. Aug. 14, 1990)................................................................. 8-9

*United States v. Williams*, 504 U.S. 36 (1992)................................................... 7

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)............... 5

*Other*

ABA Model Rules of Prof'l Conduct R. 3.8(f)...................................................... 5

Local Rules of the United States District Courts
For The Southern and Eastern Districts of New York

    Criminal Rule 23.1(b)............................................................................ 6, 7

    Criminal Rule 23.1(d)(7)....................................................................... 5

N.Y. R. Prof'l Conduct R. 3.6(b)(4)..................................................................... 5

Monroe H. Freedman and Abbe Smith, *Understanding Lawyers' Ethics*,
    at § 11.10, LexisNexis (2d ed. 2002)..................................................... 5

Joseph Spector, *Bharara: Public Should Demand Better*,
    Democrat & Chronicle (Jan. 23, 2015)................................................. 10

*Other*   *Page*

Department of Justice, United States Attorney's Office for the Southern
    District of New York, Press Conference Visuals, *available at*
    www.justice.gov/usao/nys/pressconference/sheldonsilver/
    visuals.pdf................................................................................. 10

Ari Melber, *NY prosecutor Preet Bharara disputes Gov. Cuomo's corruption claim*,
    MSNBC.com (Feb. 10, 2015), *available at*
    http://www.msnbc.com/msnbc/prosecutor-preet-bharara-disputes-
    gov-cuomo-corruption-claim?cid=sm_fb_msnbc........................................ 11-12

## INTRODUCTION

This is a criminal prosecution, not a political campaign – but one wouldn't know it from the conduct of the United States Attorney in this case. Federal prosecutors—particularly the prosecutor at the helm of one of our nation's most powerful United States Attorneys' Offices—should not deploy the tactics of political campaigners against the presumptively innocent criminal defendants they prosecute. The United States Attorney holds a Senate-confirmed, quasi-judicial position that vests him or her with more direct power over our liberty than virtually any other official in the federal government. People in that position are expected—and legally obligated—to behave in a dispassionate, sober-minded fashion, in conformity with the letter and the spirit of the rules governing their professional conduct. When they do not, as in this case, it is the duty of the federal district courts to step in.

Dismissing an Indictment is serious, but the public's interest in maintaining a fair and even-handed criminal justice system is sometimes weighty enough to warrant it (or to impose some other meaningful sanction). No defendant could resist the media onslaught Sheldon Silver has endured. At best, it has severely damaged if not entirely destroyed his reputation based on as-yet-unproven allegations. At worst, it has hopelessly tainted the grand jurors who issued his Indictment and has made the pretrial selection of a fair and impartial petit jury far more cumbersome, protracted, and expensive to all. Not only that, but against those very real costs, the government offers no offsetting benefit. And that is because there is no apparent, necessary, or

legitimate law enforcement interest in this case in the United States Attorney going on cable news to discuss specific accusations his office has just made against an individual criminal defendant.

Only this Court has the power to do something about the increasingly serious problem of prosecutors trying their cases in the press rather than the courtroom. *Amici* very rarely file amicus briefs at the district court level. But we have taken that unusual step here due to the extraordinary importance of this issue and the primacy of district courts in rectifying it. An appellate court cannot, one or two years hence, provide Mr. Silver relief or address the prejudice he has suffered here. It thus falls uniquely on this District Court to vindicate the fundamental principles at stake by dismissing the Indictment, or, at the least, by polling the grand jury to determine the effects of the United States Attorney's inappropriate media blitz, or by conducting an evidentiary hearing to determine the government's rationale for its media campaign.

## INTEREST OF AMICI CURIAE

The National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct. NACDL was founded in 1958. It has a nationwide membership of approximately 10,000 direct members in 28 countries, and 90 state, provincial and local affiliate organizations totaling approximately 40,000 attorneys. NACDL's members include private criminal defense lawyers, public defenders, military defense

counsel, law professors, and judges. NACDL files numerous amicus briefs each year in the Supreme Court, the Second Circuit Court of Appeals, and other courts, seeking to provide amicus assistance in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system as a whole.

