

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 19, 2015

<u>By ECF and Hand</u>

The Honorable Valerie E. Caproni
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

     Re:    <u>United States</u> v. <u>Sheldon Silver</u>, S1 15 Cr. 093 (VEC)

Dear Judge Caproni:

     The Government writes in furtherance of its Motion *in Limine* seeking the admission of evidence showing the state of mind of participants in the defendant's charged schemes. In particular, the Government clarifies that the evidence it seeks to admit as described on page 11 of the Government's Motion *in Limine*, paragraphs 2 and 3, consists of (1) an email reflecting the state of mind of Dr. Robert Taub (referred to as "Doctor-1" in prior charging instruments) regarding Weitz & Luxenberg during the course of the charged schemes, attached hereto as Exhibit A, along with associated testimony describing the email and Dr. Taub's state of mind, and (2) statements of representatives of and lobbyists for Glenwood Management Corp. ("Glenwood") (referred to as "Developer-1" in prior charging instruments) in late 2011 and early 2012 concerning the payments Glenwood was making to Silver.[1]

     First, the Government seeks to admit evidence relating to the email attached as Exhibit A, dated November 18, 2010, between Dr. Taub and a representative of a foundation sponsored by the Simmons firm ("Simmons"), which, by the time of the email, had committed to pay more than $3 million to fund Dr. Taub's research. In the email, Dr. Taub provided a mesothelioma lead to Simmons, including the name, phone number, and brief description of one of his patients who had mesothelioma (the "Mesothelioma Lead"). That portion of the email is admissible as a business record of Simmons, as the firm used the information provided in the Mesothelioma Lead to contact the potential client in the ordinary course of its business. In the email, Dr. Taub also described how the patient already had been contacted by Weitz & Luxenberg, but that Dr. Taub was trying to steer the patient to Simmons instead. Dr. Taub stated that he mentioned to the patient that Simmons "is interested in supporting meso research throughout the country, not

---

[1] The Government identifies parties by name in this letter because many of the parties already were identified by name at Court conferences, and because it is necessary to provide the further detail requested by the Court at the October 16, 2015 conference.

just private jets," and that the "environment for new cases in NY is canine-eat-canine." (*See* Exhibit A, attached hereto).

The Government expects that Dr. Taub will testify that for many years he disapproved of the law firm Weitz & Luxenberg because, in substance and in part, it made millions of dollars from representing mesothelioma victims (enough to buy "private jets"), and yet it did not donate money to support mesothelioma research. The Government further expects the evidence to show that, because of this disapproval, but for Dr. Taub's *quid pro quo* relationship with the defendant, Dr. Taub would not have sent dozens of patients to Silver at Weitz & Luxenberg, resulting in millions of dollars to Silver personally. Among other things, the Government expects the evidence will show that Dr. Taub began sending patients to Simmons instead of to Silver at Weitz & Luxenberg in 2010, after Silver had stopped supporting Dr. Taub's research with State money, and Simmons had begun to support Dr. Taub's research with its own funds – a fact that was made known to Silver by Dr. Taub. The fact that in 2010, as reflected in Exhibit A, Dr. Taub continued to express disapproval of Weitz & Luxenberg (with its spending on "private jets" over research) is highly probative of his state of mind at the time, as it is evidence of (a) Dr. Taub's preference for sending his patients to those who provided money for mesothelioma research, and (b) Dr. Taub's disapproval of Weitz & Luxenberg – which helps establish how, absent Silver's provision of official benefits to Dr. Taub, including State money for Dr. Taub's research, Dr. Taub would not have provided dozens of Mesothelioma Leads to Silver at Weitz & Luxenberg.

For these reasons, the expressions of Dr. Taub's state of mind as reflected by Exhibit A, and any related testimony, are relevant and admissible pursuant to Rule 803(3) of the Federal Rules of Evidence.

Second, the Government seeks to admit under Rule 803(3) certain statements by and among representatives of Glenwood. The Government expects the evidence to show that in or about December 2011, when the defendant learned that Jay Arthur Goldberg's law firm (the "Goldberg Firm") needed to disclose to Glenwood the defendant's receipt of a share of Glenwood's fees, the defendant contacted Brian Meara, one of Glenwood's lobbyists, by telephone. During that call, the defendant claimed, in substance and in part, that that there was no issue with him (Silver) getting the fees because he "only represented the LLCs" controlled by Glenwood. (*See* Compl. ¶ 32). The Government further expects the evidence to show that Mr. Meara was surprised and concerned by what the defendant told him, and that, following Mr. Meara's call with the defendant, Mr. Meara shared his surprise and concern with others at Glenwood, including the firm's chief lobbyist, Richard Runes, and its General Counsel, Charles Dorego.  Mr. Runes and Mr. Dorego then engaged in discussions in which they, too, expressed deep concern about the defendant's receipt of a share of fees from Glenwood, and the fear of adverse consequences should Glenwood refuse to consent to the arrangement. They discussed the issues with the owner of Glenwood, Leonard Litwin, who directed them to determine if an accommodation could be reached with the defendant; that proposed accommodation, in which Glenwood, the defendant, and the Goldberg Firm would sign a side letter consenting to the defendant's continued receipt of fees from Glenwood, without acknowledging the defendant's financial interest in retainer agreements between Glenwood and the Goldberg Firm, ultimately was agreed to by the defendant.

The Government seeks to admit the expressions of concern, surprise, and fear shared among the lobbyists and representatives of Glenwood.  The Government expects that this testimony will come in through witnesses' oral recollections of the events of late December 2011 and early 2012, in part because the Government expects the evidence to show that Glenwood took active steps to minimize the number of people who knew or could have learned of the arrangement between the defendant and Glenwood.  The expressions of the states of mind of these witnesses are admissible under Rule 803(3) for the same reasons that Dr. Taub's contemporaneous expressions of his state of mind is relevant:  to help establish the state of mind of the extorted party under extortion under color of official right, and to help establish the existence of the quid pro quo relationship that is charged in the Superseding Indictment.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney
    Southern District of New York

By: \_\_\_\_\_/s/_____
    Carrie H. Cohen/Howard S. Master
    Andrew D. Goldstein
    Assistant United States Attorneys
    212-637-2264/2248/1559

cc by ECF:  Attorneys for the Defendant