# MoloLamken

Steven F. Molo
MoloLamken LLP
540 Madison Avenue
New York, NY 10022
T: 212.607.8170
F: 212.607.8161
smolo@mololamken.com
www.mololamken.com

October 20, 2015

Honorable Valerie E. Caproni
　United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, NY 10007

Re:   *United States v. Sheldon Silver*, No. 15 Cr. 93 (VEC)

Dear Judge Caproni:

　　　We write in response to the Government's October 19, 2015 letter ("Gov't Ltr.") in support of its effort to admit out-of-court statements against Mr. Silver at trial. (Dkt. 86.) The Government identifies two additional pieces of evidence it seeks to admit under Federal Rule of Evidence ("Rule") 803(3): (1) an email from Dr. Robert Taub to a representative of the Simmons law firm ("Simmons"), stating that he (Dr. Taub) recently recommended Simmons to one of his patients and voicing support for Simmons' funding of mesothelioma research; and (2) unspecified "expressions of concern, surprise, and fear shared among the lobbyists and representatives" of Glenwood Management Corporation ("Glenwood") regarding Mr. Silver's receipt of referral fees from Goldberg & Iryami. None of this evidence is admissible and the Government's motion should be denied.

　　　No portion of Dr. Taub's email is admissible. The Government first claims that the portion of the email reflecting Dr. Taub's "referral" of a mesothelioma patient to Simmons "is admissible as a business record *of Simmons*." (Gov't Ltr. at 1 (emphasis added).) The Government has failed to make that showing. To be admissible as a business record under Rule 803(6), the Government must show that the record must have been made and kept in the course of a regularly conducted activity of a business, as part of the regular practice of that activity. This email was not created by anyone at Simmons and to the extent it is a regularly conducted business activity, the Government has not shown that anyone at Simmons "had an obligation" to create or maintain such a record as part of that activity. *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 333 (S.D.N.Y. 2009) (holding emails not covered by Rule 803(6) where employees "were not under an obligation to create the emails as a record of regularly conducted business activity"); *see also United States v. Reyes*, 157 F.3d 949, 952 (2d Cir. 1998) (requiring a movant seeking to admit under Rule 803(6) a record containing information from a third party to show that "an employee of the business has a duty to verify the information" provided). The Government's assertion that Simmons "used the information . . . to contact the potential client in the ordinary course of its business" fails to meet this standard. *See, e.g., New*

*York v. Microsoft Corp.*, No. CIV A. 98-1233, 2002 WL 649951, at *2 (D.D.C. Apr. 12, 2002) (excluding emails under Rule 803(6) due to "complete lack of information regarding the practice of composition and maintenance of such emails").

Moreover, the second portion of Dr. Taub's email is wholly irrelevant to this case. It relays Dr. Taub's apparent belief that Simmons "is interested in supporting meso research throughout the country, not just private jets." (Gov't Ltr. Ex. A.) The Government contends Dr. Taub's statement regarding "private jets" refers to his purported disapproval of Weitz & Luxenberg and that, because of this disapproval, Dr. Taub would not have recommended patients to Mr. Silver but for their alleged *quid pro quo* relationship. This contention is meritless. Dr. Taub's comment about "private jets" does not specifically mention Weitz & Luxenberg. Nor does it show that Dr. Taub would not have recommended patients to Weitz & Luxenberg but for Mr. Silver providing State funding to Dr. Taub's research. The email says nothing about Dr. Taub's alleged "motivat[ion]" to recommend patients to Weitz & Luxenberg as a result of Mr. Silver's official action or that Mr. Silver was *aware* of such a motivation. *United States v. McDonough*, 56 F.3d 381, 388 (2d Cir. 1995). Whether Dr. Taub found mesothelioma research a worthy cause or disapproved of "private jets," as the email suggests, is thus in no way probative of a supposed *quid pro quo* relationship with Mr. Silver.

