

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 9, 2015

By ECF and Hand Delivery

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *Sheldon Silver*, 15 Cr. 93 (VEC)

Dear Judge Caproni:

      The Government submits this letter to request that the Court instruct the jury as set forth below to avoid potential jury confusion created by certain defense questioning of a Government witness at trial.  During the cross-examination of Dr. Robert Taub, over the Government's objection, the Court permitted the defense to question Dr. Taub about a prior draft of his non-prosecution agreement, and in particular, about the removal of the words "in exchange for" from the scope of immunity in the first sentence of the final agreement.  Defense counsel, having impermissibly commented to the jury that the Government had hidden the final agreement from the jury,[1] proceeded to suggest that Dr. Taub's counsel had sought the removal of the "in exchange for" language to prevent Dr. Taub from making a false statement.[2]

      The result of this questioning on the non-prosecution agreement that was mediated by privileged communications between Dr. Taub and his counsel ("In drafting this agreement I

---

[1]    *See* Tr. 595:4:6 (Mr. Molo: "Yesterday, you were shown the cooperation agreement that you have with the prosecutors, but they didn't put it into evidence for the jury to see for themselves, did they?").  *See United States* v. *Cosentino*, 844 F.2d 30 (2d Cir. 1988) (cooperation agreements cannot be introduced by the Government on direct examination until the witness's credibility is attacked).

[2]    *See* Tr. 596:22-23 (Mr. Molo: "The words 'in exchange for,' which appears in the January 6 draft are gone, right?"); Tr. 600:3-7 (Mr. Molo:  "But you wouldn't go so far as to put false information in an agreement that said that in exchange for your receipt of benefits, you referred cases to Mr. Silver, correct?  You wouldn't go so far as to make a false statement like that, right?").

relied on discussions with my attorney" (Tr. 600:8-9)), and that Dr. Taub was unable to comment on because he was not "sure exactly what transpired" (*id.*), in addition to creating an unfair suggestion that the Government had hidden something from the jury, has been to suggest to the jury that the Government is required to prove beyond a reasonable doubt Dr. Taub's guilt, or at least his criminal intent, as well as the defendant's.  In fact, defense counsel even argued that point by asserting that the draft of the non-prosecution agreement would be relevant because "Dr. Taub pushed back on it and would not agree that he engaged in what effectively is a criminal conspiracy."  (Tr. 319:3-5).

Even though the Government has not charged a conspiracy here, defense counsel's questioning, some of which is described above, may have left the jury with the incorrect impression that the Government is required to prove that Dr. Taub also must have committed the crimes with which the defendant is charged and shares the same *mens rea* as Silver with respect to the *quid pro quo*.  That is simply wrong as a matter of law.  Putting aside the fact that Dr. Taub *did* repeatedly acknowledge that he was referring patients with the expectation that it would influence Silver's official acts,[3] because the Government did not charge the defendant with participating in a conspiracy, questioning of Dr. Taub concerning his non-prosecution agreement in particular risked jury confusion.  While Dr. Taub's state of mind can of course be considered by the jury as circumstantial evidence of the defendant's intentions (a point the Government has itself argued), that does not mean – as the defendant has repeatedly implied – that Silver can be convicted only if Dr. Taub had the same understanding of the *quid pro quo* relationship as did the defendant. Absent some curative instruction from the Court, this misimpression will go uncorrected until the final legal instructions are read to the jury at the end of the trial, and the manner in which the jury considers the evidence and testimony during of the rest of this trial could be tainted.

Accordingly, to avoid juror confusion, the Government respectfully requests that the Court issue the following limited corrective instruction that sets forth a basic, incontrovertible statement of law:

> I will provide full instructions on the relevant legal standards and the elements of each offense charged at the conclusion of trial, but for now, I will instruct you that the defendant and the defendant alone is on trial here.  It is his mental state, not anyone else's, that the Government must prove beyond a reasonable doubt.

The Court has inherent authority to provide instructions on legal issues throughout the trial.  *See, e.g.*, *United States* v. *Bermudez*, 526 F.2d 89, 98-99 (2d Cir. 1975); *Shervin* v. *Partners Healthcare System, Inc.*, __ F.3d ____, 2015 WL 5905398, at *18-*19 (1st Cir. 2015) ("Mid-trial jury instructions can be a useful tool in a trial court's effort to acquaint the jury with the governing law."); *Vialpando* v. *Cooper Cameron*

---

[3]   *See*, *e.g.*, Tr. 403:10-12 (Dr. Taub: "If I would ask him to do something, he would ask for something in return."); 631:2-5 (Dr. Taub: "Of course they will all be nice to you for the cases, and hate you if they don't get them.  I will keep giving cases to Shelly because I may need him in the future – he is the most powerful man in New York State." (reading e-mail written by Dr. Taub on May 25, 2010, introduced as Government Exhibit 595-1)).

2

*Corp.*, 92 Fed. App'x 612, 621 (10th Cir. 2004) (explaining that "mid-trial instruction" was appropriate "to rebut plaintiff's counsel's attempts to persuade the jury, through questioning" that would have left jury with misimpression as to the governing law). Accordingly, the Government respectfully requests that the Court issue the corrective instruction set forth above. Should the Court decline to issue such an instruction now, the Government will renew the request should it become necessary based on defense counsel's questioning of upcoming witnesses. In any event, such an instruction is necessary as part of the Court's final instructions to the jury.

      The Government also may propose certain other limited modifications to its final requests to charge in order to address potential juror confusion based on the defense at the close of the evidence.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney

By:     /s/_____
      Carrie H. Cohen (212-637-2264)
      Howard S. Master (212-637-2248)
      Andrew D. Goldstein (212-637-1559)
      Assistant United States Attorneys
      Southern District of New York

cc by ECF and Hand Delivery: Defense Counsel