

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 10, 2015

By ECF and Hand Delivery

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *Sheldon Silver*, 15 Cr. 93 (VEC)

Dear Judge Caproni:

      The Government respectfully submits this letter to address repeated improper questioning by defense counsel that potentially gave the jury the mistaken impression that approaches of witnesses by law enforcement were somehow unlawful or inappropriate.  As defense counsel is well aware, however, such approaches are entirely lawful and proper, and the Court should issue a curative instruction to correct the misimpressions that may have arisen from defense counsel's questioning.

      During the testimony of Stephen August, defense counsel engaged in the following line of questioning:

> Mr. Shur Q:  Mr. August, have you met with the prosecutors before today?
> Mr. August A:  Yes.
> Q:  When was the very first time you met with the prosecutors? Tell us how that came about.
> A:  I don't know the date.  It was January of this year.  They came up to Maine, and requested that I speak with them.
> Q:  And they called you first before doing that?
> A:  They did not, no.
> Q:  They didn't make an appointment to see you?
> A:  No.
> Q:  They just showed up?
> A:  They did.
> Q:  This is in Bath, Maine?
> A:  It is.
> Q:  Where is Bath, Maine?

> A:  We're about 35 miles north of Portland.
> . . .
> Q:  This is a rural area I take it?
> A:  Bath is a town of about 8,000.
> Q:  And you mentioned you've retired.
> A:  Correct.
> Q:  Were you home?  Did they knock on the door?
> A:  My wife and I were out for a walk.  I recall it was mid-afternoon.  They were in the driveway when we returned home.
> Q:  Who was there?  Was Ms. Cohen there?
> A:  Yes.
> Q:  What about Mr. Master and Mr. Goldstein?  Were they there?
> A:  No.
> Q:  What about the investigators?  Were the investigators with Ms. Cohen?
> A:  There were investigators there, yes.
> Q:  Had you ever had that happen before?  Where criminal investigators came to your house?
> A:  No.
> Q:  Were you surprised to see them there?
> A:  I was.

Tr. 919:5 – 920:20.

This line of questioning was designed to leave the jury with the incorrect impression that the approaches of witnesses by the Government – *i.e.*, visiting Mr. August at his home in Bath, Maine, without "call[ing] first," Tr. 919:11, or "mak[ing] an appointment," Tr. 919: 13 – were unlawful or otherwise inappropriate.  These questions were improper particularly because defense counsel never even attempted to tie this line of questioning to any relevant point.  Indeed, defense counsel did not attempt to impeach any of the statements made by Mr. August during that meeting.  Instead, after asking this line of questions, defense counsel asked two more questions on an unrelated topic before closing his cross-examination. As a result, the only purpose of the line of questions was to prejudice the jury about the manner in which the Government conducted its investigation.

Such prejudice is compounded by similar questioning regarding the propriety of the investigators' initial interview of Dr. Taub.  *See, e.g.*, Tr. 564:13-15 (Mr. Molo Q: Do you recall that morning?  Dr. Taub A: I believe so.  Q:  It would be pretty hard to forget, right?); Tr. 565:1-10 (Mr. Molo Q:  Did they make an appointment to come see you?  Dr. Taub A:  No.  Q:  Did they call you first and say "We're coming over"?  A:  No.  Q: They just showed up?  A: Yes.  Q:  And they woke you up?  A:  Yes.  Q: Were you startled that you were waken up by two criminal investigators coming from the prosecutors?  A:  I was terrified.); Tr. 567:2-5 (Mr. Molo Q:  And I take it your wife was in her pajamas as well?  Dr. Taub A: Yes.  Q: Were you wearing slippers or shoes?  A:  I don't remember.).

As the defendant is well aware, it is entirely lawful for law enforcement to attempt to talk to individuals at their residences with their consent, including early in the morning.  Yet defense

counsel's improper questioning, some of which is described above, may well have left the jury with the opposite impression. Given the repeated use by defense counsel of misleading questions on this point, the Court cannot rely merely on sustained objections to correct the misimpression such repeated questioning will inevitably leave with the jury. To correct this intentional attempt to mislead the jury, the Government respectfully requests that the Court issue a curative instruction to the jury as follows:

> You have heard testimony about the approaches of certain witnesses by law enforcement. I instruct you that these approaches were entirely proper and that no one's rights were violated.

*See* Sand, *Modern Federal Jury Instructions*, Instr. 4-4 (use of law enforcement techniques); *United States* v. *Cheung Kin Ping*, 555 F.2d 1069, 1073-74 (2d Cir. 1977) (jury properly instructed that law enforcement techniques were lawful and permissible).

The Government further expects that the defense will attempt similar questions of future Government witnesses. Accordingly, the Court also should preclude defense counsel from engaging in such inappropriate questioning going forward.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      /s/
        Carrie H. Cohen (212-637-2264)
        Howard S. Master (212-637-2248)
        Andrew D. Goldstein (212-637-1559)
        James M. McDonald (212-637-2405)
        Assistant United States Attorneys
        Southern District of New York

cc by ECF and Hand Delivery: Defense Counsel