

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 19, 2015

By ECF and E-Mail

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *Sheldon Silver*, S1 15 Cr. 93 (VEC)

Dear Judge Caproni:

      The Government respectfully submits this letter to request the following revisions to the Court's draft jury instructions (proposed additions in bold and deletions in strike-through text).

1. Honest Services Fraud Element Two – Knowing and Willful Participation in the Scheme

    (a) <u>Insert following Page 18, line 10:</u>

      **Finally, the Government is required to prove only that Mr. Silver acted with intent to defraud; the Government need not prove that any of those alleged to have provided things of value to Mr. Silver acted with criminal intent.**

      The above statement is necessary given repeated questioning by defense counsel of various witnesses on cross-examination as to whether those witnesses themselves acted with the criminal intent required of the defendant.

2. Honest Services Fraud Element Three – Receipt of Bribes or Kickbacks

    (a) <u>Page 18, line 19, to page 19, line 4</u>:

      To satisfy this element, the Government must prove that there was a quid pro quo ~~relationship~~.  Quid pro quo is Latin, and it means "this for that" or "these for those."  The Government must prove that a bribe or kickback was **sought or received by** ~~provided to~~ Mr. Silver, directly or indirectly, in exchange for official

action.  Official action includes any action taken or to be taken under color of official authority.  The Government does not have to prove that there was an express or explicit agreement that official actions would be taken or that any particular action would be taken in exchange for the bribe or kickbacks, so long as it proves that ~~there was an understanding that~~ **Mr. Silver intended to perform** official actions**, as the opportunities arose,** ~~would be taken~~ in exchange for the **money or property given, directly or indirectly, to Mr. Silver**~~payment as the opportunities arose~~.

(b) <u>Page 19, line 13, to page 20, line 2</u>:

You heard some testimony about campaign contributions that were given to Mr. Silver and to political campaign organizations associated with Mr. Silver.  A person, including a company, has the Constitutional right to make campaign contributions to political candidates and political organizations.  Contributors have the right to make contributions with the hope that the candidate will support legislation or produce political outcomes that benefit the contributor.  Similarly, politicians have a right to receive contributions, including from people or entities that hope the politicians will enact laws helpful to them.  **The Government does not allege that the campaign contributions made by Glenwood were unlawful but you may consider such evidence as relevant to Mr. Silver's intent.**  ~~What transforms lawful political contributions into unlawful bribes or kickbacks is the existence of a quid pro quo.~~

~~Thus, if the Government proves only that money or property was given with the hope that Mr. Silver would act in a way that benefited the person giving the money or property, this element will not have been proven.  Instead, the Government must prove, beyond a reasonable doubt, that there was an express or implied quid pro quo agreement for any money or property given, directly or indirectly, to Mr. Silver.~~

The Government respectfully proposes these revisions for two reasons.  First, the Government believes the statement "[w]hat transforms lawful political contributions into unlawful bribes or kickbacks is the existence of a quid pro quo" potentially is confusing, given that, in the context of campaign contributions and campaign contributions alone, an "*explicit*" quid pro quo is required to sustain a conviction.  *McCormick* v. *United States*, 500 U.S. 257, 27 (1991) (emphasis added); *United States* v. *Rosen*, 716 F.3d 691, 701 (2d Cir. 2013).  In light of the fact that the Government does not allege that the campaign contributions made by Glenwood were unlawful, the Government proposes to avoid this confusion by deleting the sentence and replacing it with language that makes it clear that the legality of the campaign contributions is not at issue.

