USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/12/16

Docket No. 15-cr-093 (VEC)

1701 West River Road
Grand Island, New York 14072
December 26, 2015

Hon. Valerie E. Caproni
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Dear Judge Caproni:

My name is Michael F. Ziolkowski and I reside at 1701 West River Road, Grand Island, New York 14072. In the aftermath of the conviction of New York State Assemblymember Sheldon Silver many facts have been uncovered and made part of the public record that would logically lead one to believe that the Attorneys associated with Mr. Silver's crimes, and the environment in which they took place, should be examined under the standards of the New York Rules of Professional Conduct (www.nysba.org/WorkArea/DownloadAsset.aspx?id=50671).

From what I gather as a mere citizen, the New York Rules of Professional Conduct are a very high standard of conduct for Attorneys. For example, I have heard of cases where lawyers lost their Law Licenses because of a failure to pay their income taxes. Compared to that, the situations discovered in Mr. Silver's trial appear to be much more serious because of how systematic the crimes and unethical behavior are and that their impacts are statewide and beyond. The following Rules which I have copied from the New York Rules of Professional Conduct and pasted here, may have been violated:

RULE 8.4: MISCONDUCT

A lawyer or law firm shall not:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) engage in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(h) engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer.

During Mr. Silver's trial we learned that many, if not most, of the participants in Mr. Silver's dealings are Attorneys who hold Licenses to practice law in New York State. Therefore, I am respectfully requesting that you refer the individuals named throughout this document to the Disciplinary Committee of the New York State Bar Association for disciplinary consideration and fitness to practice law. There appear to be several categories of concern:

1) Mr. Sheldon Silver who stands convicted in your Court;
2) those who directly aided and contributed to his illegal activities;
3) the Moreland Commissioners who were sworn prosecutors and failed to perform their duties as outlined in Executive Order 106; and,
4) the individuals who took part in the "negotiation" to close the Moreland Commission.

To my knowledge, and maybe I have this wrong, the Government's case brought to light the fact that the Attorneys Mr. Perry Weitz and Mr. Arthur Luxenberg of the plaintiffs law firm Weitz and Luxenberg, which employed Assembly Speaker Sheldon Silver, is said to have provided Mr. Silver with illegal referral fees, despite his having "never performed any legal work whatsoever," according to the prosecutors.

Mr. Charles Dorego and Mr. Richard Runes of Glenwood Management, Mr. Brian Meara (I am not sure if Mr. Meara is an Attorney) as well as Mr. Jay Arthur Goldberg of the firm Goldberg & Iryami are reported to have participated in paying Mr. Silver illegally.

Governor Cuomo formed the Moreland Commission to investigate public corruption with Executive Order 106 (www.governor.ny.gov/news/no-106-designation-pursuant-section-6-and-subdivision-8-section-63-executive-law) charging the following people specifically (plus Ms. Kathleen Rice who later resigned) to write two reports. The Moreland Commissioners never fulfilled the responsibility to complete their January 1, 2015 report because according to page 17 of Mr. Silver's Grand Jury Indictment (italics are not original):

> When the Moreland Commission then subpoenaed Weitz & Luxenberg, as well as other entities that employed legislators who had refused to comply with the letter requests, for information about the non-complying legislators' outside income, SILVER caused the Assembly, at taxpayer expense, and Weitz & Luxenberg to file motions in New York State Supreme Court to quash the subpoenas. On or about February 25, 2014, in statements made at a press conference, SILVER claimed that by subpoenaing information about legislators' outside income, the Moreland Commission was "engaged in a fishing expedition to intimidate legislators" and had exceeded its mandate and otherwise abused its power. Subsequently and while the motions to quash the subpoenas were pending, SILVER participated in State budget negotiations that resulted in, among other things, the shutdown of the Moreland Commission, and the subpoenas seeking information on outside income were withdrawn.

I believe almost all of the Moreland Commissioners are licensed New York State Attorneys. It strikes me that: 1) there is no written record of Governor Cuomo formally "disbanding" the Moreland Commission; and, 2) Even if the Governor can verbally disband a Moreland Commission he created, the Moreland Commissioners are nonetheless obligated by their New York Rules of Professional Conduct to write their final report at a minimum, especially because motions to quash the subpoenas were pending. The Moreland Commissioners appear to be derelict in their duties. This is especially true in light of the fact that the Moreland Commissioners documented possible illegal activity in their Preliminary Report dated December 2, 2013 (included with this letter). I understand that in documents submitted to your Court some of the "Leaders of Moreland Commission Panel Felt Cuomo Intervened" (NYT September 12,

2015) in the work of the investigatory work of the Moreland Commission. The Moreland Commissioners (each individually), perhaps, should be held to a higher standard than anyone else in this case because: 1) their specific charge was to root out corruption but seemed to succumb to the pressure of "groupthink"; and, 2) their prominence and status in the legal profession.

The Moreland Commissioners and Special Advisors are:

| | |
|---|---|
| Co-Chair William J. Fitzpatrick | David Javdan |
| Co-Chair Milton L. Williams, Jr. | Robert Johnson |
| Joseph A. D'Amico, Special Advisor | David R. Jones |
| Raymond W. Kelly, Special Advisor | Lance Liebman |
| Robert M. Morgenthau, Special Advisor | Joanne Mahoney |
| Barbara Bartoletti, Special Advisor | Gerald F. Mollen |
| J. Patrick Barrett | Makau W. Mutua |
| Richard Briffault | Benito Romano |
| Daniel J. Castleman | Frank A. Sedita III |
| Derek P. Champagne | P. David Soares |
| Eric Corngold | Kristy Sprague |
| Kathleen B. Hogan | Betty Weinberg Ellerin |
| Nancy Hoppock | Peter L. Zimroth |
| Seymour W. James | Thomas P. Zugibe |

The individuals who took part in the "negotiation" to close the Moreland Commission should be held accountable as well.  It is Mr. Silver's crimes, and those of others as well, that Governor Cuomo, former Assemblymember Sheldon Silver, former Senator Dean Skelos, Senator Jeffrey Klein, and possibly members of their staffs, prevented the Moreland Commissioners from their investigations.

In Summary

A common denominator among the cast of characters surrounding Mr. Silver's case is that they were almost all Licensed Attorneys.  Many of them appear to have used the privileges afforded to Attorneys to further their illegal schemes. I am respectfully requesting that you refer the individuals named in this letter to the appropriate Judicial Disciplinary Committee.  Thank you for your consideration.

Sincerely,

*Michael Ziolkowski*

Michael F. Ziolkowski