```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,              :
                                       :
          -against-                    :
                                       :
                                       :
SHELDON SILVER,                        :
                                       :
                        Defendant.     :
------------------------------------------------------------ X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/23/16
```

15-CR-93 (VEC)

SEALED
MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

On November 30, 2015, Sheldon Silver ("Defendant"), former New York Speaker of the Assembly, was convicted by a jury on two counts of honest services mail fraud, two counts of extortion under color of official right, and one count of money laundering. Prior to trial, the Government filed under seal a Motion in Limine seeking to admit evidence regarding two extramarital relationships engaged in by the Defendant, in the event the Defendant introduced evidence of his good character. The Court made findings on the record under seal consistent with *Waller v. Georgia*, 467 U.S. 39, 48 (1984), sealing oral argument and the relevant motion papers for the duration of the trial. The Court, however, explicitly left open the possibility that the documents could later be unsealed.

In light of the fact that the Motion in Limine and the corresponding briefs and transcript are judicial documents to which a First Amendment and common law right of access attach, and in light of the ability reasonably to protect third party privacy interests with redactions, the Court orders that the Government's Motion in Limine, the Defendant's Opposition, the corresponding transcripts, and the letters briefing the disclosure of these records be unsealed on March 2, 2016, with limited Court-approved redactions. The delay in unsealing will give any interested party an opportunity to seek an extended stay from the U.S. Court of Appeals for the Second Circuit. If

no extension of the stay is sought before close of business March 1, 2016, the materials will be unsealed on March 2, 2016. If an interested party seeks a stay from the Second Circuit, this Order and the above referenced materials will remain under seal until the Second Circuit acts on the request for a stay.

## BACKGROUND

On October 12, 2015, the Government filed under seal a Motion in Limine Concerning Certain Character Evidence. The Government sought to introduce evidence regarding extramarital affairs between the Defendant and two women. Allegedly, the affairs occurred while the Defendant was serving as Speaker of the Assembly, and the Defendant had professional relationships related to New York State government with both of the women. Gov't Mot. 2. (The Motion did not identify either woman by name; they will be referred to in this Opinion as Jane Doe #1 and Jane Doe #2.) According to the Government, the Defendant used his position as Speaker to give preferential professional treatment to Jane Doe #1 as a lobbyist and to obtain employment in New York State government for Jane Doe #2. *Id.* at 4-5, 6. The Government sought to introduce this evidence only in the event the Defendant first sought to introduce evidence regarding his ethics or integrity, character for truthfulness and honesty, or the separation of his personal business from his official position. *Id.* at 2. Furthermore, the Government argued that the evidence was permissible impeachment evidence because it demonstrated the Defendant's use of his official position for personal gain and an effort to conceal those arrangements, which was conduct similar to the criminal conduct with which he was charged. *Id.* at 11-12. On October 15, 2015, the Defendant filed his Opposition under seal.

On October 16, 2015, the Court heard oral argument on the Motion in a closed proceeding. The Court stated on the record its findings supporting closing the oral argument: (1)

disclosure so soon before trial could jeopardize the Court's ability to select a fair jury, especially given the likely media attention to the allegations that the Defendant did not just engage in extramarital affairs but used his official position to provide professional benefits to the women; and (2) concerns about the privacy interests of the two women allegedly involved. Transcript of Sealed Oral Argument dated October 16, 2015 ("Tr.") at 115. The Court also determined that the evidence was likely inadmissible under Federal Rule of Evidence 403. Tr. 107:5-15. Nevertheless, the Court ruled that if the Defendant were to put his character directly at issue, that could open the door to this evidence. Tr. 111:21-112:1. The evidence was ultimately not introduced at trial. During oral argument, the Court decided, given concerns about the Defendant's fair trial rights, that the documents would not be unsealed before the completion of the trial, and the parties would have the opportunity to address the issue of disclosure after trial. Tr. 114:20-115:3.

