**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

SHELDON SILVER,

Defendant.

No. 15 Cr. 93 (VEC)

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT SHELDON SILVER'S MOTION TO CONTINUE BAIL**
**AND TO STAY FINANCIAL PENALTIES PENDING APPEAL**

Joel Cohen
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York  10038
Telephone: (212) 806-5644
Facsimile:  (212) 806-6006

Steven F. Molo
Robert K. Kry
Justin V. Shur
MOLO LAMKEN LLP
540 Madison Avenue
New York, New York  10022
Telephone: (212) 607-8160
Facsimile:  (212) 607-8161

*Attorneys for Defendant*

May 13, 2016

## **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.     The Court Should Continue Mr. Silver's Bail Pending Appeal .......................................... 2

     A.     Mr. Silver Poses No Risk of Flight or Danger to the Community .......................... 2

     B.     Mr. Silver's Appeal Will Raise Substantial Questions Likely To Result in Reversal or a New Trial .......................................................................... 3

          1.     *Mr. Silver's Appeal Will Raise Substantial Questions Regarding the Official Act Requirement Under* McDonnell ........................................ 4

          2.     *Resolution of the Official Act Issue in Mr. Silver's Favor Would Likely Result in Reversal or a New Trial* .................................................... 9

          3.     *Mr. Silver's Appeal Will Raise Other Substantial Issues Likely To Result in Reversal or a New Trial* ........................................................... 13

     C.     Bail Pending Appeal Would Be Consistent with Orders in Comparable Cases ........................................................................................... 15

II.     The Court Should Stay Mr. Silver's Financial Penalties Pending Appeal ....................... 17

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cleveland v. United States*, 531 U.S. 12 (2000) ...........................................................................17

*McDonnell v. United States*, No. 15-474 (argued Apr. 27, 2016) ........................................ *passim*

*Sekhar v. United States*, 133 S. Ct. 2720 (2013)...........................................................................13

*Skilling v. United States*, 561 U.S. 358 (2010) ...............................................................14, 15, 16

*United States v. Antico*, 123 F. Supp. 2d 285 (E.D. Pa. 2000) ....................................................16

*United States v. Bah*, 574 F.3d 106 (2d Cir. 2009).........................................................................9

*United States v. Bestway Disposal Corp.*, 724 F. Supp. 62 (W.D.N.Y. 1988) ............................18

*United States v. Bradley*, 513 F. Supp. 2d 1371 (S.D. Ga. 2007)................................................19

*United States v. Bruno*, No. 1:09-cr-29 (N.D.N.Y. July 22, 2010)........................................15, 16

*United States v. Carr*, 424 F.3d 213 (2d Cir. 2005) .......................................................................9

*United States v. Coluccio*, No. 87-cr-077, 1993 WL 217133
    (E.D.N.Y. June 15, 1993), *aff'd*, 9 F.3d 1536 (2d Cir. 1993)................................................18

*United States v. Fuchs*, 218 F.3d 957 (9th Cir. 2000) ...................................................................11

*United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003)..................................................................4

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) ...................................................................15

*United States v. Gupta*, No. 12-4448, Dkt. 47 (2d Cir. Dec. 6, 2012)..........................................15

*United States v. Jefferson*, No. 1:07-cr-209, Dkt. 619 (E.D. Va. Nov. 18, 2009) ..................15, 16

*United States v. Kamdar*, No. 04-cr-156A, 2010 WL 883685 (W.D.N.Y. Mar. 8, 2010)............13

*United States v. Keifer*, No. 2:08-cr-162, 2012 WL 3878194 (S.D. Ohio Sept. 6, 2012) ............18

*United States v. Koestner*, No. 4:08-cr-00093, 2010 WL 2595300
    (S.D. Iowa June 22, 2010) ....................................................................................................18

*United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012)..................................................................9

*United States v. McDonnell*, No. 3:14-cr-12 (E.D. Va. Jan. 5, 2015)...........................................16

*United States v. Newman*, No. 13-1917, Dkt. 77 (2d Cir. June 21, 2013) ....................................15

*United States v. Ngari*, 559 F. App'x 259 (5th Cir. 2014)..............................................................18

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) ................................................................9

*United States v. Quinn*, 416 F. Supp. 2d 133 (D.D.C. 2006)..........................................................3

*United States v. Quinones*, No. 06-cr-845-FB, 2009 WL 4249588
   (E.D.N.Y. Nov. 25, 2009).........................................................................................................18

*United States v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978) ................................................................6

*United States v. Randell*, 761 F.2d 122 (2d Cir. 1985).........................................................3, 4, 9

*United States v. Ring*, No. 08-cr-274, Dkt. 297 (D.D.C. Oct. 26, 2011) ....................................15

*United States v. Ryan*, No. 06-3528 (7th Cir. Nov. 28, 2006) .......................................................15

*United States v. Siegelman*, No. 07-13163-BB (11th Cir. Mar. 27, 2008) ...................................15

*United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398 (1999) ...................................16, 17

*United States v. Tallant*, 407 F. Supp. 896 (N.D. Ga. 1975),
   *aff'd*, 547 F.2d 1291 (5th Cir. 1977)........................................................................................18

*United States v. Urciuoli*, 513 F.3d 290 (1st Cir. 2008) ................................................................6

*United States v. Walker*, No. 07-cr-50097-01, 2008 WL 4808837
   (W.D. La. Oct. 31, 2008) ....................................................................................................18, 19

*Valdes v. United States*, 475 F.3d 1319 (D.C. Cir. 2007) (en banc)..............................................6

**Statutes and Regulations**

18 U.S.C. § 1957(a) ........................................................................................................................13

18 U.S.C. § 3143(b) .................................................................................................................. *passim*

18 U.S.C. § 3282........................................................................................................................11

