UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA          :

   -*v.*-                           :      S1 15 Cr. 93 (VEC)

SHELDON SILVER,              :

                       Defendant.      :

------------------------------------------------------------x

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S MOTION TO <u>DISMISS THE SUPERSEDING INDICTMENT</u>

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
Attorney for the United States of America

Tatiana R. Martins
Daniel C. Richenthal
Damian Williams
Assistant United States Attorneys

- Of Counsel –

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.   THE DEFENDANT'S MOTION SHOULD BE DENIED ................................................. 2

    A.    Legal Standard Applicable To Motions To Dismiss ............................................... 2

    B.    Federal Rule Of Criminal Procedure 12 ................................................................. 3

    C.    Law Of The Case Doctrine ..................................................................................... 4

    D.    The Defendant Offers No Explanation For Belatedly Raising Arguments That He Could Have Made Before Trial Or On Appeal, But Did Not ................................. 4

    E.    The Defendant Is Not Entitled To Dismissal Or To Limit The Evidence Against Him By Invoking The Statute Of Limitations ....................................................... 5

    F.    The Superseding Indictment Adequately Alleges A Quid Pro Quo ...................... 8

        1.    *McDonnell* Did Not Invalidate the "As Opportunities Arise" Theory of Bribery……………………………………………………………………..8

        2.    The Superseding Indictment Properly Alleges a Quid Pro Quo As to the Asbestos Charges……………………………………………………………10

        3.    The Superseding Indictment Properly Alleges a Quid Pro Quo As to the Real Estate Charges……………………………………………………………..12

        4.    The PACB and Witkoff……………………………………………………...17

    G.    The Superseding Indictment Adequately Alleges Deprivation Of Property, And The Defendant Is Not Entitled To Dismissal On The Ground That The Government's Theories Of Extortion Are Purportedly "Conflicting" .................. 19

    H.    There Is No Legal Basis Or Reason To Dismiss The Forfeiture Allegations ....... 22

CONCLUSION .................................................................................................................... 23

**TABLE OF AUTHORITIES**

**CASES**

*Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952) ................................................ 2, 13

*Costello v. United States*, 350 U.S. 359 (1956) ................................................................. 2

*Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001) ........................................................ 7

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) ............................................................. 4

*Hamling v. United States*, 418 U.S. 87 (1974) ............................................................... 2

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ................................................. passim

*Old Chief v. United States*, 519 U.S. 172 (1997) ........................................................... 18

*United States* v. *Alfonso*, 143 F.3d 772 (2d Cir. 1998) ...................................................... 3

*United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975) ...................................................... 7

*United States v. Certified Envtl. Servs.*, 753 F.3d 72 (2d Cir. 2014 ........................................ 18

*United States v. Coppola*, 671 F.3d 220 (2d Cir. 2012) ...................................................... 20

*United States v. Crowley*, 236 F.3d 104 (2d Cir. 2000) ....................................................... 3

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ................................................. 2, 10

*United States v. DeFiore*, 720 F.2d 757 (2d Cir. 1983) ....................................................... 7

*United States v. Mangano*, No. 16-CR-540, 2018 WL 851860 (E.D.N.Y. Feb. 9, 2018) ............. 9

*United States* v. *Elie*, No. 10 Cr. 33, 2012 WL 383403 (S.D.N.Y. Feb. 7, 2012) .................... 3, 12

*United States v. Elson*, 968 F. Supp. 900 (S.D.N.Y. 1997) ................................................... 3

*United States v. Fofanah*, 765 F.3d 141 (2d Cir. 2014) ...................................................... 21

*United States v. Forrester*, 60 F.3d 52 (2d Cir. 1995) ....................................................... 3

*United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007) ..................................................... 6, 8, 16

*United States v. Goldberg*, 756 F.2d 949 (2d Cir. 1985) ..................................................... 2

*United States v. Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ............................................................ 18

*United States v. Gutierrez*, 181 F. Supp. 2d 350 (S.D.N.Y. 2002) ................................................ 3

*United States v. House*, 636 F. App'x 50 (2d Cir. 2016) ............................................................ 21

*United States v. Klump*, 536 F.3d 113 (2d Cir. 2008) .................................................................. 3

*United States v. Kurniawan*, 627 F. App'x 24 (2d Cir. 2015) ...................................................... 6

*United States v. Margiotta*, 646 F.2d 729 (2d Cir. 1981) ............................................................ 5

*United States v. Menendez*, No. Cr. 15-155, 2018 WL 526746 (D.N.J. Jan. 24, 2018) ............... 9

*United States v. Moloney*, 287 F.3d 236 (2d Cir. 2002) .............................................................. 5

*United States v. Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013) ....................................... 19

*United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) .......................................................... 19

*United States v. Olmeda*, 461 F.3d 271 (2d Cir. 2006) ............................................................ 5, 6

*United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) . 9

*United States v. Perez*, 575 F.3d 164 (2d Cir. 2009) ............................................................... 3, 14

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002) ........................................................... 4

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) .............................................................. 2

*United States v. Reynolds*, No. 85 CR 812, 1986 WL 4089 (N.D. Ill. Mar. 19, 1986) ................. 12

*United States v. Rosen*, 716 F.3d 691 (2d Cir. 2013) .................................................................. 6

*United States v. Rosen*, No. 11 Cr. 300 (JSR) ............................................................................. 6

*United States* v. *Scarpa*, 913 F.3d 993, 1013 (2d Cir. 1990) ................................................... 19

*United States v. Schwartz*, 535 F.2d 160 (2d Cir. 1976) .............................................................. 3

*United States v. Silver*, 864 F.3d 102 (2d Cir. 2017) ........................................................... passim