The New York State Association of Criminal Defense Lawyers ("NYSACDL") is a non-profit organization of more than 800 criminal defense attorneys who practice in the State of New York. It is the largest private criminal bar association in the State. Its purpose is to provide assistance to the criminal defense bar to enable its members to better serve the interests of their clients and to enhance their professional standing.

It is difficult to overstate *Amici*'s concern about prosecutors using the media to influence pending criminal cases. *Amici*'s members represent criminal defendants ranging from the wealthiest hedge fund manager accused of insider trading to the poorest vagrant charged with a violent murder. In all of those cases, it is very difficult for criminal defendants to withstand the whirlwind of vitriol that prosecutors create when they present the public with lopsided allegations adorned by vivid imagery of criminality. That is true for well-known and politically powerful criminal defendants (like Mr. Silver), and it is true for defendants who are indigent or of lesser means. *Amici* thus have an acute interest on behalf of their thousands of members—and their tens of thousands of past, present, and future clients—in opposing inappropriate, unnecessary grandstanding by prosecutors.

## ARGUMENT

If Mr. Silver's contentions are accurate, the United States Attorney's public statements violated the applicable ethical rules and regulations in both their letter and their spirit. Those statements also conflicted directly with the U.S. Attorney's constitutional role as a dispassionate representative of the people who assists the courts in dispensing justice. While the relief Mr. Silver seeks is extraordinary, the circumstances of his prosecution are extraordinary too.

### I.  Public Advocacy By The United States Attorney Conflicts With The Proper Role Of A Federal Prosecutor.

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). As the Supreme Court has explained, while the prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Id.* It is the prosecutor's "duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* Private citizens have "confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed," which is why "improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry

none." *Id.*; *see also, e.g., Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987) (noting that, even when "a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life.").

The ethical rules governing prosecutors grow directly from these venerable principles. As a leading treatise on lawyers' ethics explains, beyond "limited situations"—like notifying the public about an armed-and-dangerous suspect on the loose—"there is no legitimate reason for a prosecutor, as an agent of the government, to engage in pretrial publicity that heightens the public condemnation of the accused." Monroe H. Freedman and Abbe Smith, *Understanding Lawyers' Ethics*, at § 11.10, LexisNexis (2d ed. 2002). The ABA Model Rules incorporate this basic principle, explaining that prosecutors should not make "extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused." ABA Model Rule 3.8(f). Such statements are permitted only when "necessary to inform the public of the nature and extent of the prosecutor's action" "*and*" when they "serve a legitimate law enforcement purpose." *Id.* (emphasis added); *see also* Local Criminal Rule 23.1(d)(7) (presumptively prejudicial for lawyers to give "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case"); N.Y. R. Prof'l Conduct R. 3.6(b)(4) (public statement "ordinarily is likely to prejudice materially an adjudicative proceeding" if it is an "opinion as to the guilt or innocence of a defendant or suspect in a criminal matter").

These principles similarly apply to pending grand jury investigations, like the one at issue here. In connection with the grand jury, Local Criminal Rule 23.1(b) prohibits any "communication that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers or otherwise to aid in the investigation, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the administration of justice."

These rules make sense. Our justice system depends on jurors making decisions based solely on what transpires in the courtroom. When prosecutors foment excoriating press and public opprobrium, it puts tremendous pressure on the average people who populate juries to do their duty fairly and impartially. Few jurors will have the courage to withstand criticism from friends, neighbors, and coworkers when they acquit a "dirty" politician whose guilt those other people decided based on watching MSNBC.

There is no serious question that the United States Attorney's "extrajudicial comments," as recounted by Mr. Silver, had a "substantial likelihood of heightening public condemnation of the accused." They were calculated to destroy Mr. Silver's reputation even before he was indicted, to make him look as "guilty" as the other legislators and politicians whom this U.S. Attorney's Office already has succeeded in

convicting, and to tie his case to a righteous campaign of a political nature to reform how the State government conducts business. The comments went far beyond what Local Criminal Rule 23.1(b), and the additional ethical rules cited above, permit.