The Government next asks the Court to admit an unidentified number of "expressions of concern, surprise, and fear shared among" Glenwood's representatives upon learning from Brian Meara, a lobbyist, that Mr. Silver earned referral income from Goldberg & Iryami. (Gov't Ltr. at 3.) For starters, the Government provides neither Mr. Silver nor the Court any basis whatsoever to evaluate this request. Both Mr. Silver and this Court are left to guess as to whom the Government intends to call, what testimony it seeks to elicit, and the foundation for the information on which this supposed testimony will be based. *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) ("[T]he proponent of *any* evidence, not just lay opinion testimony, must establish a proper foundation for the evidence before a court may admit it." (emphasis in original)). The Government cannot seek to admit an ill-defined, unascertainable collection of "expressions" without providing a meaningful description of the testimony it hopes to elicit and the identity of those it hopes will provide it. *See, e.g., United States v. Amato*, No. 03-Cr-1382, 2006 WL 1720402, at *4 (E.D.N.Y. June 20, 2006) (reserving final ruling on admissibility where "[b]ecause the Government has not disclosed the exact nature of the hearsay statement(s), this court is unable to determine the exact contours of its admissibility").

Even assuming the Government had seen fit to describe the Glenwood testimony it envisions, this testimony – like Dr. Taub's email – has no relevance to this case. Whether Glenwood representatives had such feelings regarding Mr. Silver earning referral fees from a real estate firm that had successfully reduced tax assessments for certain Glenwood properties has nothing at all to do with **Mr. Silver's** state of mind. Nor is there any indication that the Glenwood representatives' concern or fear was ever communicated to Mr. Silver. *See United States v. McDonough*, 56 F.3d 381, 388 (2d Cir. 1995) (requiring the Government to "prove beyond a reasonable doubt that the victims were motivated to make payments as a result of the defendant's control or influence over public officials **and that the defendant was aware of this motivation**" (emphasis added)). Indeed, Mr. Meara's own testimony to the Grand Jury confirms that his motivation for informing Glenwood representatives of Mr. Silver's arrangement was not out of "fear" of Mr. Silver, but to avoid potentially negative press *for Glenwood*.

Finally, the Court should preclude testimony regarding the Glenwood representatives' purported feelings for the independent reason that any "concern, surprise, and fear" the Government hopes to elicit would, if it existed, derive entirely from alleged misconduct that had nothing to do with Mr. Silver. In *United States v. Skelos*, No. 15 Cr. 317, the Government alleges that the then-Majority Leader of the New York State Senate, Dean Skelos, made repeated requests and "threat[s]" that he "would take detrimental action against real estate developers [including Glenwood] who did not support him." Superseding Indictment, *Skelos*, Dkt. No. 18 at 9 ¶¶ 12–13. Indeed, the Government has produced statements by Glenwood representatives citing direct threats by Mr. Skelos as the reason for their concern. But there is absolutely no evidence that Mr. Silver had any knowledge of these threats, let alone any involvement in them.

As a result, there is a substantial risk that the jury could convict Mr. Silver based upon allegations that have nothing to do with him. This is just the sort of impermissible danger Rule 403 is designed to avoid. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (defining inadmissible evidence under Rule 403 as that which "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged"). Even if this evidence was somehow relevant or related to Mr. Silver, in order to put the Glenwood representatives' "feelings" into context, it would be necessary to introduce evidence of the *Skelos* allegations, which both parties have agreed not to do because of its limited probative value and prejudicial nature. (*See* Oct. 16, 2015 Tr. at 91–92; Gov't Br. (Dkt. 56) at 38 (citing danger of "a 'mini trial' on the Skelos allegations"); Def. Opp. Br. (Dkt. 61) at 23 (proposing only to elicit information regarding key witness's non-prosecution agreement).) Indeed, the Court has already indicated that reference to other legislators' criminal allegations is wholly irrelevant to this case and unfairly prejudicial to Mr. Silver. (*See* Oct. 16, 2015 Tr. at 22 (describing the Government's efforts to offer evidence of other legislators' criminal charges as "the part that is most prejudicial and most plays into the argument that . . . you want the jury to [think] Albany is a cesspool").)

For the reasons set forth herein, in Mr. Silver's Opposition to the Government's motion *in limine* (Dkt. No. 61), and at the October 16, 2015 conference, the Court should deny the Government's motion *in limine* to admit such evidence.

Respectfully submitted,

Steven F. Molo
Justin V. Shur

cc: all counsel via CM/ECF