Second, the Government believes the other revisions proposed above are necessary to ensure the jury is properly charged on the governing law.  As written in the draft charge, the instructions above state or suggest that the jury must find a "meeting of the minds" to be guilty of honest services fraud.  To the contrary, because this is not a conspiracy case, the Government

is required only to prove that Silver intended to perform official acts as the opportunities arose, in exchange for money or property given, directly or indirectly, to Silver.  *See United States* v. *Rosen*, 716 F.3d 691, 699-700 (2d Cir. 2013) (honest services fraud defined as "a governmental official's receipt of a benefit in exchange for an act he has performed, or promised to perform, in exercise of his official authority"); *United States* v. *Bruno*, 661 F.3d 733, 743-44 (2d Cir. 2011) (explaining that the "key inquiry" in considering honest services fraud is "whether . . . an intent to give or receive something of value in exchange for an official act has been proved"); *see also*, *e.g.*, *United States* v. *Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013) ("Because bribery does not require the official to agree to or actually complete a corrupt exchange, neither does honest-services fraud by bribery" and "though the offerer of a bribe is guilty of honest-services fraud, his attempted target may be entirely innocent"); *United States* v. *Bryant*, 655 F.3d 232, 244-45 (3d Cir. 2011) (explaining that "[w]hat distinguishes a bribe from other payments that would not constitute violations is that a bribe is offered or accepted with the intent to influence, or to be influenced, in an official act"); *United States* v. *Anderson*, 509 F.2d 312, 332 (D.C. Cir. 1974) ("The payment and the receipt of a bribe are not interdependent offenses, for obviously the donor's intent may differ completely from the donee's.").

The defendant has acknowledged this legal point throughout this case.  *See* Def. Mot. *in Limine* to Exclude Evidence of Glenwood's Campaign Contributions at 4 (Dkt. 53) (citing and quoting *Anderson* and asserting that "[w]hat matters is **Mr. Silver's** knowledge and intent, not Glenwood's" (emphasis in original)).  Thus, there need be no "meeting of the minds," as only Silver is on trial, and only his intent is at issue.[1]  While the intent of those paying the defendant may of course be argued as circumstantial evidence of the defendant's state of mind (either inculpatory or exculpatory), it is only Mr. Silver's intent to engage in a quid pro quo that must be proven to sustain his conviction on the honest services fraud counts.

    3.    Extortion Element Two – Property Not Due That Office

> Page 22, lines 16 – 24:
>
> In Count Five, the Government alleges that the property that was given was leads for Mesothelioma cases.  Leads are information about the Mesothelioma patients that can be used by attorneys to make contact with and possibly obtain the patients as clients of the firm.  If you find that Dr. Taub gave such information to Mr. Silver, then property was transferred, and you should proceed to consider this element.  On the other hand, if you conclude that Dr. Taub simply **did nothing more than recommend to his patients that they contact Mr. Silver,** referred his patients to Mr. Silver, then the Government has

---

[1]    For the same reasons, the Government proposes adding a comma to the following sentence on page 14, lines 6 to 9, in order to make clear that the Government is required only to prove that Silver had a corrupt intent:  "Counts One and Two charge that, starting in approximately 2000 through approximately January 2015, Mr. Silver committed honest services fraud by engaging in a scheme in which he received fees from the law firm Weitz & Luxenberg for mesothelioma cases, the leads for which were given to Mr. Silver by Dr. Taub**,** in exchange for official acts by Mr. Silver."

3

not proven that property as required by this element was transferred.  In that instance, you must find that Mr. Silver is not guilty of Count Five.

The Government respectfully proposes this revision to avoid juror confusion regarding what constitutes a "referral," and to make clear the type of interest that would be insufficient to satisfy this element.  Relying simply on the concept of "referral" may be confusing to the jury as that term was used throughout the trial in connection with referral fees and the word itself can have different meanings depending on whether it is used as a verb or a noun.

4. Extortion Element Three – Misuse of Official Position

(a) Page 23, line 19, to page 24, line 8:

The third element that the Government must prove, beyond a reasonable doubt, is that Mr. Silver used the authority of his public office to obtain the property for himself or for a third party and that the property was given because of Mr. Silver's official position.  As was the case when I charged you on honest services fraud, the extortion counts require the Government to prove, beyond a reasonable doubt, the existence of a quid pro quo ~~relationship~~.