On December 1, 2015, after the Defendant's conviction at trial, the Court ordered the parties to submit letter briefs regarding whether the Court should disclose the sealed Motion in Limine filings and related transcript and to propose redactions, if appropriate. Dkt. 138. The Court received sealed letter briefs from the Government, the Defendant, and Jane Does #1 and 2.[1] The Government argued in favor of disclosure with proposed redactions to protect the identities of the Jane Does; the Defendant and the Jane Does opposed any disclosure. In the event the Court rejected her preferred course of keeping the filings entirely under seal, one of the Jane Does proposed redactions that were more extensive than the Government's. The Court also

---

[1] Before the Government and the Defendant submitted their letter briefs on the disclosure issue, attorneys representing Jane Does #1 and 2 preemptively and independently reached out to the Court by letter under seal (and initially by telephone with respect to one of the Jane Does) to identify themselves and to request permission to participate in briefing this issue. Prior to this, the Court was unaware that the Jane Does were represented by counsel. By separate sealed endorsements, the Court granted counsel for Jane Does #1 and 2 permission to file letter briefs. All of these documents will be included with the documents disclosed by this Order.

received a publicly-filed letter brief from the New York Times in favor of disclosure, Dkt. 183, which was joined by NBC Universal by separate letter, Dkt. 182.

On February 11, 2016, the Court heard oral argument regarding disclosure. Counsel for the Government, Defendant, Jane Does # 1 and 2, the New York Times, and NBC made arguments to the Court. The Court closed part of the oral argument to allow the parties to address specific proposed redactions and to permit counsel for Jane Does #1 and 2 to identify themselves and to argue on behalf of their clients. As during the October 16 oral argument, the Court made findings on the record under seal to seal this portion of the oral argument. On February 17, 2016, at the Court's invitation, the parties submitted additional proposed redactions to the original Motion documents, the subsequent briefing letters, and the February 11 oral argument transcript.

## DISCUSSION

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cty. N.Y.*, 763 F.3d 235, 238-39 (2d Cir. 2014). "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"). The Supreme Court has specifically held that the First Amendment provides "the press and general public [with] a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 603 (1982). "[A]t the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open;" open criminal trials have "long been recognized as an indispensible[sic] attribute of an Anglo-American trial."

4

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (*"Amodeo I"*) ("The common law right of public access to judicial documents is said to predate the Constitution.").

It is "well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). Although "'the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access,'" an item is a "judicial document" if it is "'relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *Amodeo I*, 44 F.3d at 145). This qualified First Amendment right of access applies to certain pretrial criminal proceedings and filings. *See Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 10 (1986) (*"Press-Enterprise II"*) (pretrial hearings); *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (pretrial motions containing Title III material); *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (*"New York Times I"*) (suppression hearing and motion); *Application of The Herald Co.*, 734 F.2d 93, 99 (2d Cir. 1984) (suppression hearing); *United States v. Martoma*, No. S1 12 CR 973(PGG), 2014 WL 164181, at *5 (S.D.N.Y. Jan. 9, 2014) (motion in limine). It also applies to documents submitted in judicial proceedings that themselves implicate the right of access. *New York Times I*, 828 F.2d at 114.

Applying these principles to determine whether sealing is appropriate in a particular case is a multi-step process. First, the court must determine whether the document is a "judicial document" to which a presumption of access would attach. *See Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166, 167 n.15 (2d Cir. 2013). If it is a judicial document, the next step is to

5

determine whether the presumption of access is the common law right of access or the more robust "'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The common law right of access applies if the documents are judicial documents. *Lugosch*, 435 F.3d at 119. The First Amendment right of access applies if the Court determines: (1) that the documents "have historically been open to the press and general public" and that "public access plays a significant positive role in the functioning of the particular process in question" (the "experience and logic" approach), or (2) that the documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* at 120 (quoting *Hartford Courant Co.*, 380 F.3d at 92, 93 (quotation omitted)).

If the documents at issue "are subject to a First Amendment right of access," then the court must determine "by 'specific, on the-record-findings [whether] higher values necessitate a narrowly tailored sealing.'" *Erie Cty.*, 763 F.3d at 241, 243 (quoting *Lugosch*, 435 F.3d at 126). If the common law presumption of access attaches, the court must "determine the weight of the presumption and measure it against competing considerations." *Id.* at 241; *see also Amodeo II*, 71 F.3d at 1048-53. In any case in which some sealing of a judicial document is appropriate, the Second Circuit has directed that the court must determine whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter." *Amodeo II*, 71 F.3d at 1053; *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013).

## I. The Common Law and First Amendment Presumptions of Public Access Apply to the Motion in Limine and the Related Briefing and Transcripts.