18 U.S.C. § 3572(g) .......................................................................................................................17

18 U.S.C. § 3572(g)(3) ...................................................................................................................19

26 U.S.C. § 457(a)(1)......................................................................................................................18

Fed. R. Crim. P. 32.2(d)................................................................................................1, 17, 18, 19

Fed. R. Crim. P. 38(c) ............................................................................................................1, 17

N.Y. Tax Law § 612 ...................................................................................................................18

**Other Authorities**

Adam Liptak, *Justices Lean Toward Bob McDonnell, Ex-Virginia Governor, in
Corruption Case*, N.Y. Times, Apr. 27, 2016............................................................................8

Sam Hananel, *Justices Seem Ready to Limit Scope of Federal Bribery Law*, N.Y.L.J.,
Apr. 28, 2016 ...........................................................................................................................8

Tony Mauro & Marcia Coyle, *A Potential Gift to Politicians, from the Justices: In Case
Against Bob McDonnell: Justices Troubled by Prosecutors' Broad Interpretation of
'Official Act,'* Nat'l L.J., May 2, 2016.....................................................................................8

## INTRODUCTION

Defendant Sheldon Silver respectfully moves the Court to continue his bail pending appeal pursuant to 18 U.S.C. § 3143(b)(1).   A critical issue in this case is whether the acts charged by the Government constitute "official acts" within the meaning of the Hobbs Act and the honest services statute.   This Court rejected Mr. Silver's proposed jury instruction and motion for acquittal on that issue, applying the broad understanding of that term reflected in current Second Circuit precedent.

In *McDonnell v. United States*, No. 15-474 (argued Apr. 27, 2016), however, the Supreme Court stands poised to radically restrict the scope of the official act requirement.   The Court granted review to settle a circuit conflict over the meaning of that term.   And the Justices' comments during argument strongly suggested that the Court will significantly constrain the Government's expansive interpretation.   If the Court does so, the Second Circuit will likely reverse Mr. Silver's conviction and remand for a new trial:   Many of the "official acts" the Government alleged would almost certainly not survive the Court's decision in *McDonnell*, and even assuming some do, the Government will not be able to show beyond a reasonable doubt that the jury would have reached the same result if instructed on those acts alone.

Mr. Silver also moves to stay the Court's fine and forfeiture order pending appeal pursuant to Fed. R. Crim. P. 38(c) and 32.2(d).   Those financial penalties would all but require Mr. Silver to liquidate the residences he jointly owns with his wife.   Imposing those penalties now, despite Mr. Silver's meritorious grounds for appeal, would impose irreparable harm and needless hardship on Mr. Silver and his wife.

## ARGUMENT

### I.  THE COURT SHOULD CONTINUE MR. SILVER'S BAIL PENDING APPEAL

Under 18 U.S.C. § 3143(b), a district court "*shall* order the release" of a defendant pending the appeal of his conviction if two conditions are met.  18 U.S.C. § 3143(b)(1) (emphasis added).  First, the Court must find by clear and convincing evidence that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community."  *Id.* § 3143(b)(1)(A).  And second, the Court must find that "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] . . . an order for a new trial."  *Id.* § 3143(b)(1)(B).  Both requirements are met here.

#### A.  Mr. Silver Poses No Risk of Flight or Danger to the Community

Mr. Silver poses no flight risk or danger to others.  From the outset of this case, Mr. Silver has been released on his own recognizance without incident.  There is no reason to expect any departure from that course of conduct now.

On January 22, 2015, Magistrate Judge Maas ordered Mr. Silver released on his own recognizance upon execution of an unsecured personal recognizance bond of $200,000.  Dkt. 6.  Mr. Silver's conditions of release included surrendering his passport, restricting his travel to the continental United States, and providing advance notice of certain travel.  Dkts. 6, 7.  At Mr. Silver's arraignment, the Court continued his release and permitted modification of the notice requirement should the parties so agree.  *See* Feb. 24, 2015 Hr'g Tr. at 14:9-19 (Dkt. 18).  At his arraignment on the Superseding Indictment, the Government consented to that modification, and the Court approved it.  *See* Apr. 28, 2015 Hr'g Tr. at 13:15-22 (Dkt. 37).  Following the jury's verdict on November 30, 2015, the Court continued Mr. Silver's bail with the same conditions, with no opposition from the Government.  Trial Tr. at 3232:4-9.  More than five months have now passed without incident.

In short, Mr. Silver has fully complied with all conditions of release throughout the case, and there is no reason to doubt he will continue to do so.  Even the Probation Office recognized that Mr. Silver is "not viewed as a flight risk or a danger to the community" given his "compliance with all terms and conditions of his pretrial release."  PSR at 38.  Mr. Silver's unbroken track record of compliance with those conditions supports continuing his bail pending appeal.  *See United States v. Quinn*, 416 F. Supp. 2d 133, 135 (D.D.C. 2006) (granting release pending appeal where defendant "was released on bond shortly after his arrest in December 2004 and remained free pending trial (and then pending sentencing) in his home state of Kentucky in full compliance with the bond conditions").

Mr. Silver's personal circumstances make him a singularly unlikely flight risk.  Mr. Silver has no criminal history and is 72 years old.  PSR ¶¶ 61-67, 83.  He also has deep ties to the Orthodox Jewish community in which he actively participates, and to the countless residents, constituents, neighbors, and friends who wrote the Court seeking leniency on his behalf.  *See* Dkts. 262-3 to 262-18.  Finally, Mr. Silver's health condition confirms that he presents no risk of flight or danger to anyone.  *See* Jan. 20, 2016 Letter of Michael J. Zelefsky, MD, Professor of Radiation Oncology (Dkt. 262-19).  The record is thus more than sufficient to establish by clear and convincing evidence that Mr. Silver is not a flight risk or danger to others.