*United States v. Silver*, 117 F. Supp. 3d 461 (S.D.N.Y. 2015) ............................................... 1, 20

*United States v. Silver*, 184 F. Supp. 3d 33 (S.D.N.Y. 2016) ............................................... passim

*United States v. Skelos*, 707 F. App'x 733 (2d Cir. 2017) ............................................. 9

*United States v. Stochel*, No. 2:16-CR-30, 2016 WL 3951741 (N.D. Ind. July 22, 2016) .......... 12

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ....................................... 2

*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013) ....................................... 2

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ....................................... 3

## RULES

Fed. R. Crim. Pro. 12(b)(3)(B) ....................................................... 4

Fed. R. Crim. Pro. 32.2(a) ....................................................... 22

Fed. R. Crim. Pro. 32.2(b)(1)(B) ....................................................... 22

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

UNITED STATES OF AMERICA           :

    *-v.-*                       :       S1 15 Cr. 93 (VEC)

SHELDON SILVER,                 :

                 Defendant.     :

-----------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S MOTION TO
DISMISS THE SUPERSEDING INDICTMENT**

The Government respectfully submits this memorandum of law in opposition to the

defendant's most recent motion to dismiss the superseding indictment.

**PRELIMINARY STATEMENT**

Having failed in multiple prior attempts to have the charges against him dismissed, the

defendant now seeks to avoid a retrial by claiming yet again that all counts in Superseding

Indictment S1 13 Cr. 93 (VEC) are inadequately pleaded.  Those claims were previously denied.

*United States v. Silver*, 117 F. Supp. 3d 461 (S.D.N.Y. 2015).  The defendant's latest iteration of

the claims—which includes repeating several of the same arguments that this Court, the Second

Circuit, or both have already rejected—fares no better.

<u>**ARGUMENT**</u>

**I.     THE DEFENDANT'S MOTION SHOULD BE DENIED**

**A.     Legal Standard Applicable To Motions To Dismiss**

It long been settled law that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Accordingly, dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks omitted).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Fed. R. Crim. P. 7(c)(1) (alterations omitted)). "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). On a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b), the allegations of an indictment must be taken as true. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

Nor may a defendant seek dismissal based on his assertion that he did not do what he is charged with having done. "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial[,] the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Perez*,

575 F.3d 164, 166-67 (2d Cir. 2009) (internal quotation marks and alteration omitted); *see also, e.g.*, *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ("To the extent that the district court look[s] beyond the face of the indictment and dr[aws] inferences as to proof that would be introduced by the government at trial . . . such an inquiry into the sufficiency of the evidence [is] premature."). In short, "there is no summary judgment in criminal cases." *United States v. Elie*, No. 10 Cr. 33, 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) (rejecting motion to dismiss under this "very well established principle" (internal quotation marks omitted)); *United States v. Gutierrez*, 181 F. Supp. 2d 350, 356 (S.D.N.Y. 2002) (same); *see also, e.g.*, *United States v. Elson*, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("It is well established that an Indictment that is valid on its face may not be dismissed on the ground that it is based on inadequate or insufficient evidence. . . . [T]he Government is not required to demonstrate the sufficiency of its proof until the close of its case-in-chief at trial." (citations omitted)).

## B. Federal Rule Of Criminal Procedure 12

Federal Rule of Criminal Procedure 12 provides that a party waives any motion required to be made prior to trial, if the basis for the motion is then reasonably available, absent a showing of good cause. *United States v. Yousef*, 327 F.3d 56, 124-25 (2d Cir. 2003); *United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008); *United States v. Crowley*, 236 F.3d 104, 110 (2d Cir. 2000); *United States v. Schwartz*, 535 F.2d 160, 163 (2d Cir. 1976). A strategic decision not to pursue a claim until later is insufficient to establish "good cause." *Yousef*, 327 F.3d at 125. So is "inadvertence" to the potential existence of the claim. *Id.*; *see also United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995). Waiver under Rule 12 is "complete," barring review even for "plain error." *Yousef*, 327 F.3d at 125. One type of motion required to be made prior to trial, or else waived absent good cause, is a motion alleging "a defect in the indictment or information," Fed.

R. Crim. Pro. 12(b)(3)(B), including a claim of "lack of specificity," *id.* 12(b)(3)(B)(iii), or "failure to state an offense," *id.* 12(b)(3)(B)(v).

### C.    Law Of The Case Doctrine

The law of the case doctrine has two distinct, but related, components. First, under what is more commonly known as the "mandate rule," a defendant is barred from raising "issues previously waived by the defendant or decided by the appellate court." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Second, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *Id.* (internal quotation marks and citations omitted).

### D.    The Defendant Offers No Explanation For Belatedly Raising Arguments That He Could Have Made Before Trial Or On Appeal, But Did Not

While acknowledging that he previously made a motion to dismiss (Def. Mem. 23, 24), the defendant does not acknowledge Rule 12, the mandate rule, or law of the case, or explain why he now raises certain arguments directed to the face of the Superseding Indictment that he could have—but did not—previously raise, including that all counts "should be limited" to mailings, wires, or transactions during the statute of limitations period (*id.* 1-5), that the charges related to Glenwood and Witkoff allegedly fail under *United States v. Skilling*, 561 U.S. 358 (2010) and *Evans v. United States*, 504 U.S. 255 (1992) (*id.* 14-19, 22-23), that the Government's theories of extortion are purportedly irreconcilably "conflicting" (*id.* 23-29), and that the forfeiture allegations should be dismissed in part (*id.* 29-30). There is at least a reasonable argument that, in these circumstances, the defendant's new arguments need not be considered. *See generally Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("[I]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as

regards the law of the case than one who had argued and lost.").  In any event, as explained below, these arguments have no more merit than his prior ones.