The burden is therefore on the government to explain why, exactly, the United States Attorney needed to make two media appearances and one highly public speech discussing a specific case in which he had just filed a criminal complaint. Yet in its 24-page Opposition, the government never even *tries* to explain what legitimate, law-enforcement interest necessitated the U.S. Attorney's public comments about *this specific pending case*. Whatever role the United States Attorney might have in providing "leadership" or "thoughts" about preventing public corruption *generally*, there was no public interest in his "thoughts" about a *specific* defendant who, at that point, had not even been indicted yet. The government never attempts to explain—because how could it?—why the United States Attorney could not save his rhetoric, arguments, and "thoughts" about Mr. Silver for the courtroom proceeding in which Mr. Silver's guilt is *supposed* to be resolved.

## II.    Dismissal Of The Indictment, Polling The Grand Jury, Or Conducting An Evidentiary Hearing Are Appropriate And Lawful Sanctions For Inappropriate Prosecutorial Grandstanding.

Dismissing the indictment is an appropriate sanction for a serious violation of the rules governing prosecutorial conduct. This Court has well-established authority "to dismiss an indictment because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992). Prosecutors creating a "carnival atmosphere"

surrounding the accused, *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966), is more than sufficient basis for that sanction.

Taking affirmative judicial steps to address prosecution-fomented publicity tainting an indictment is not as unprecedented as the government has suggested. For example, when Judge Marovich in the Northern District of Illinois presided over a case involving evidence that some of the grand jurors who returned a superseding indictment had attended a press conference announcing the original indictment, he took steps to solve the problem. *See United States v. Dempsey*, Case No. 89-cr-666, 1990 WL 139276, at *1 (N.D. Ill. Aug. 14, 1990). Because the grand jury returning the superseding indictment had been tainted, the defendant moved to dismiss the second superseding indictment too. Following this request, the court carefully reviewed transcripts of all the proceedings before the grand jury to determine whether any of the grand jurors who returned the indictment had been tainted by the press conference. *See id.* In denying dismissal of the second superseding indictment, the court noted that "[e]veryone, including [the U.S. Attorney], agrees that it would have been preferable if no members of the Special January, 1989 Grand Jury were present at the August 2, 1989 press conference." *Id.* at *2. But there, unlike here, the government took it upon itself to issue a second superseding indictment with a *different* grand jury that it shielded from publicity-based contamination. *See id.* ("The Special April, 1990 Grand Jury later reassessed the case after being told why the case was

transferred to them. That grand jury returned a separate indictment based solely upon evidence presented to them.").

The *Dempsey* court deployed these careful procedures to ensure that prosecution-inspired, prejudicial publicity did not violate that defendant's rights. Mr. Silver's motion warrants similar protective steps here.

**III.   The Word 'Alleged' Does Not Talismanically Erase Prejudice.**

While *amici* will not delve into the specific disagreements between the parties about what precise phraseology the U.S. Attorney used in his public pronouncements, it is facile to claim, as the government essentially does, that every denunciatory proclamation he made is cured by sporadic sprinkles of the word "alleged" or the phrase "as alleged." There is no serious question that reasonable observers of the U.S. Attorney's comments would have believed he was saying that Mr. Silver is guilty of clear-cut, cash-for-official-favors public corruption. For example, at his press conference the day his office filed the criminal complaint, the U.S. Attorney deployed elaborate visual aids—clearly prepared by thoughtful, professional, and sophisticated graphic artists trained in the art of advocacy—that provided a vivid demonstration of Mr. Silver's "guilt":



Joseph Spector, *Bharara: Public Should Demand Better*, Democrat & Chronicle (Jan. 23, 2015).[1] To be sure, the U.S. Attorney's demonstrative included the word "alleged" (once), but its eye-catching illustration of Mr. Silver's supposed kickback scheme—with a New York Statehouse backdrop to boot—was obviously the graphic's focus. (For members of the public who did not see the press conference, the government has provided these graphics on its website: http://goo.gl/0O05PP. Notably, the United States Attorney has a section of his official website archiving videos of his press conferences, prepared remarks, press releases, and graphics available for all to see, including prospective jurors.)