To satisfy this element, the Government must prove, beyond a reasonable doubt, that Mr. Silver obtained property to which he was not entitled by his public office, knowing that it was given in exchange for official acts as the opportunities arose, rather than being given voluntarily and unrelated to Mr. Silver's public office.  In other words, the Government must prove, beyond a reasonable doubt, that the extorted parties were motivated, at least in part, by Mr. Silver's role as a public official or his control or influence over public officials, and that Mr. Silver was aware of their motivation.

Again, as I charged you earlier, it is not necessary that the official and**/or** the person giving the property state the quid pro quo in express terms.  If express terms were required, the intent of the law could easily be frustrated by illicit deals that are accomplished by winks and nods.  A quid pro quo ~~relationship~~ can be implied from Mr. Silver's words and actions, so long as Mr. Silver **obtained property aware that the extorted parties were motivated by Mr. Silver's role as a public official or his control or influence over public officials.** ~~intends there to be a quid pro quo and the person who is giving the property also understands that there is a quid pro quo.~~

The Government proposes these alterations to avoid juror confusion regarding the governing legal standard for the "misuse of official position" element of extortion.  The Government agrees that the second paragraph of the draft instructions excerpted above states the

4

standard correctly – *i.e.*, that "the Government must prove, beyond a reasonable doubt, that the extorted parties were motivated, at least in part, by Mr. Silver's role as a public official or his control or influence over public officials, and that Mr. Silver was aware of their motivation." But the draft instruction contained in the third paragraph excerpted above states the standard in different terms, and could be read by the jury to suggest the defendant and the extortion victims had to have had a "meeting of the minds" in order to find in order to find the defendant guilty. This is not required. *See* supra at 3 (citing cases). Thus, the Government proposes the revisions to the third paragraph excerpted above to avoid confusion on this issue and to ensure the jury is properly charged on the governing law. In addition, the Government proposes deleting the word "relationship" from the first paragraph excerpted above for the reasons stated in Proposed Revision 1 above.

      (b) <u>Page 24, lines 15 to 18</u>:

> This element can be satisfied even if the extorted party initiated the quid pro quo and even if the extorted party and Mr. Silver had a friendly relationship. If you find either to be the case, however, each is a factor that you should consider in deciding whether the extorted party was motivated**, at least in part,** to give property because of ~~a belief that~~ Mr. Silver**'s role as a public official or his control or influence over public officials, rather than for** ~~would take official action in exchange for the property or for~~ some other entirely innocent reason.

The Government proposes this revision to ensure the jury is properly charged that, to prove that Silver is guilty of extortion, the Government need only establish that the extorted party was motivated, in part, to give property because of Mr. Silver's public role or control or influence over other public officials, and that the defendant was aware of that motivation. *See United States* v. *Coyne*, 4 F.3d 100, 113 (2d Cir. 1993) (explaining that "a valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability," and that a jury instruction explaining that point was "appropriate in light of [the defendant's] argument that he was motivated by friendship"); *United States* v. *McDonough*, 56 F.3d 381, 388 (2d Cir. 1995) ("In order for a jury to find a defendant guilty of extortion under color of official right, the government must prove beyond a reasonable doubt that the victims were motivated to make payments as a result of the defendant's control or influence over public officials and that the defendant was aware of this motivation."). In addition, this revision is necessary to conform the language used in this paragraph to the language used elsewhere in the draft instructions, and thus to avoid juror confusion regarding the governing standard. *See* Draft Instr. p. 23:22 – 24:2 ("[T]he Government must prove, beyond a reasonable doubt, that the

extorted parties were motivated, at least in part, by Mr. Silver's role as a public official or his control or influence over public officials, and that Mr. Silver was aware of that motivation.").

          Respectfully submitted,

          PREET BHARARA
          United States Attorney

By:     /s/
          Carrie H. Cohen (212-637-2264)
          Howard S. Master (212-637-2248)
          Andrew D. Goldstein (212-637-1559)
          James M. McDonald (212-637-2405)
          Assistant United States Attorneys
          Southern District of New York

cc by ECF and E-Mail: Defense Counsel