The Government and the Defendant agree that the Motion in Limine and the October 16 oral argument transcript are judicial documents to which the common law and First Amendment presumptions of access apply. Def. Letter Br. 2; Gov't Letter Br. 5. The Court concurs. The common law and First Amendment presumptions of access also apply to the letter briefs submitted by the parties and by the Jane Does regarding disclosure of the Motion in Limine and to the corresponding February 11 oral argument transcript because they are part of judicial proceedings that themselves implicate the right of access. *See New York Times I*, 828 F.2d at 114.

One of the Jane Does, however, argues that the Motion in Limine documents are not "judicial documents." Specifically, she contends that the documents are not "relevant to the performance of the judicial function" or "useful in the judicial process" because none of the evidence addressed by the Motion in Limine was raised at trial and because the Court reserved judgment on the Motion. Lowell Letter Br. 1.[2]

Jane Doe misapplies the relevant standard. Whether the Court issued a final decision on the Motion and whether the Motion resulted in the admission or exclusion of evidence at trial does not affect the judicial document determination. *See Lugosch*, 435 F.3d at 123 (holding that documents used by parties in summary judgment briefing are judicial documents regardless of whether the court relied on them to resolve the motion). Motions in limine are "useful in the judicial process"—arguably even essential—because determining the admissibility of evidence is part of the judicial process of a trial. Deciding what evidence is admissible or inadmissible is a key component to any trial. Decisions excluding evidence as inadmissible, but noting that it

---

[2] Abbe Lowell represents one of the Jane Does, while Manuel Ortega represents the other.

7

might be admissible rebuttal evidence depending on the defense (as was the case here), are as important to shaping the course of the trial as decisions admitting evidence. Moreover, an essential function of the Court in a trial is to decide the admissibility of evidence. Therefore, motion papers and oral arguments that seek to persuade the Court to admit or exclude evidence are "relevant to the performance of the judicial function." *See New York Times I*, 828 F.2d at 114 (noting that "[t]he same logic" establishing public access to suppression hearings "applies in extending a qualified First Amendment right of access to a pretrial hearing on a defense motion to preclude the use of certain evidence at trial"); *cf. Di Pietro v. United States*, No. 02 CR. 1237-01(SWK), 2009 WL 801609, at *4-5 (S.D.N.Y. Mar. 24, 2009) (denying post trial motion to unseal anonymous letters that were never read or considered by the Court or admitted into evidence as "neither relevant nor useful in the judicial process"). Thus, because the Motion in Limine and the related documents are judicial documents, the common law presumption of public access applies to them.

The First Amendment qualified right of access also applies in light of "experience and logic." Motion in limine practice has "historically been open to the press and general public," *Lugosch*, 435 F.3d at 120, and was, with the exception of this particular Motion in Limine, open to the public in this trial. "Public access plays a significant positive role in the functioning of" evidentiary decision making, *id.*, because it "'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system,'" *Press-Enterprise II*, 478 U.S. at 9 (quoting *Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*")); *see also Application of The Herald Co.*, 734 F.2d at 99 (First Amendment presumption of access applies to suppression hearings). Just as

"suppression hearings often are as important as the trial itself," *Waller v. Georgia*, 467 U.S. at 46 (citation omitted), motions in limine can also be critical to the course of a trial.

Accordingly, the Motion in Limine, the Defendant's Opposition, the oral argument transcripts, and the letter briefs addressing disclosure are judicial documents to which the common law and First Amendment presumptions of public access apply.

## II. With the Appropriate Redactions, Exceptions to the Presumption of Public Access Do Not Outweigh the Public's Qualified Right of Access to the Motion in Limine, Related Briefing, and Transcripts.

The Court now considers whether "higher values" or "competing considerations" defeat the presumptions of public access under the First Amendment and common law, respectively, and necessitate sealing. *Erie Cty.*, 763 F.3d at 241, 243 (citations omitted). The potential countervailing "higher values" and "competing interests" in this case are the privacy interests of the Defendant and of the Jane Does and the fair trial rights of the Defendant. *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995) ("Compelling interests [possibly warranting closure] may include the defendant's right to a fair trial" and "privacy interests of the defendant, victims or other persons." (internal citations omitted)).

With respect to common law access balancing, a strong presumption of public access applies to the Motion in Limine and related documents.

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*Amodeo II*, 71 F.3d at 1049. A strong presumption "derive[s] from the role those documents played in determining litigants' substantive rights—conduct at the heart of Article III—and from the need for public monitoring of that conduct." *Id.* Moreover, when "documents are usually

9

filed with the court and are generally available, the weight of the presumption is stronger than [when] filing with the court is unusual or is generally under seal." *Id.* at 1050.