### B.    Mr. Silver's Appeal Will Raise Substantial Questions Likely To Result in Reversal or a New Trial

Mr. Silver also satisfies the second condition for bail pending appeal because his appeal "is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] . . . an order for a new trial."  18 U.S.C. § 3143(b)(1)(B).

As the Second Circuit explained in *United States v. Randell*, 761 F.2d 122 (2d Cir. 1985), the requirement that an appeal be "likely to result in . . . reversal [or] . . . an order for a new trial"

does **not** mean the defendant must be likely to prevail.  *Id.* at 125.  Rather, that condition refers to the likely impact **if the defendant's appeal succeeds**:  The defendant must show that, "**if** th[e] substantial question is determined favorably to [the] defendant on appeal, that decision is likely to result in reversal or an order for a new trial."  *Id.* (emphasis added).  Bail therefore is **not** conditioned "upon a district court's finding that its own judgment is likely to be reversed on appeal."  *Id.* at 124; *see also United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003) (defendant "need not show a likelihood of success on appeal").

As to the probability of success on appeal, the statute requires only a "**substantial question** of law or fact."  18 U.S.C. § 3143(b)(1)(B) (emphasis added).  That is a low threshold. "[A] substantial question 'is one of **more substance than would be necessary to a finding that it was not frivolous**.  It is a "**close**" question or one that **very well could be decided the other way**.'"  *Randell*, 761 F.2d at 125 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)) (emphasis added).  Mr. Silver's anticipated appeal easily satisfies that standard.

1. ***Mr. Silver's Appeal Will Raise Substantial Questions Regarding the Official Act Requirement Under* McDonnell**

Mr. Silver expects to raise on appeal a substantial issue relating to the "official act" requirement – an element of both honest services fraud and extortion.  The scope of that requirement is now in significant flux in light of the Supreme Court's forthcoming decision in *McDonnell v. United States*, No. 15-474 (argued Apr. 27, 2016).

At trial, this Court instructed the jury that "[o]fficial action includes any action taken or to be taken under color of official authority."  Dkt. 135 at 17:22-23.  As the Government pointed out during the charge conference, that instruction was supported by existing Second Circuit precedent.  *See* Nov. 19, 2015 Hr'g Tr. at 2785:8-2786:9 (Dkt. 160) (citing *United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013)).  The defense nonetheless asked the Court to instruct

the jury that, "[t]o prove an 'official act,' the government must prove the exercise of actual governmental power, the threat to exercise such power, or pressure imposed on others to exercise actual governmental power." Dkt. 298 Ex. A; Nov. 19, 2015 Hr'g Tr. at 2784:23-2785:1 (Dkt. 160). The defense acknowledged that this instruction was supported only by out-of-circuit authority but nonetheless contended that it was a "correct statement of the law." Nov. 19, 2015 Hr'g Tr. at 2786:10-12 (Dkt. 160). This Court – bound by existing precedent – denied the requested instruction. *Id.* at 2786:13-16.

Mr. Silver renewed his "official act" argument in his Rule 29 motion. Dkt. 179 at 13, 20. "Most of the 'acts' the Government alleged were not 'official' in any conceivable sense," he urged, and the few that arguably were failed for other reasons such as the statute of limitations. *Id.* at 13. The Court rejected that argument too, again relying on an expansive conception of official acts. Dkt. 294 at 23-25. Among the acts the Court deemed sufficiently "official" were Mr. Silver's alleged "offer[] to use his Assembly position and staff to assist a mesothelioma fundraiser . . . to obtain necessary City permits," his "recommend[ation] [of] Dr. Taub's son (using his official Assembly letterhead) to a prospective employer," his unspecified "oppos[ition] [to] the relocation of the methadone clinic," and the fact that he "met privately with Glenwood and its lobbyist to confirm that Glenwood was satisfied" with pending rent legislation. *Id.* at 23-24.

Whatever the merits of those rulings under existing Second Circuit law, there is at least a "substantial question" whether they will survive the Supreme Court's impending decision in *McDonnell v. United States*, No. 15-474 (argued Apr. 27, 2016). The *McDonnell* case arises out of the conviction of Robert McDonnell, former Governor of Virginia, under the same statutes the Government invoked here. The question presented is "whether 'official action' is limited to exercising actual governmental power, threatening to exercise such power, or pressuring others to exercise such power, and whether the jury must be so instructed; or, if not so limited, whether

the Hobbs Act and honest-services fraud statute are unconstitutional."  Brief for Petitioner at i, *McDonnell*, No. 15-474 (Feb. 29, 2016) (attached as Exhibit A).  The defendant in *McDonnell* urges that the acts charged "were limited to the most routine political activities: arranging meetings, asking questions, and attending events."  *Id.* at 1.  And he contends that his conviction should be reversed because he "never exercised any governmental power on behalf of his benefactor, promised to do so, or pressured others to."  *Id.*

That the Supreme Court granted review in *McDonnell* is reason enough to deem the question presented in that case "substantial."  As the petition for a writ of certiorari explained, the Fourth Circuit's expansive conception of "official acts" conflicted with the narrower standards applied elsewhere.  *See* Petition for a Writ of Certiorari at 18-22, *McDonnell*, No. 15-474 (Oct. 13, 2015) (attached as Exhibit B).  The petition cited cases from the District of Columbia, First, and Eighth Circuits.  *See Valdes v. United States*, 475 F.3d 1319, 1324-25 (D.C. Cir. 2007) (en banc) (holding that an official act requires an "inappropriate influence on decisions that the government actually makes" and not mere "misuse of government resources"); *United States v. Urciuoli*, 513 F.3d 290, 294 (1st Cir. 2008) (holding that mere lobbying of other officials is not an official act); *United States v. Rabbitt*, 583 F.2d 1014, 1028 (8th Cir. 1978) (reversing conviction where "no testimony established that any state contracting officer awarded any contract . . . because of [the defendant's] influence").  The Supreme Court's decision to review that circuit conflict raises at least a substantial possibility that the Court will adopt the narrower conception of official acts followed in other circuits.