### E.     The Defendant Is Not Entitled To Dismissal Or To Limit The Evidence Against Him By Invoking The Statute Of Limitations

The defendant first moves to dismiss or "limit[]" the Superseding Indictment on the basis that it charges conduct that is time-barred by the applicable five-year statute of limitations.  (Def. Mem. 1-5.)  This argument fails, as it ignores the Second Circuit's longstanding presumption in favor of allowing the Government to aggregate multiple mailings, wires, payments or monetary transactions into a single count as long as they are part of a single scheme.  Silver's argument is also contrary to the Second Circuit's guidance—in this very case—that the Government "need only prove that some aspect of the particular *quid pro quo* scheme continued into the statute of limitations period." *United States v. Silver*, 864 F.3d 102, 122 (2d Cir. 2017).  Therefore, to the extent the defendant insists that the Superseding Indictment or the Government's proof at trial should be cabined to conduct that took place within the five-year statute of limitations, that argument should be rejected.

The Second Circuit has long maintained a "general presumption in favor of allowing a common scheme to be treated as part of a single offense." *United States v. Moloney*, 287 F.3d 236, 240 (2d Cir. 2002).  That presumption permits the Government to plead, for instance, multiple mailings or wire transmissions as part of a single mail or wire fraud count, even though each mailing or wire constitutes a separate offense under 18 U.S.C. §§ 1341 or 1343.  *See, e.g.*, *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (permitting the Government to plead 50 separate mailings in a single count where "the essence of [the] alleged crime is carrying out a single scheme to defraud"); *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("[T]his court has long held that acts that could be charged as separate counts of an indictment

may instead by charged in a single count if those acts could be characterized as part of a single continuing scheme."); *United States v. Kurniawan*, 627 F. App'x 24, 26 (2d Cir. 2015) (holding that defendants "string of mailings in furtherance of his scheme to defraud . . . 'could be characterized as part of a single continuing scheme'" (quoting *Olmeda*, 461 F.3d at 281)).

The Government followed this clear authority—which the defendant does not acknowledge in his motion, much less distinguish—in pleading the honest services, extortion and money laundering schemes, each of which is alleged to have commenced before the statute of limitations period but continued well beyond it. This form of pleading is not unique, particularly in the context of long-running "as opportunities arise" honest services and extortion schemes where the defendant makes "a *commitment* to perform official acts to benefit the payor in the future." *United States v. Ganim*, 510 F.3d 134, 147 (2d Cir. 2007) (emphasis in original); *see, e.g.*, *United States v. Rosen*, No. 11 Cr. 300 (JSR) (charging defendant with, among other things, honest services mail and wire fraud for scheme that spanned 1997 through 2008); *United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013) (affirming conviction and, quoting *Ganim*, remarking that "[o]nce the quid pro quo has been established, . . . the specific transactions comprising the illegal scheme need not match up this for that" (internal quotation marks omitted)). Accordingly, the fact that the Superseding Indictment charges conduct that is alleged to have commenced outside the statute of limitations period does not render it defective; to the contrary, it makes it an accurate description of the continuous schemes that the defendant perpetrated for more than a decade.

Of course, to prove the defendant's guilt at trial, the Government must establish that his schemes continued after February 19, 2010. That is not a heavy burden. As the Second Circuit explained in the defendant's appeal, "[t]he Government need only prove that some aspect of the

particular *quid pro quo* scheme continued into the statute of limitations period." *Silver*, 864 F.3d at 122. The Government intends to offer ample evidence of conduct within that period. For instance, the Government will offer proof of wires and mailings as well as demands for and receipt of additional financial benefits within the limitations period. The Government also anticipates that the Court will once again instruct the jury that it must unanimously agree that at least one specific mailing or wire—of the multiple post-February 19, 2010 mailings and wires listed in the Government's bill of particulars—was used to further the scheme (Trial Tr. 3101), and that it must unanimously find that "any aspect of the crime you are considering continued on or after February 19, 2010" (*id*. at 3117). The Government has no objection to such an instruction, and with it, simply put, there is no risk that the jury will convict the defendant of a crime that is time-barred.

To the extent the defendant's motion to dismiss is actually a motion *in limine* seeking to "limit[]" (Def. Mem. 1, 2, 5) the Government's trial proof to mailings, wires, payments and illicit monetary transactions within the limitations period, then the motion should be denied as baseless. As in the first trial, the Government intends to offer evidence of the defendant's long-running schemes, regardless of whether that evidence pre-dates February 19, 2010, to demonstrate how the schemes started and how they developed over time. There is nothing unusual or improper about such evidence. *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." (citing, *inter alia*, *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975))); *cf., e.g.*, *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) ("[T]he prior act evidence adduced here went directly to establishing [defendant's] intent, as well as the preparations and

plans that went into the scheme . . . and such evidence is admissible even though it antedates the limitations period." (internal quotation marks omitted)).  As noted above, a properly instructed jury will be aware that such pre-limitations proof, while highly probative of the charged crimes, must be coupled with proof that the conduct continued into the limitations period.

### F.     The Superseding Indictment Adequately Alleges A Quid Pro Quo

#### 1.    *McDonnell* Did Not Invalidate the "As Opportunities Arise" Theory of Bribery

The defendant next argues that the Superseding Indictment must be dismissed because, in his view, allegations that bribes were paid in exchange for future official actions as the opportunities arose are legally insufficient to make out a charge for honest services fraud (18 U.S.C. § 1346) or for Hobbs Act extortion (18 U.S.C. § 1951).  The defendant contends, without further elaboration, that the "as opportunities arise" theory of bribery (also known as the "retainer" or "stream-of-benefits" theory) is "not consistent with the Supreme Court's ruling in *McDonnell* that an official act must be 'specific and focused.'"  (Def. Mem. 6 (citing *McDonnell v. United States*, 136 S. Ct. 2355, 2369-70 (2016))).  The defendant is wrong, and his argument is flatly contradicted by the law of this Circuit, this Court's own prior ruling, and the rulings of the other federal courts that have considered this issue.