Not only that, but the U.S. Attorney went on MSNBC soon afterwards, partly

---

[1] Available at http://goo.gl/VeBUvK.

to discuss his accusations against Mr. Silver. On that cable news show, as he discussed this pending criminal case, his image appeared directly atop his official title, while MSNBC played quotes from him like this one: "You see somebody who has basically sold his office to line his pockets and compromised his integrity and ethics with respect to how to make decisions on all those issues I mentioned that affect people's lives, that's a big problem. And it's a big problem for democracy."



The full interview is viewable here, http://goo.gl/q4tgVH, and the United States Attorney makes the above-quoted statement at 1:14-1:26.

Not only that, but the U.S. Attorney's occasional uses of the word "alleged" during his press conference—uses that the government trumpets throughout its opposition—are absent from the excerpts of that press conference MSNBC played at the beginning of his interview. *See id.* at 0:22-0:31. The network also intermingled the U.S. Attorney's "thoughts" about public corruption, the specifics of Mr. Silver's case,

and evidence concerning entirely different people. *Id.* at 0:31-2:30. And it further displayed the below picture of Mr. Silver,



as it showed the U.S. Attorney saying: "I think any time that a significant public official who's elected by the people is arrested, it's a big deal. And I think it goes to a core problem of—honesty and integrity in the state legislature." *Id.* at 0:45.

In resolving Mr. Silver's motion, this Court should consider the United States Attorney's statements in a practical, common-sense way with an eye toward their realistic impact on the average people who comprised the grand jury. When normal people hear law enforcement describe a sinister scheme by a corrupt politician and tie it to a crusade to reform a corrupt government, or when they see an elaborate visual aid prepared at taxpayer expense illustrating how a corruption scheme operated, the sporadic use of the phrase "as alleged"—an odd, passive-voice formulation that suggests someone else previously alleged it, while the speaker has proven it—cannot

- 12 -

wash it all away.

## CONCLUSION

Any case against a defendant like Mr. Silver is sure to generate media interest that will, on its own, jeopardize his ability to get a fair trial. The United States Attorney should not be making the problem worse. Given what has transpired, the Court should dismiss the Indictment or, at the least, poll the grand jury to determine the effects of the United States Attorney's public pronouncements, or conduct an evidentiary hearing on the government's rationale for its press campaign.

Dated: March 13, 2015

                              Respectfully submitted,

                              /s/ _____

| | |
|---|---|
| Joshua L. Dratel<br>Co-Chair, Amicus Curiae Committee,<br>   National Association of Criminal<br>   Defense Lawyers<br>Law Offices of Joshua L. Dratel, P.C.<br>29 Broadway, Suite 1412<br>New York, New York 10006<br>212-732-0707<br>jdratel@joshuadratel.com | Joel B. Rudin<br>Vice Chair, Amicus Curiae Committee,<br>   National Association of Criminal<br>   Defense Lawyers<br>Law Offices of Joel B. Rudin, P.C.<br>600 Fifth Avenue, 10th Floor<br>New York, New York 10020<br>(212) 752-7600<br>jbrudin@rudinlaw.com<br><br>*Counsel for Amicus Curiae National*<br>*Association of Criminal Defense Lawyers* |
| Marc Fernich<br>Co-Chair, Amicus Curiae Committee<br>   New York State Association of<br>   Criminal Defense Lawyers<br>Law Office of Marc Fernich<br>810 Seventh Avenue, Suite 620<br>New York, NY 10019<br>(212) 446-2346<br>maf@fernichlaw.com<br><br>*Counsel for Amicus Curiae New York State*<br>*Association of Criminal Defense Lawyers* | Richard D. Willstatter, Esq.<br>Vice Chair, Amicus Curiae Committee,<br>   National Association of Criminal<br>   Defense Lawyers<br>Green & Willstatter<br>200 Mamaroneck Avenue, Suite 605<br>White Plains, New York 10601<br>(914) 948-5656<br>willstatter@msn.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March, 2015, I electronically filed the foregoing motion and the accompanying memorandum with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all parties.

Dated:      March 12, 2015                    Respectfully submitted,

/s/ _____
Joel B. Rudin
*Counsel for National Association of Criminal Defense Lawyers*