Deciding the admissibility of evidence is a quintessential exercise of a court's Article III judicial power because it is one of the court's principle responsibilities in ensuring the parties' right to a fair trial. Although motions in limine are not dispositive of a criminal case—that is the role of the jury—they directly affect what evidence a jury may consider in reaching a verdict. Thus, the Court disagrees with Defendant's contention that the public value of unsealing these records is negligible. *See* Def. Letter Br. 3. Because motions in limine, which are usually publicly available, have an important role in determining litigants' rights to a fair trial and because the public has a legitimate interest in monitoring a court's power to decide evidentiary questions, a strong presumption of access applies to the Motion in Limine and related documents. In addition, the potential relevance of the information in the Motion in Limine for sentencing—clearly an Article III judicial power that determines the Defendant's substantive rights—adds to the strong presumption of access.[3]

To decide whether sealing is appropriate in light of the public's qualified First Amendment right of access and strong common law presumption of access, the Court must follow a four-step analysis.

> First, the district court must determine, in specific findings made on the record, if there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent. Compelling interests may include the defendant's right to a fair trial; privacy interests of the defendant, victims or other persons; the integrity of significant [government] activities entitled to confidentiality, such as ongoing undercover investigations or

---

[3] In contrast to Defendant's contention, *see* Def. Letter Br. 4, the Court did not deny the Motion in Limine. Instead, despite the Court's initial reaction that the evidence would be inadmissible under Federal Rule of Evidence 403, the Court ruled that the evidence could possibly be admissible if Defendant opened the door to it during trial. Tr. 107:5-15, 111:21-112:1. Even if the Court had held the evidence was absolutely inadmissible, the Motion does not fall on the low end of the continuum of the common law presumption of access because it did not "come within [the] [C]ourt's purview solely to insure [its] irrelevance." *Lugosch*, 435 F.3d at 119.

> detection devices; and danger to persons or property. Second, if a substantial probability of prejudice is found, the district court must consider whether reasonable alternatives to closure cannot adequately protect the compelling interest that would be prejudiced by public access. Third, if such alternatives are found wanting, the district court should determine whether, under the circumstances of the case, the prejudice to the compelling interest override[s] the qualified First Amendment right of access. Fourth, if the court finds that closure is warranted, it should devise a closure order that, while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose.

*United States v. Doe*, 63 F.3d at 128 (internal citations and quotations omitted).[4]

### A. Privacy Interests

"[T]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted." *New York Times I*, 828 F.2d at 116.

> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.

*Amodeo II*, 71 F.3d at 1051; *see also Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (holding that disclosure of "intimate relations" qualifies the common law right of access). "The nature and degree of injury must also be weighed." *Amodeo II*, 71 F.3d at 1051. Finally, in balancing the qualified right of public access against privacy interests, the Court must consider "the sensitivity of the information and the subject," "the reliability of the information," and

---

[4] Although originally articulated in the context of closing court proceedings, courts in this Circuit have also applied the four-factor *Doe* test in the context of deciding motions to seal. *See United States v. Martoma*, 2014 WL 164181, at *5 n.3 (collecting cases).

11

whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

Both the Jane Does and the Defendant have an interest in maintaining the privacy of their alleged sexual relationships, which can constitute "embarrassing conduct" and "family affairs" and which are undoubtedly a sensitive subject, particularly inasmuch as the Defendant (at a minimum) is married to someone else. Disclosure risks greater prejudice to the Jane Does' privacy interests than to the Defendant's.[5] The degree of injury to the Jane Does, specifically to their family relationships and professional reputations, is not insignificant given that they have not otherwise been connected to or named in the Defendant's criminal prosecution. Moreover, because the Jane Does are not parties to the criminal prosecution, they did not have an opportunity to respond officially to the assertions in the Motion in Limine.