If there were formerly any doubt, the Justices' comments at oral argument erase it.  *See* Transcript of Oral Argument, *McDonnell*, No. 15-474 (Apr. 27, 2016) (attached as Exhibit C). The Justices harshly criticized the Government's position on the official act requirement, providing strong grounds to believe the Court will adopt a substantially narrower view.

6

Justice Breyer, for example, repeatedly expressed concern that the Government's position would criminalize routine acts such as urging other officials to address a particular matter in response to constituent concerns.  *See McDonnell* Argument Tr. at 15:12-17 ("[E]very day of the week politicians write on behalf of constituents letters to different parts of the government, saying, will you please look at the case of Mrs. So-and-so who was evicted last week?  ***And that's so common, you can't pick that up.***" (emphasis added)); *id.* at 16:11-22 ("Letters go by the dozens over to the secretary of HUD . . . and they say, my Constituent Smith has a matter before you that has been pending for 18 months; we would appreciate it if you would review that and take action.  And then the elected official says to Smith, I did my best on this. . . .  ***A crime? My goodness.***" (emphasis added)); *id.* at 18:10-15 (similar); *id.* at 33:3-10 (similar); *id.* at 38:6-11 (similar).  Justice Breyer thought the Government's position "***puts at risk behavior that is common . . . throughout this country***" and raised serious separation of powers problems.  *Id.* at 32:6-20 (emphasis added).

The Chief Justice echoed those concerns:  "[If] that person calls you up and says, can you meet with so-and-so?  All he wants to do is sit down with you and persuade you why you should file a brief supporting his case. . . .  ***So is your answer, yes, that that's a felony?***"  *McDonnell* Argument Tr. at 30:8-16 (emphasis added); *see also id.* at 43:18-44:4 ("He has a nice day fishing for trout, and they talk about whether they can get tax credits . . . .  Now, is that a felony, because he's . . . accepted an afternoon of trout fishing, and he discussed official business at that time?").  The Chief Justice went so far as to suggest that the Government's position would render the statutes unconstitutionally vague.  *Id.* at 50:11-16.

Justice Kagan, for her part, asked how "essentially hosting a party and allowing [the alleged bribe payor] to invite some people" could possibly constitute an "official act."  *McDonnell* Argument Tr. at 52:1-9.  Justice Alito was concerned that the Government had made

it a crime for a senator to "write[ ] a Federal agency and say[ ], this union or this company is . . . critical to the economy of my State . . . – would you please meet with them?"  *Id.* at 40:22-41:7. And Justice Kennedy proposed an interpretation far narrower than the one the Government was defending:  "It seemed to me ***the 'official act' is exercise of governmental power to require citizens to do or not to do something, or to shape the law that . . . governs their conduct***."  *Id.* at 21:17-21 (emphasis added).

It is no surprise, therefore, that media accounts of the argument – by experienced journalists who regularly cover the Supreme Court – broadly reported that the Court appeared poised to reject the Government's expansive interpretation.  *See, e.g.*, Tony Mauro & Marcia Coyle, *A Potential Gift to Politicians, from the Justices: In Case Against Bob McDonnell: Justices Troubled by Prosecutors' Broad Interpretation of 'Official Act*,*'* Nat'l L.J., May 2, 2016 (describing the "gulf between the government's long-standing definition of 'official acts' that can lead to bribery convictions and the court's growing perception that some prosecutors are overreaching and stretching the scope of criminal laws beyond recognition"); Adam Liptak, *Justices Lean Toward Bob McDonnell, Ex-Virginia Governor, in Corruption Case*, N.Y. Times, Apr. 27, 2016 (observing that "a majority of the justices seemed inclined to vote in Mr. McDonnell's favor"); Sam Hananel, *Justices Seem Ready to Limit Scope of Federal Bribery Law*, N.Y.L.J., Apr. 28, 2016 ("Justices across the ideological spectrum expressed major concerns that the laws give prosecutors too much power to criminalize the everyday acts that politicians perform to help constituents.").  Those reports were correct:  The Court appears almost certain to significantly restrict the "official act" requirement, undermining the precedents on which this Court relied when it instructed the jury and denied Mr. Silver's Rule 29 motion. At a minimum, that prospect provides grounds for a "substantial question" over those rulings.

### 2. *Resolution of the Official Act Issue in Mr. Silver's Favor Would Likely Result in Reversal or a New Trial*

If the Supreme Court adopts the narrower conception of "official act" that the petitioner advocates in *McDonnell*, that decision is "likely to result in . . . reversal [or] . . . an order for a new trial" in this case. 18 U.S.C. § 3143(b)(1)(B); *see Randell*, 761 F.2d at 125.

It is well-settled that "'[a]n erroneous instruction, unless harmless, requires a new trial.'" *United States v. Bah*, 574 F.3d 106, 114 (2d Cir. 2009). "The burden of establishing harmlessness is on the government." *United States v. Quattrone*, 441 F.3d 153, 181 (2d Cir. 2006). And an instruction that fails to describe an essential element of the offense is harmless only if it is "'***clear beyond a reasonable doubt*** that a rational jury would have found the defendant guilty absent the error.'" *United States v. Carr*, 424 F.3d 213, 218 (2d Cir. 2005) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)) (emphasis added); *see also United States v. Mahaffy*, 693 F.3d 113, 135-36 (2d Cir. 2012) (holding that an honest-services fraud instruction that omitted *Skilling*'s bribes or kickbacks requirement required a new trial because it was "not clear beyond a reasonable doubt that the Defendants' convictions rested on unanimous findings of bribes or kickbacks"); *Quattrone*, 441 F.3d at 181 (ordering new trial because "we cannot confidently say that if a rational jury was properly instructed, it is clear to us beyond a reasonable doubt that they would have convicted Quattrone").