*McDonnell*'s holding, which narrowed the definition of "official acts" under 18 U.S.C. § 201(a)(3) (a statute not charged in this case) to acts that are "specific" and "focused," 136 S. Ct. at 2372, did nothing to undermine the long-established principle in this Circuit that the official acts that are the subject of the *quid pro quo* do not have to be specified at the time of the corrupt agreement.  *See, e.g.*, *Ganim*, 510 F.3d at 144 (holding that, under federal bribery laws, "it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence—*i.e.*, on behalf of the payor—as specific opportunities

arose." (internal citation omitted)). Indeed, this Court ruled on this precise issue only a few months

ago in *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *5 (S.D.N.Y. Dec.

11, 2017). In *Percoco*, this Court concluded that *McDonnell* did not invalidate the retainer theory

of bribery because the limits it set on the definition of an "official act" simply meant that "the

matter on which official action is *ultimately* taken must be specific and focused," and not that a

*quid pro pro* requires that the parties agree to a specific and definite official act at the time the

corrupt bargain is struck. *Percoco*, 2017 WL 6314146, at *5 (emphasis in original).[1]

This Court's holding in *Percoco* has been supported by other federal courts who have since

faced the same question. *See United States v. Menendez*, No. Cr. 15-155, 2018 WL 526746, at *3-

6 (D.N.J. Jan. 24, 2018) (concluding that "*McDonnell* is not antagonistic to the stream of benefits

theory[, which is]. . . a governmental tool long used to prosecute bribery charges against public

officials"); *United States v. Mangano*, No. 16-CR-540, 2018 WL 851860, at *4 (E.D.N.Y. Feb. 9,

2018) ("As multiple courts have held, *McDonnell* did not eliminate the stream-of-benefits

theory.") (citing *Percoco* and *Menendez*); *see also United States v. Skelos*, 707 F. App'x 733, 738

(2d Cir. 2017) (applying principles of "as opportunities arise" bribery scheme to *McDonnell*

analysis). The Government is not aware of any authority for the opposite conclusion, and the

defendant adduces no argument as to why these holdings should be disturbed other than to assert,

in conclusory fashion, that *McDonnell* will make drafting the jury instructions in this case a "nearly

impossible task." We disagree. In any event, whether or not drafting jury instructions in a

particular case will be a laborious task is not a basis for dismissal of an indictment. *See De La*

---

[1]    In *Percoco*, this Court further noted that *McDonnell* itself reaffirmed earlier Supreme
Court precedents holding that "'a public official is not required to actually make a decision or
take an action. . . ; it is enough that the official agree to do so.'" *Percoco*, 2017 WL 6314146, at
*5 (citing *McDonnell*, 136 S. Ct. at 2370-71 (internal citations omitted)).

*Pava*, 268 F.3d at 165 (dismissal "reserved only for extremely limited circumstances implicating fundamental rights").

> 2. The Superseding Indictment Properly Alleges a Quid Pro Quo As to the Asbestos Charges

The defendant claims that the Superseding Indictment also should be dismissed because it does not allege properly a *quid pro quo* between the defendant and Dr. Taub. This is so, according to the defendant, because none of the "official acts" within the limitations period passes muster under *McDonnell*, and there is no "allegation or evidence connecting the four earlier acts—even if some of them may be 'official'—to the mailings, wires and payments that occurred during the limitations period." (Def. Mem. 8.) The defendant is wrong. He either misreads or ignores the relevant portion of the Second Circuit's binding opinion in his own appeal, advances arguments regarding what the Government must prove at trial that are not properly considered at the motion to dismiss stage, or both.

The defendant's claim that the Superseding Indictment does not properly allege a *quid pro quo* because no official acts occurred within the limitations period misstates controlling Second Circuit law. As an initial matter, even putting aside whether the defendant's agreement to help Dr. Taub with the Miles 4 Meso charity race or his procurement of a job for Dr. Taub's son at OHEL qualify as official acts (and the Government reserves the right to so argue), the Second Circuit explicitly found—and the defendant conceded—that the 2011 Assembly resolution honoring Dr. Taub was an official act under *McDonnell*. *See Silver*, 864 F.3d at 121 ("[t]he Government argues, and Silver concedes, that the resolution is an 'official act' under *McDonnell*. We agree."). Accordingly, contrary to the defendant's argument, there is an indisputable official act alleged within the five-year limitations period. The separate issue of whether the resolution was a sufficiently significant "quo" to justify the amount of money that

the defendant made from the mesothelioma leads is—as the Second Circuit noted—a factual question for the jury.  *See id.*