This otherwise personal and embarrassing conduct does, however, have public ramifications. According to the Government's Motion in Limine, Defendant used his official position to benefit each Jane Doe, who also worked in or with New York State government, for his own personal gain, echoing the abuse of public office for which the Defendant stands convicted. Therefore, these were not wholly private relationships unrelated to the Defendant's role as a publicly-elected official or to the Jane Does' connection to New York State government. *Cf. Di Pietro v. United States*, 2009 WL 801609, at *3 (maintaining under seal an

---

[5] While the Court is concerned about the Jane Does' privacy interests, they arguably are not entirely "innocent" third parties. Each allegedly had an extramarital affair with a public official and then exploited her relationship with the public official for personal gain. They, as non-parties to this action, have more legitimate privacy interests at stake than the Defendant, but their privacy interests are arguably not as great as that of an indisputably innocent third party. Moreover, the expectation of privacy in an amorous relationship where official government business and personal benefit are intertwined is necessarily less than an amorous relationship between wholly private citizens or between a private citizen and a government official where there is no intersection with state business. In the case of the former, there is the ever-present risk of public scrutiny and a legitimate public interest in ensuring that government officials are acting in the public's interest rather than in the private interest of a paramour.

ex parte letter regarding potential *Giglio* material because the subject matter was embarrassing with no public ramifications). Furthermore, the Motion in Limine appears to be substantiated; the Government asserted in the Motion that its allegations regarding the Defendant's extramarital affairs were based on a recorded conversation, investigation, and telephone records, and the Government offered to proffer its evidence to the Court.[6] Gov't Mot. 3 n.2, 5 n.3. Finally, "'[t]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.'" *United States v. Martoma*, 2014 WL 164181, at *5 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). With respect to public officials in particular, "[p]rivacy interests should be trumped when evoked to protect public officials from criticism." *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 73 n.9 (1964) ("Even the law of privacy . . . recognizes severe limitations where public figures or newsworthy facts are concerned.")).

Balancing these factors against the public's qualified right of access, the Court finds that prejudice to the Jane Does' and Defendant's privacy interests does not wholly override the public's right of access. The privacy interest of the Defendant—a public official convicted of participating in criminal schemes that were cut from the same corrupt cloth as the evidence discussed in the Motion in Limine—does not, in this case, trump the public's right of access. "The power to close a courtroom . . . during the course of a criminal prosecution and/or to seal the records . . . is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." *United States v. Cojab*, 996 F.2d 1404, 1405 (2d Cir. 1993).

---

[6] Although not conceding the allegations, Defendant did not object to the Government's good faith basis in making the factual allegations contained in the Motion in Limine. Def. Letter 1 (Feb. 17, 2016). Because the Defendant did not object to the Government's good faith basis, the Court did not require the Government to provide it with the evidence on which it based its Motion.

13

The privacy interests of the Jane Does do warrant redactions to protect their identities, especially given that disclosure of their specific identities neither furthers "the need for the public monitoring of federal courts," *Lugosch*, 435 F.3d at 123, nor "fosters an appearance of fairness [in the criminal trial]," *Globe Newspaper Co.*, 457 U.S. at 606, which are the rationales underlying the public right of access to judicial documents and proceedings. Although not individually named in the Motion, the Motion provides the nature and timeframe of the Jane Does' professional relationships with the Defendant, perhaps enabling those familiar with the parties to identify the Jane Does. The Court's redactions are narrowly tailored to obscure the identities of the Jane Does[7] while simultaneously disclosing the nature of the evidence that the Government sought to admit as rebuttal evidence, the arguments for and against admitting that evidence, the Court's ruling on the Motion, and the reasons for sealing the Motion during trial.[8]

### B. Fair Trial Rights

Defendant maintains that disclosure would compromise his fair trial rights. Specifically, Defendant argues that if he were to receive a new trial as a result of his post-trial motions or appeal, that trial would be tainted by the disclosure of the Motion in Limine. Def. Letter Br. 2.

Sealing and closure are only warranted to protect a defendant's fair trial rights if:

---

[7] One Jane Doe proposed more extensive redactions that would have redacted the Government's assertion that, as a professional lobbyist, she obtained preferential professional access to the Defendant beyond that which was given to other lobbyists. While it is true that redacting that information would further conceal her identity, it would also remove from consideration the way in which the Defendant used his official position to reward someone who provided personal benefits to him. That connection is the reason the information was potentially relevant at trial, and concealing that connection would undercut the public's interest in understanding the Government's Motion and the Court's ruling on the Motion in the first instance. It is precisely Jane Doe's lobbyist relationship with the Defendant and his alleged preferential treatment toward her in that role that creates the public ramifications that cut against Jane Doe's privacy interests.