The Government cannot carry that burden here. Most of the "official acts" alleged in this case, even if they satisfy current Second Circuit law, would not constitute official acts under the more restrictive standard urged in *McDonnell*. For example, the Government urged the jury to convict Mr. Silver on the asbestos counts because "on official Assembly letterhead he recommend[ed] Dr. Taub's daughter to Judge Schoenfeld"; "he me[t] with Dr. Taub in his office and sen[t] Dr. Taub a letter offering his official assistance with this race to raise money for

mesothelioma research"; and "he recommend[ed] Dr. Taub's son for a job with the organization

OHEL."  Trial Tr. 2858:15-2859:4 (summation).  None of those acts would remotely qualify as

"official" under the narrower standard the Supreme Court is contemplating in *McDonnell*.  They

do not amount to "exercising actual governmental power, threatening to exercise such power, or

pressuring others to exercise such power."  Brief for Petitioner at i, *McDonnell*, No. 15-474 (Feb.

29, 2016).  Nor do they constitute "exercise[s] of governmental power to require citizens to do or

not do something, or to shape the law that . . . governs their conduct."  *McDonnell* Argument Tr.

at 21:17-21 (Kennedy, J.).

On the real estate charges, the Government urged the jury to convict Mr. Silver because

he "took private, confidential meetings with the developers and their lobbyists in his office

where they could spell out for him their confidential positions on the major real estate legislation

coming before [him]"; and he "helped shut down the methadone clinic" that "was going to open

up near 10 Liberty Street near one of the Glenwood buildings" through some unspecified means.

Trial Tr. 2891:7-11, 2893:25-2894:15 (summation).   Again, neither act would qualify as

"official" under the narrower standard proposed in *McDonnell*.   Indeed, the "confidential

meetings with the developers" that the Government condemned in this case are precisely the sort

of political access that the Supreme Court seems poised to find insufficient.  *See, e.g.*,

*McDonnell* Argument Tr. at 30:8-16 (Roberts, C.J.) ("[If] that person calls you up and says, can

you meet with so-and-so?  All he wants to do is sit down with you and persuade you why you

should file a brief supporting his case. . . .  So is your answer, yes, that that's a felony?").

While some of the other alleged "official acts" may present closer calls, those acts would

not support a finding of harmless error.  To sustain the conviction, the Government would have

to show that it was ***clear beyond a reasonable doubt*** that the jury based its conviction on the acts

that were still "official" under the narrower *McDonnell* standard rather than those that were not. The Government cannot make that showing.

Many of the alleged acts cannot support the verdict as a matter of law because they are outside the five-year limitations period.  18 U.S.C. § 3282.  For example, even assuming the two HCRA grants to Columbia University and the $25,000 grant to the Shalom Task Force were actual exercises of government authority, *see* Trial Tr. 2858:1-17 (summation), they are clearly time-barred.  Mr. Silver approved the HCRA grants on July 5, 2005, and November 30, 2006.  GX 367-1; GX 284.  And the Shalom Task Force grant was awarded in May 2008.  GX 389-1, 389-2.  Mr. Silver was not indicted until February 19, 2015 – almost seven years later.  Dkt. 9; *see also* Dkt. 294 at 23 (acknowledging that Mr. Silver "was not indicted until . . . almost ten years" after the HCRA grants).  Those acts thus clearly cannot support the conviction.  *See United States v. Fuchs*, 218 F.3d 957, 963 (9th Cir. 2000) (reversing conviction where "[o]f the ten overt acts alleged in the indictment, the acts that most strongly support a finding of conspiracy fell outside the statute of limitations," so that the jury "could have found [defendants] guilty based on acts [that] were barred by the statute of limitations").

In other instances, the Government would not be able to show harmlessness beyond a reasonable doubt because of disputes over whether particular acts were part of any quid pro quo. For example, the Government claimed that Mr. Silver exchanged referrals for an Assembly proclamation and resolution honoring Dr. Taub's achievements.   Trial  Tr.  2858:18-22 (summation).  But even assuming those acts were "official" – Mr. Silver never actually voted on them, Trial  Tr.  at  1271:24-1272:11  (Miller);  GX  148,  149 – it  is  hardly  clear  beyond  a reasonable doubt that the jury would have convicted based on the resolution and proclamation alone.  Dr. Taub did not claim they were part of any quid pro quo.  Trial Tr. at 460:13-16 (Taub) ("Q. And I take it you would not send patients to Weitz & Luxenberg in exchange for receiving a

resolution?  A. It was nice to get the plaque.").  He did not even know about them beforehand. *Id.* at 393:2-4 (Taub).  Dr. Taub understood he had received the honors "[b]ecause [Mr. Silver] was acting as a friend, and I valued that."  *Id.* at 398:21-399:1 (Taub); *see* GX 327 (thanking Mr. Silver for the "handsome plaque" and stating, "I greatly value your friendship").  The jury readily could have found that Mr. Silver gave Dr. Taub the resolution and proclamation out of genuine friendship and esteem for his work – whatever it may have thought about the other acts alleged in the case.