In any event, whether the proclamation, the charity race or the job at OHEL constitutes an official act under *McDonnell* is immaterial to the legal question of whether the Superseding Indictment properly alleges a *quid pro quo* within the limitations period.  That is because, as the Second Circuit explicitly ruled in *Silver*, "the Government need not prove that an official act occurred within the statute of limitations period.  The Government need only prove that *some aspect* of the particular *quid pro quo* scheme continued into the statute of limitations period."  *Id.* at 122 (emphasis added).  Here, the Superseding Indictment alleges (and the Government expects to prove again at trial) that various aspects of the scheme continued after February 2010, including the defendant's demand for additional referrals from Dr. Taub at a meeting on May 25, 2010; the defendant's continued receipt of mesothelioma leads from Dr. Taub, and wire payments for the associated referral fees; the official proclamation that the defendant sponsored honoring Dr. Taub in May 2011; and various telephone calls and mailings by the defendant and others in furtherance of the scheme.  *See, e.g.*, Superseding Indictment ¶¶ 22, 23(d), 24, and 25. The Superseding Indictment thus contains a plain, concise, and definite recitation of the facts and charges alleged that meets the legal standards set forth in *Silver* and other case law relevant to this litigation.  *Vilar*, 729 F.3d at 80.  Whether the Government can prove that the wires, mailings and other acts (including the official proclamation) that occurred after February 2010 were made in furtherance of the corrupt scheme is a question of fact for the jury and is not

properly the subject of a motion to dismiss. *See, e.g., Elie*, 2012 WL 383403, at *1 ("[T]here is no summary judgment in criminal cases").[2]

### 3. The Superseding Indictment Properly Alleges a Quid Pro Quo As to the Real Estate Charges

The defendant also argues that the Superseding Indictment does not allege properly a *quid pro quo* with respect to the Real Estate Scheme because (1) Glenwood and Witkoff were unaware of the referral fees that the defendant was receiving from the Goldberg & Iriyami law firm such that "those fees cannot possibly be characterized as bribes," (2) the remaining official acts are "insufficient as a matter of law under *McDonnell*," and (3) the Superseding Indictment "fail[s] to state any offense" for the allegations involving Witkoff. (Def. Mem. 14.) The defendant's arguments are not properly raised at the motion to dismiss stage, and in any event, are baseless.

To start, the defendant improperly attempts to shoehorn his view of the evidence adduced at his first trial into a motion to dismiss for purported failure to allege a crime. In particular, the defendant asks this Court for pre-trial dismissal of the real estate charges based on evidence

---

[2]     The defendant cites two unpublished opinions from the Northern District of Illinois in support of his claim that the Superseding Indictment should be dismissed because the Government purportedly cannot connect the mailings and wires from within the limitation period to the state grants to Dr. Taub. (Def. Mem. 12-13.) But those two opinions do not support his motion to dismiss. In *Reynolds*, the court found that the mail fraud counts *were* properly pled as a single scheme spanning 14 years. *United States v. Reynolds*, No. 85 CR 812, 1986 WL 4089, at *8 (N.D. Ill. Mar. 19, 1986). Similarly, in *Stochel*, the court *rejected* the defendant's invitation to dismiss the indictment based on a five-year gap between the alleged theft and the mailing that formed the basis of the mail fraud charge. In doing so, the court noted the uncontroversial proposition that, at trial, "the Government will be put to the task of proving that the scheme alleged in the indictment existed (meaning that the scheme contemplated both obtaining the monies by fraud and lulling his victims into believing no theft had occurred) and that the mailing in question was sent for the purpose of carrying out the scheme or attempting to do so." *United States v. Stochel*, No. 2:16-CR-30, 2016 WL 3951741, at *4 (N.D. Ind. July 22, 2016).

introduced at the first trial that the defendant states demonstrates that Glenwood and Witkoff did not know that Silver was receiving referral fees from Goldberg & Iriyami until late 2011 and 2014, respectively. (Def. Mem. 16.) But the Superseding Indictment contains no allegations regarding when—or even if—Glenwood and Witkoff had knowledge of the referral fees paid to the defendant by Goldberg & Iryami. Rather, the Superseding Indictment alleges that the defendant committed crimes involving Glenwood and Witkoff, and contains more than sufficient allegations to put the defendant on notice of the contours of that scheme. In particular, the Superseding Indictment alleges that the defendant engaged in a secret and corrupt scheme to deprive the citizens of the State of New York of his honest services by doling out State benefits and taking other official acts on behalf of Glenwood and Witkoff in exchange for bribes and kickbacks in the form of personal payoffs, which he accomplished in part through material misstatements and omissions. The allegations in the Superseding Indictment—which must be taken as true, *see Boyce Motor Lines*, 342 U.S. at 343 n.16—include, among others, the following:

- Silver exercised significant power over the real estate industry by virtue of his position as the Speaker of the State Assembly. *See* Superseding Indictment ¶ 10.
- Silver used "the power and influence of his official position" to obtain tax certiorari work from Glenwood and Witkoff, "both of which had significant business before the State." *See id.* ¶ 12.
- Glenwood and Witkoff's business "depended in part on obtaining favorable official action from Silver," and Silver obtained Glenwood and Witkoff's tax certiorari business for Goldberg & Iryami. *See id.* ¶ 13(a).
- "[I]n exchange and in return for Silver's use of his official position," Silver received hundreds of thousands of dollars from Goldberg & Iryami in "illegal payments . . . that were disguised as attorney referral fees." *See id.* ¶ 12.
- Silver met with Glenwood's representatives and lobbyists about certain programs and tax incentives, and about Goldberg & Iryami's representation of certain of Glenwood's buildings. *See id.* ¶ 13(b).
- Silver took official actions to benefit Glenwood in exchange for the payments, including supporting the Rent Act of 2011 in a manner that was "favorable" to Glenwood and Witkoff. *See id.* ¶ 13.

- Silver had "oversight and approval power over certain tax subsidized loans that were sought by and granted to" Glenwood.  *See id.* ¶ 13(f).
- In late 2011, Glenwood executed a "side agreement" with Silver and Goldberg & Iryami "[b]ased on Silver's past favorable official actions" and because Glenwood continued to depend on Silver for favorable legislative treatment.  *See id.* ¶ 13(e).
- Silver made numerous "materially false and fraudulent representations and omissions about his outside income."  *See id.* ¶¶ 6, 9, 26.
- Mailings and wires were sent in furtherance of the scheme.  *See id.* ¶ 15.