[8] Defendant argues that the only possible reason to disclose the Motion in Limine is to "cater to a morbid craving for that which is sensational and impure" or "to promote public scandal." Def. Letter Br. 3 (quoting *Amodeo I*, 71 F.3d at 1051). The Court disagrees. As discussed above, public access to a court's decision to admit or exclude evidence—a crucial judicial function in maintaining fair trial rights—promotes public monitoring of federal courts and an appearance of fairness. Nevertheless, by obscuring the identities of the Jane Does, the Court minimizes the titillating aspect of the Motion.

> specific findings are made demonstrating that, first, there is a substantial
> probability that the defendant's right to a fair trial will be prejudiced by publicity
> that closure would prevent, and, second, reasonable alternatives to closure cannot
> adequately protect the defendant's fair trial rights.

*Press-Enter. II*, 478 U.S. at 14 (citations omitted). While "adverse publicity can endanger the ability of a defendant to receive a fair trial," *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979), "pretrial publicity[,] even pervasive, adverse publicity[,] does not inevitably lead to an unfair trial," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). "The mere fact that the suit has been the subject of intense media coverage is not . . . sufficient to justify closure." *ABC, Inc. v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004).

During the sealed oral argument, which occurred approximately two weeks before trial, this Court decided to keep the material sealed, explaining that "given the proximity between today and the beginning of trial, I am concerned that the disclosure of the [D]efendant's alleged extramarital affairs would increase the difficulty of picking a jury in this case." Tr. 115:5-8. Now, however, any potential new trial is months, if not years, away, effectively eliminating the risk that any potential prejudice cannot be mitigated through *voir dire* of prospective jurors. *See Press Enterprise I*, 478 U.S. at 15 ("Through *voir dire*, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict."); *Martoma*, 2014 WL 164181, at *7 ("Numerous courts in high-profile cases have recognized that a thorough *voir dire* may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial." (collecting cases)).[9]

---

[9] At oral argument on February 11, 2016, Defendant argued that the Motion and related documents should at a minimum remain under seal until after his appeal, at which point there would be zero risk to his fair trial rights because the question of whether he will be granted a new trial will be fully resolved. Defense counsel was, however, unable to point to any supporting authority for delaying disclosure until after appeal, and the Court is not aware of any. In contrast, the Second Circuit has emphasized the importance of contemporaneous access under the First Amendment. *See Lugosch*, 435 F.3d at 126-27. This Court has already delayed disclosure until after

15

## CONCLUSION

For the foregoing reasons, Defendant's and Jane Does #1 and 2's requests to continue sealing in their entirety the Government's Motion in Limine, the related oral argument transcripts, and the related briefing is DENIED. The documents will be disclosed with the limited Court-approved redactions[10] on March 2, 2016, unless an interested party seeks an extended stay from the U.S. Court of Appeals for the Second Circuit on or before March 1, 2016. If an interested party seeks a stay from the Second Circuit, this Order and the documents at issue in this Order will remain under seal until the Second Circuit rules on the request for a stay. *United States v. Martoma*, 2014 WL 164181, at *8 (staying order unsealing documents to allow Defendant time to stay order in the Second Circuit (citing *Huntley*, 943 F. Supp. 2d at 388; *United States v. Amodeo*, No. 92 Civ. 7744(RPP), 1994 WL 389172, at *1 (S.D.N.Y. 1994)). Because "*In re Herald* requires . . . that except in extraordinary circumstances the public have a means of learning that a closure or sealing order has been proposed or issued," *United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988), the Court simultaneously issues a separate order on the

---

conviction. Defendant's proposal, although obviously more protective, does not address why *voir dire* is insufficient to protect Defendant's trial rights. Moreover, the greater risk to Defendant's fair trial rights in the event he succeeds in obtaining a new trial is that he has already been convicted, a risk which our judicial system finds adequately mitigated by rigorous *voir dire*.

[10] Exhibits presented to the Court during oral argument on February 11 and the redactions proposed by the parties, submitted to the Court on January 21-22, 2016 and on February 17, 2016, will remain permanently under seal. Disclosure will necessarily reveal the identities of the Jane Does and obviate the Court's efforts to protect their privacy interests.

public docket to reflect that as of February 23, 2016, the Court has ordered that the documents at issue be disclosed with Court-approved redactions.

**SO ORDERED.**

Dated: February 23, 2016
      New York, NY

VALERIE CAPRONI
United States District Judge