The same is true for the real estate charges.  The Government claimed that Mr. Silver exchanged referral fees for favorable legislation in the Rent Act of 2011.  Trial Tr. 2892:20-2893:20 (summation).  But there was ample evidence from which the jury could have found that the Rent Act was not a quid pro quo at all.  *See, e.g.*, Trial Tr. at 1674:7-13 (Meara) ("Q. So, for this period of time, between 2003 and 2011, there had been no improvements to tenants in the rent regulation laws, correct?  A. That's correct.  Q. But in 2011 there were significant improvements for tenants in the rent regulation law, weren't there?  A. I would say so."); *id.* at 1886:13-17 (Runes) ("Q. You believe that Mr. Silver always voted against Glenwood; is that right?  A. Uniformly.  Q. Uniformly?  A. Yes.").  For the PACB, the evidence likewise refuted any quid pro quo:  Mr. Silver did not even participate in the votes, and there is no evidence that his so-called "proxy" was in any way influenced by the referral fees Mr. Silver received.  *See, e.g.*, Trial Tr. at 1816:13-1816:22 (Runes) ("Q. To your knowledge, Mr. Silver never intervened in any way for your applications for that PACB approval?  A. Neither for nor against."); *id.* at 1817:13-1817:24 (Runes) (agreeing that it was "really the Housing Finance Authority who primarily decides whether to fund a particular bond issue").

In short, if the Supreme Court adopts a narrow definition of "official act" in *McDonnell*, this will be a paradigmatic case in which uncertainty over the basis for the jury's verdict would

require a new trial.  There is simply no way to know whether the jury convicted on the basis of all the "official acts" the Government alleged, or instead thought that some were official and some not – and improperly convicted on the basis of the ones it erroneously deemed official.  If the Supreme Court does what it appears poised to do in *McDonnell*, the Government will not be able to show that the instructional error in this case was harmless beyond a reasonable doubt.[1]

### 3. *Mr. Silver's Appeal Will Raise Other Substantial Issues Likely To Result in Reversal or a New Trial*

Although the *McDonnell* issue alone is sufficient to warrant bail pending appeal, Mr. Silver expects to raise several other substantial issues that collectively would likely require reversal or a new trial.

For example, Mr. Silver has contended throughout the case that the Government must prove a ***deprivation*** of property to establish extortion under the Hobbs Act.  *See, e.g.*, Dkt. 124 at 3 (proposed instruction); Dkt. 179 at 11-12, 19 (sufficiency challenge).  In *Sekhar v. United States*, 133 S. Ct. 2720 (2013), the Supreme Court expressly held that the Hobbs Act "requires 'not only the ***deprivation*** but also the ***acquisition*** of property.' " *Id.* at 2725 (emphasis added).  This Court nonetheless ruled that it "does not read the *dicta* in *Sekhar* describing 'deprivation' to add an element to Hobbs Act extortion" but instead merely to "underscore the requirement that the victim must transfer the extorted property to the perpetrator."  Dkt. 294 at 19; *see also* Nov. 19, 2015 Hr'g Tr. at 2708:1-2709:4 (Dkt. 160).  The Second Circuit could well disagree with that

---

[1] Because the money laundering charge required the jury to find "criminally derived property" and proceeds "derived from specified unlawful activity," 18 U.S.C. § 1957(a), a new trial on the honest-services fraud and extortion counts would necessarily require a new trial on the money laundering count as well.  *See United States v. Kamdar*, No. 04-CR-156A, 2010 WL 883685, at *9 (W.D.N.Y. Mar. 8, 2010) (dismissing § 1957 count where Government failed to establish mail fraud from which property allegedly derived).  In addition, Mr. Silver's showing that his appeal presents substantial questions likely to result in reversal or a new trial necessarily implies that his appeal "is not for the purpose of delay."  18 U.S.C. § 3143(b)(1)(B).

interpretation, which effectively reads the word "deprivation" out of the opinion.  The issue is plainly significant:  Mr. Silver did not ***deprive*** Dr. Taub of mesothelioma leads – Dr. Taub remained free to give out the same leads to other law firms as well.  Nor did Mr. Silver deprive the developers of legal fees – they would have paid those fees to other law firms regardless.

Mr. Silver likewise objected that the Government could not prove money laundering based on payments from an account with commingled funds, some from the charged unlawful activities, but some untainted.  Dkt. 179 at 21-22.  This Court disagreed – but only after acknowledging that "[t]he Second Circuit has not addressed" the issue and that the question is the subject of a wide-ranging circuit split in which at least two circuits agree with Mr. Silver's position.  Dkt. 294 at 25-27.  That issue too presents a substantial question.

Another substantial question is whether the conduct at issue constitutes a "paradigmatic case[ ] of bribes [or] kickbacks" as required for honest services fraud under *Skilling v. United States*, 561 U.S. 358 (2010), rather than a mere conflict of interest or self-dealing.  Dkt. 39 at 14-18; Dkt. 42 at 6-8; Dkt. 179 at 12-13, 19; *cf.* Dkt. 294 at 22-23 (ruling).  Yet another is whether the evidence was sufficient to prove a quid pro quo – or whether the instructions were adequate to convey that concept to the jury.  Dkt. 179 at 4-11, 14-19; Dkt. 124 at 2-3; *cf.* Dkt. 294 at 11-18 (ruling); Dkt. 135 at 18 (instruction).

Finally, Mr. Silver made a number of objections to the admission or exclusion of evidence that the Second Circuit could reasonably find to be grounds for a new trial.  Dkt. 180 at 1-15; *cf.* Dkt. 294 at 28-29 & n.10 (ruling).  Among other things, Mr. Silver challenged the Government's inflammatory and gratuitous evidence of Glenwood's massive campaign contributions, Mr. Silver's alleged financial privilege and access to private investment vehicles, and Dr. Taub's exchange of referrals for donations from the Simmons Foundation.  Dkt. 180 at 3-6, 10-13.  He also challenged the Court's ruling effectively denying him the ability to show

14

good faith in the revisions to his state disclosure forms.  *Id.* at 8-10.  Any of those rulings could result in a new trial.  For all those reasons, the Court should continue bail pending appeal.