In short, the allegations in the Superseding Indictment are more than sufficient to state a claim for honest services fraud and extortion under color of official right, and accordingly, there is no basis for dismissal of the charges.

In any event, even if the Court determines that it may consider evidence from the first trial in deciding the defendant's motion to dismiss the Superseding Indictment—and it should not*, see Perez*, 575 F.3d at 166-67[3]—the defendant's argument that the Government failed in the first trial (and that it will fail in the second trial) to prove that he committed honest services fraud and extortion is meritless.  *First*, the defendant argues that because the evidence at trial included evidence that Glenwood and Witkoff did not know about the referral fees paid to the defendant, the Government cannot prove that the bribe-payors were third parties "who had not been deceived," as the defendant asserts is required by *Skilling* for honest services fraud.  (Def. Mem. 17 (citing *Skilling*, 561 U.S. at 404).)  This is a variation of the argument that Silver made in his Rule 29 motion, in which he argued that the Government failed to prove a *quid pro quo* relationship between Silver and Glenwood and Witkoff.  The Court rejected those arguments then, *see United States v. Silver*, 184 F. Supp. 3d 33 (S.D.N.Y. 2016) ("*Silver* Rule 29 Opinion"),

---

[3]      As the Government has informed defense counsel, the Government continues to investigate this case, and to interview and re-interview witnesses in preparation for trial. Accordingly, the Government does not concede that, simply by virtue of the first trial, it has made a "full proffer of the evidence" that will be presented at the second trial, as required by *Perez*, such that Court may look outside the four corners of the Superseding Indictment.

and to the extent it entertains the defendant's repackaging of the same claim, it should reject them again.

In attempting to re-advance this argument, the defendant ignores the fact that, after Glenwood learned of the referral fees in late 2011, Glenwood executed a secret side agreement with Goldberg & Iryami—with the defendant's knowledge and consent—regarding the continued payment of the referral fees to the defendant for Glenwood's tax certiorari business. *See* Superseding Indictment ¶ 13(e). These continued payments to the defendant were made by a business (Glenwood) that depended on obtaining favorable official action from the defendant with respect to recurring real estate legislation. *See id.* ¶ 13(a). Thus, even under the defendant's own reading of honest services fraud law, for at least part of the charged period, the corrupt payments to him were plainly made by a third party who "had not been deceived."

But the defendant's reading of *Skilling* and subsequent honest services fraud cases is also incorrect. The defendant attempts to read into those cases a requirement that the bribe-payors know precisely how they are benefiting the public official. As this Court already ruled in denying Silver's Rule 29 motion, that is not the law. Rather:

> There is no legal requirement that the payor understand the precise nature of the benefit that is flowing to the public official, and there is no question Glenwood and Witkoff understood that they were transferring their tax certiorari business at Silver's request and for the benefit, at a minimum, of Silver's friend. Glenwood in particular understood that the arrangement was ultimately for Silver's benefit in some, albeit unspecified, way because they were concerned about upsetting and alienating Silver if they took their business away from Goldberg & Iryami. Furthermore, evidence that Glenwood and Witkoff sought to please Silver because they depended on legislation which he predominantly controlled shows that Glenwood and Witkoff were motivated to transfer their business to Goldberg & Iryami for favorable—or, at least, less unfavorable— official action by Silver.

*Silver* Rule 29 Opinion, at 46.  Moreover, as this Court also noted both at the pre-trial and post-trial stages of this case, at least for honest services fraud, "the intent of the bribe giver may be different from the intent of the bribe receiver.  The Government must only prove that the defendant—not the bribe giver—understood that, as a result of the bribe or kickback, he was expected to exercise official influence or make official decisions for the benefit of the giver."  *Id*. at n.7 (internal quotation marks and citations omitted).  There is no question that the Government proved the defendant's corrupt intent at the first trial—and it is *his* intent that matters.

*Second*, the defendant's argument for dismissal of the extortion counts similarly fails.  Citing *Evans*, the defendant argues that he "could not possibly have *known* that Glenwood and Witkoff were paying tax certiorari referral fees *in return* for his vote on the Rent Act when neither real estate developer knew about such payments at the time."  (Def. Mem. at 18 (emphases in original)).  But to establish extortion under color of official right, the Government is required to prove only that a "'public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts.'"  *Ganim*, 510 F.3d at 145 (quoting *Evans*, 504 U.S. at 268).  The Government is not required to prove that any specific official acts are carried out in return for the payment.  *See id.*  Indeed, no official acts need be taken at all; rather, "it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence—*i.e.*, on behalf of the payor—as specific opportunities arise."  *Id.* (internal quotation marks and citation omitted).