### C.    Bail Pending Appeal Would Be Consistent with Orders in Comparable Cases

Granting bail pending appeal here would be fully consistent with comparable prosecutions.  Courts have routinely granted bail pending appeal in public corruption cases that raised substantial legal issues.  *See, e.g.*, *United States v. Bruno*, No. 1:09-cr-29 (N.D.N.Y. July 22, 2010) (New York State Senator Joseph Bruno) (honest services fraud after *Skilling*); *United States v. Ring*, No. 08-cr-274, Dkt. 297 at 2-3 (D.D.C. Oct. 26, 2011) (lobbyist and former associate of Jack Abramoff) (scope of *Skilling* and gratuity statute); *United States v. Jefferson*, No. 1:07-cr-209, Dkt. 619 (E.D. Va. Nov. 18, 2009) (Louisiana Congressman William Jefferson) (definition of official act).  Circuit courts have done so where district courts have not.  *See, e.g.*, *United States v. Siegelman*, No. 07-13163-BB (11th Cir. Mar. 27, 2008) (Alabama Governor Don Siegelman) (quid pro quo requirement under bribery statute); *United States v. Ryan*, No. 06-3528 (7th Cir. Nov. 28, 2006) (Illinois Governor George Ryan) (conflict-of-interest instruction after *Skilling*).  The Second Circuit has also granted bail pending appeal in other recent white-collar cases.  *See, e.g.*, *United States v. Newman*, No. 13-1917, Dkt. 77 (2d Cir. June 21, 2013); *United States v. Gupta*, No. 12-4448, Dkt. 47 (2d Cir. Dec. 6, 2012).  It has done so even when it ultimately affirmed the conviction.  *Compare Gupta*, No. 12-4448, Dkt. 47 at 1 (granting bail), *with United States v. Gupta*, 747 F.3d 111, 140 (2d Cir. 2014) (affirming conviction).

As those decisions make clear, a court's certainty in the correctness of its rulings is not a basis for denying bail pending appeal if the question posed is substantial.  Judge Ellis's ruling in *Jefferson* is instructive.  In denying Congressman Jefferson's Rule 29 motion, Judge Ellis rejected the claim that the "government failed to present sufficient evidence that [Jefferson performed] . . . 'official acts'" to support his conviction for bribery and honest services fraud.

*Jefferson*, No. 1:07-cr-209, Dkt. 571 at 2 (E.D. Va. Aug. 8, 2009).  But the judge nevertheless

continued bail pending appeal, explaining:

> I was confident that [Jefferson's conduct] fits within the 'official act' definition.
> And I so ruled and wrote opinions on it, and the jury was so instructed. . . .  ***As I
> said, I don't have any doubt that my reasoning is correct and that it is soundly
> based on existing authority*** . . . .  I think influence peddling, given the evidence
> in this case, clearly amounts to a bribe.  But I see that as an argument for a
> substantial question.  So I think I do find a substantial question for appeal in these
> circumstances.  By no means do I think that it is likely to result in a reversal.  If I
> did, I wouldn't have ruled that way.  ***But as courts have defined substantial
> question, I think it is a question that could be decided the other way.***

Transcript, *Jefferson*, No. 1:07-cr-209, at 48:24-50:2 (E.D. Va. Nov. 18, 2009), *reproduced as*

Ex. B to Dkt. 602 in *United States v. McDonnell*, No. 3:14-cr-12 (E.D. Va. Jan. 5, 2015)

(emphasis added).

Courts have been especially likely to continue bail pending appeal when impending or

intervening Supreme Court authority casts doubt on the basis for a conviction.  In *United States

v. Bruno*, No. 1:09-cr-29 (N.D.N.Y. July 22, 2010), for example, Judge Sharpe continued bail

pending appeal for New York State Senator Joseph Bruno in light of the Supreme Court's

decision in *Skilling v. United States*, 561 U.S. 358 (2010), issued nearly six months after his

guilty verdict.   Judge Sharpe agreed with Bruno that *Skilling* raised a substantial question

regarding the instructions permitting the jury to convict on a conflict-of-interest theory.  *See

United States v. Bruno*, 1:09-cr-29 (N.D.N.Y. July 22, 2010) (text order); *Bruno*, No. 1:09-cr-29,

Dkt. 307 (N.D.N.Y. July 2, 2010) (defendant's submission).

Similarly, in *United States v. Antico*, 123 F. Supp. 2d 285 (E.D. Pa. 2000), a zoning

inspector was convicted of extortion and honest services fraud for issuing permits in exchange

for payments and other benefits.  *Id.* at 290.  The defendant sought bail pending appeal, arguing

that a case decided during trial – *United States v. Sun-Diamond Growers of California*, 526 U.S.

398 (1999) – called into question the extortion instructions, while another case decided during appeal – *Cleveland v. United States*, 531 U.S. 12 (2000) – precluded conviction for honest services fraud. 123 F. Supp. 2d at 287-88, 290-91. The district judge continued the defendant's bail pending appeal. *Sun-Diamond*, "although not directly on point," had "certainly enough force" to raise a "substantial question" regarding the extortion instructions. *Id.* at 288. And there was also "some force to defendant's contention that, following *Cleveland*, zoning permits may not be considered property for the purposes of federal wire fraud charges." *Id.* at 290.

This case is no different. Mr. Silver is no more a flight risk or a danger to the community than any of those other public officials. He plans to raise substantial questions on appeal based on an impending Supreme Court decision that will likely significantly restrict the scope of the statutes he was convicted of violating – along with other substantial legal issues. Mr. Silver satisfies the standards for bail pending appeal, and this Court should continue his release.