Here, again, the defendant ignores the evidence that Glenwood learned in 2011 that the defendant—who exercised enormous authority over recurring real estate legislation that was critical to its business—was receiving referral fees based on its business, and yet Glenwood continued to send its tax certiorari business to Goldberg & Iryami knowing that the defendant

would receive a percentage. There is no suggestion by the defendant that *Evans* or any other case is fatal to these allegations. But even before Glenwood discovered the payments to the defendant, Glenwood (and Witkoff) knew that they were directing their lucrative tax certiorari business to Goldberg & Iryami *at the defendant's request* and because they wanted the defendant to take official action on their behalf, even if they did not know precisely how the defendant was benefiting from the arrangement. *See Silver* Rule 29 Opinion, at 40 (citing trial testimony regarding Glenwood and Witkoff's decision to send business to Goldberg & Iryami in order to obtain access to, and in order not to alienate, the defendant.) As the Government proved at trial (and expects to prove again), the defendant had a relationship with and understanding of Glenwood and Witkoff's business needs, and he used that understanding to demand that they send their lucrative tax certiorari business to the defendant's friend and former counsel, knowing that it would only be given and/or continue to be given because the developers depended on him for renewable legislation that was critical to their businesses. The fact that the defendant knew and understood that the developers were sending their business to Goldberg & Iryami because of and to please (and/or at least not alienate) the defendant is reinforced by the continuation of those payments after Glenwood discovered that the defendant was receiving a percentage of the fees earned by Goldberg & Iryami. Accordingly, the extortion charge related to Glenwood and Witkoff is both properly pled and factually supported (although whether it is factually supported is not ripe for decision at this time) and should not be dismissed.

4. The PACB and Witkoff

The defendant also improperly attempts to limit the Government's proof at trial through his motion to dismiss by arguing, in essence, that the Court should prevent the introduction of

evidence on his PACB votes and the allegations related to Witkoff. (Def. Mem. 19-22.)[4] The

Court should reject these arguments both as premature and meritless.

With respect to the PACB votes, the defendant argues that the Government's failure to

allege expressly that he "actually exercised" his approval power over Glenwood's financial

requests to the PACB, or that he "pressured" or "provided advice" to another public official is

"fatal under *McDonnell*." (Def. Mem. 20.) In the same vein, the defendant claims that the

allegations in the Superseding Indictment related to Witkoff are "insufficient and fail to state an

offense" after *McDonnell*. But even accepting *arguendo* the defendant's cribbed reading of the

totality of the allegations in the Superseding Indictment, *McDonnell* concerned jury instructions,

not the sufficiency of allegations in an indictment. *McDonnell* did not purport to change settled

law concerning what must be alleged in an indictment. As the Second Circuit explained,

---

[4]     The defendant also argues, in essence, that the Government should be precluded from presenting evidence regarding the relocation of the methadone clinic. According to the defendant, because the allegation is not pleaded in the Superseding Indictment and because the evidence at the first trial purportedly did not support a finding that he carried out an official act related to the clinic, the Government should be prevented from introducing this evidence at trial. (Def. Mem. 20-22.) This is not a motion to dismiss. It is a motion *in limine*, as it attempts to limit the Government's proof at trial. It is thus premature. It is also meritless. Notably, the defendant raised this same argument at the first trial in a motion *in limine*, which was rejected by this Court. (10/16/2015 Court Conf.) To the extent that decision is not law of the case, the Court should reject the defendant's motion on the merits again. Even if the Government elects not to argue that the facts surrounding the methadone clinic constituted an official act—a determination the Government is not prepared to, and need not, make at this juncture—the evidence is plainly relevant to tell the story of the mutually-beneficial relationship between the defendant and Glenwood, and as evidence of their corrupt bargain. Federal Rules of Evidence 401 and 402 do not require that each particular piece of evidence prove *all* elements of a completed crime, as the defendant appears to contend. Rather, it is sufficient if the evidence constitutes "a step on one evidentiary route to the ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 179 (1997). As the Second Circuit has explained: "Evidence need not be conclusive in order to be relevant"; rather "[a]n incremental effect . . . is sufficient." *United States v. Certified Envtl. Servs.*, 753 F.3d 72, 90 (2d Cir. 2014) (internal quotation marks omitted); *see also United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (evidence of a crime is not limited to "that which directly establishes an element of the crime"). This evidence more than satisfies the requirements of Rule 401.

whether any of the alleged acts are official under *McDonnell* is a question for a properly instructed jury. *Silver*, 864 F.3d at 119 (holding that a "properly instructed jury might have reached a different conclusion" as to whether certain acts are "official" under *McDonnell*).

In any event, even if the defendant were correct—which he is not—it is unclear what remedy the defendant seeks, since he does not (and could not) argue that the Superseding Indictment or counts therein must be dismissed because of a purported pleading omission in a specific factual allegation. To the extent that the defendant's requests can be interpreted as a request to strike these particular allegations as "surplusage," his argument has no basis in law as the PACB and Witkoff allegations are plainly "admissible and relevant to the charge[s]" and thus "may not be stricken." *United States v. Scarpa*, 913 F.3d 993, 1013 (2d Cir. 1990) (internal quotation marks omitted); *see also United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001); *United States v. Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013) ("[s]tatements providing background are relevant and need not be struck" (citing *Mulder*, 273 F.3d at 99)).

At their core, the defendant's claims are an effort to avoid introduction of evidence that is squarely relevant to the crimes set forth in the Superseding Indictment, not remotely unfairly prejudicial, and well grounded in law and in fact. Those claims should be denied.

G. **The Superseding Indictment Adequately Alleges Deprivation Of Property, And The Defendant Is Not Entitled To Dismissal On The Ground That The Government's Theories Of Extortion Are Purportedly "Conflicting"**

The defendant also seeks dismissal of the Hobbs Act counts on the grounds that (a) the Superseding Indictment inadequately alleges a deprivation of property and (b) the Government's theories of extortion are, in the defendant's view, conflicting or at the very least confusing. (Def. Mem. 23-29.) These arguments are baseless.