## II.   THE COURT SHOULD STAY MR. SILVER'S FINANCIAL PENALTIES PENDING APPEAL

The Court should also stay its fine and forfeiture order pending appeal. Under Federal Rule of Criminal Procedure 38(c), the Court may "stay a sentence to pay a fine" on "any terms considered appropriate." Fed. R. Crim. P. 38(c). By statute, absent exceptional circumstances, the Court must:

> (1) require the defendant to deposit, in the registry of the district court, any amount of the fine that is due;
>
> (2) require the defendant to provide a bond or other security to ensure payment of the fine; or
>
> (3) restrain the defendant from transferring or dissipating assets.

18 U.S.C. § 3572(g). Similarly, Federal Rule of Criminal Procedure 32.2(d) permits a court to "stay the order of forfeiture on terms appropriate to ensure that the property remains available

pending appellate review." Fed. R. Crim. P. 32.2(d).

Whether to stay a fine is a matter "committed to the sound discretion of the court." *United States v. Tallant*, 407 F. Supp. 896, 897 (N.D. Ga. 1975), *aff'd*, 547 F.2d 1291 (5th Cir. 1977). In exercising that discretion, courts traditionally consider the defendant's likelihood of success on appeal. *See, e.g.*, *United States v. Koestner*, No. 4:08-cr-00093, 2010 WL 2595300, at *1 (S.D. Iowa June 22, 2010) ("When considering such a stay, the Court must consider the legal merits of the appeal . . . ."); *United States v. Keifer*, No. 2:08-cr-162, 2012 WL 3878194, at *4 (S.D. Ohio Sept. 6, 2012). Courts also consider the threat of irreparable injury absent a stay. *See United States v. Walker*, No. 07-cr-50097-01, 2008 WL 4808837, at *2 (W.D. La. Oct. 31, 2008) (staying fine based on "the potential for irreparable injury"); *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62, 70 (W.D.N.Y. 1988); *United States v. Coluccio*, No. 87-cr-077, 1993 WL 217133, at *1 (E.D.N.Y. June 15, 1993), *aff'd*, 9 F.3d 1536 (2d Cir. 1993). Similar factors inform a court's decision to stay a forfeiture order pending appeal. *See, e.g.*, *United States v. Ngari*, 559 F. App'x 259, 272 (5th Cir. 2014) (collecting cases); *United States v. Quinones*, No. 06-cr-845-FB, 2009 WL 4249588, at *2 (E.D.N.Y. Nov. 25, 2009).

Those factors warrant a stay here. First, for all the reasons above, Mr. Silver's appeal presents a host of meritorious issues that may well be decided in his favor. For the same reason those issues warrant bail pending appeal, they also warrant a stay of the financial penalties.

Second, absent a stay, Mr. Silver would suffer irreparable injury – particularly from the fine. The judgment directs Mr. Silver to pay $1.5 million no later than June 14, 2016. Dkt. 297 at 7. As set forth in the presentence report, however, Mr. Silver has only approximately $2.2 million in assets available to pay that fine. PSR ¶ 107. Of that amount, nearly $794,000 consists of his state deferred compensation – an amount that would be subject to heavy taxation if it were liquidated to pay the fine. *Id.*; *see* 26 U.S.C. § 457(a)(1); N.Y. Tax Law § 612. Of the

remainder, more than $850,000 consists of his share of two residences that Mr. Silver owns jointly with his wife, worth $750,000 and $101,000. PSR ¶ 107. Ordering Mr. Silver to pay $1.5 million by June 14, 2016 would thus all but require the Silvers to sell both residences – depriving Mrs. Silver of the home she has occupied for decades. While the Government could refund the fine if Mr. Silver prevailed on appeal, it could not restore their home.

In *United States v. Walker*, No. 07-cr-50097-01, 2008 WL 4808837 (W.D. La. Oct. 31, 2008), the court adopted precisely that reasoning to stay a fine pending appeal to the extent it required the defendant to sell his residences. 2008 WL 4808837, at *2. The court cited "the potential for irreparable injury should Walker prevail in his appeals, particularly . . . his ability to purchase comparable homes in comparable neighborhoods at comparable prices." *Id.* Similarly, in *United States v. Bradley*, 513 F. Supp. 2d 1371 (S.D. Ga. 2007), the court recognized that the threat of irreparable harm from the sale of a jointly owned residence is "magnified where a defendant's wife is ***not*** convicted of any crime, jointly owns a residence with her convicted husband, lives in it, and non-ill-gotten funds figure into the residence's value." *Id.* at 1380.

Accordingly, the Court should stay its fine and forfeiture order pending appeal, subject to terms and conditions it considers appropriate. In particular, Mr. Silver would not object to an order restraining him from transferring or dissipating assets necessary to satisfy the penalties if his conviction is affirmed on appeal. 18 U.S.C. § 3572(g)(3); Fed. R. Crim. P. 32.2(d).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Mr. Silver's motion for continued bail pending appeal and stay the fine and forfeiture order pending appeal.  In the event the Court denies this motion, Mr. Silver respectfully requests that the Court stay his surrender date pending the timely filing and disposition of a renewed motion for bail with the court of appeals.


Dated:   May 13, 2016                                    Respectfully submitted,
             New York, New York


                                                         ___/s/ Steven F. Molo_____
Joel Cohen                                               Steven F. Molo
STROOCK & STROOCK & LAVAN LLP                            Robert K. Kry
180 Maiden Lane                                          Justin V. Shur
New York, New York  10038                                MOLO LAMKEN LLP
Telephone: (212) 806-5644                                540 Madison Avenue
Facsimile:  (212) 806-6006                               New York, New York  10022
                                                         Telephone: (212) 607-8160
                                                         Facsimile:  (212) 607-8161

                      *Attorneys for Defendant*