As the defendant acknowledges (Def. Mem. 23-24, 29), his first contention, that the Superseding Indictment inadequately alleges a deprivation of property, has previously been

rejected by this Court. *Silver*, 117 F. Supp. 3d at 465-69; *see also Silver* Rule 29 Opinion, at 47-49. The defendant offers no basis for the Court to revisit its prior decision, which is both law of the case and manifestly correct. Instead, the defendant suggests that, on appeal, the Second Circuit may have misunderstood the facts of this case when it stated, in rejecting a different claim—that the evidence presented at trial was insufficient to convict him of extortion—that he "'deprived Dr. Taub, the Developers, and other law firms of property.'" (Def. Mem. 25 (quoting *Silver*, 864 F.3d at 114).) According to the defendant, the reference to "other law firms" is "impossible to understand" because the Hobbs Act requires "that property be obtained with the victim's consent." (Def. Mem. 25.) This argument is meritless, because as this Court previously explained, third-party extortion is a viable legal doctrine, and nothing in the Hobbs Act requires that the property owner be the party that provides "consent." *See Silver*, 117 F. Supp. 3d at 467-68 (citing, *inter alia*, *United States v. Coppola*, 671 F.3d 220, 240-41 (2d Cir. 2012)). The Second Circuit's statement was thus grounded in the law. And in any event, the defendant is precluded from re-litigating what the Second Circuit decided. But even if the defendant were not so precluded, and the Second Circuit had been mistaken in referring to "other law firms," that would not entitle the defendant to the windfall of dismissal of the extortion counts against him.

Nor is the defendant entitled to dismissal to the extent that those counts, in the defendant's view, may be read to encompass both what the defendant terms the "traditional theory of extortion" and what he terms "bribery extortion." As the defendant acknowledges (Def. Mem. 26), the Supreme Court held in *Evans v. United States*, 504 U.S. 255 (1992), that both kinds of conduct are criminal. The defendant appears to wish that Supreme Court had decided otherwise. (*See* Def. Mem. 26-27 (citing the dissent in *Evans*, a state case from 1941, and a Third Circuit decision predating *Evans* by more than twenty years).) It did not.

Taking a different tack, the defendant asserts that even if he is not entitled to dismissal, the "Government must elect a single theory of Hobbs Act extortion before trial." (Def. Mem. 25.) This is self-evidently not a request for dismissal. It is either a motion *in limine* or a request to charge. It is thus premature. It is also meritless. The defendant does not offer an example of any case in any district in which a Court has granted such a request (and the Government is unaware of any). That is unsurprising. As the Court is aware, it is entirely proper for the Government to allege and argue different theories of guilt, including theories that may be in tension or even inconsistent with each other. The only issue this raises is one of proper jury instructions. *See, e.g.*, *United States v. House*, 636 F. App'x 50, 53 (2d Cir. 2016) (different theories of obstruction of justice); *United States v. Fofanah*, 765 F.3d 141, 154 (2d Cir. 2014) (conscious avoidance vs. actual knowledge). The defendant does not argue to the contrary, nor does he request the Court to instruct the jury any differently in this respect from how it was instructed at his first trial.

In any event, even if there were theoretical circumstances in which theories of guilt were so inconsistent that the "Government must elect" one "before trial" (Def. Mem. 25), this is not such a case. What the defendant terms the "traditional theory of extortion" is what *Evans* (which did not use that phrase) described as "takings under a false pretense of official right." 504 U.S. at 269. There is no such allegation in the Superseding Indictment. Rather, as discussed above, what is alleged in the Superseding Indictment; what was argued at trial; what the jury was told it needed to find (as the defendant appears to acknowledge (Def. Mem. 28)); what the Court explained the evidence showed the defendant did, *see Silver* Rule 29 Opinion, at 43 (describing evidence under the heading, "The Government Presented Sufficient Evidence of a Quid Pro Quo for a Rational Jury to Convict Silver of Honest Services Fraud and Extortion Under Color of

Official Right"); and what the Second Circuit affirmed as sufficient was precisely the bribery

conduct that *Evans* held the Hobbs Act criminalizes: "that a public official has obtained a

payment to which he was not entitled, knowing that the payment was made in return for official

acts," 504 U.S. at 267. Put differently, the Government alleged and proved, and the jury found,

that the defendant had, in short, "'tak[en] a bribe.'" *Id.* at 260. That the Hobbs Act *also*

criminalizes "extortion accomplished by fraud," *id.* at 269, is irrelevant in this case.

### H. There Is No Legal Basis Or Reason To Dismiss The Forfeiture Allegations

Finally, the defendant asks this Court to dismiss the forfeiture allegations against him "to

the extent they seek to forfeit property that is not traceable to the alleged offenses." (Def. Mem.

29 (capitalization and bolding omitted).) This request is nonsensical. The Government agrees

that property must be traceable either to proceeds of the offenses charged in Counts One through

Six or to property involved in the money laundering offense charged in Count Seven to be

forfeitable. And that is precisely what the Superseding Indictment's forfeiture allegations say.

*See* Superseding Indictment ¶¶ 46, 48. The defendant is not entitled to the dismissal of

allegations that track the law. The purpose of a forfeiture allegation is to put the defendant on

notice. *See* Fed. R. Crim. Pro. 32.2(a). It need not specify the amount of the money judgment

that the Government will seek, *id.*, and the Superseding Indictment does not do so. But even if it

did so, the defendant would no more be entitled to dismissal of such an allegation on the ground

that he disagrees that property will prove forfeitable or on the amount of a future money

judgment than he is entitled to dismissal of an allegation that he committed a crime. If the

defendant is convicted again, the defendant will have an opportunity to challenge forfeiture

(although this determination, just like all others, is subject to the law of the case doctrine). *See*

*id.* 32.2(b)(1)(B). Until such time, his request is both premature and legally baseless.

**CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied.

Dated: New York, New York
March 2, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: s/_____
Tatiana R. Martins
Daniel C. Richenthal
Damian Williams
Assistant United States Attorneys
(212) 637-2215/2109/2298