USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA,  :
: 15-CR-93 (VEC)
-against-  :
: ORDER & OPINION
:
SHELDON SILVER,  :
:
Defendant.  :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

After appeal and upon remand from the Second Circuit, Defendant Sheldon Silver moves to dismiss the charges against him. Specifically, Silver contends that the Superseding Indictment should be limited to mailings, wires, payments, and transactions made during the limitations period; that it fails to allege a *quid pro quo* as to the asbestos and real estate schemes; that it fails to allege anyone was deprived of property as to the Hobbs Act counts; and that the forfeiture allegations should be dismissed to the extent they exceed the amounts alleged in the Superseding Indictment. Silver's arguments run counter to the law of this Circuit, as well as the law of this very case, as determined by this Court and on appeal. Accordingly, Defendant's Motion is DENIED.

I. **BACKGROUND**

On April 23, 2015, the Government filed a Superseding Indictment charging Silver with two counts of honest services mail fraud, 18 U.S.C. §§ 1341, 1346; two counts of honest services wire fraud, 18 U.S.C. §§ 1343, 1346; two counts of extortion under color of official right, 18 U.S.C. § 1951; and one count of money laundering, 18 U.S.C. § 1957. Superseding Indictment ("SI" or "Superseding Indictment") [Dkt. 32] ¶¶ 33–45. The Superseding Indictment alleges

three schemes that are relevant to this motion: the "asbestos scheme," the "real estate scheme," and the "money laundering scheme."[1]

In the asbestos scheme, Silver (in his capacity as Speaker of the New York State Assembly) allegedly disbursed state funds to a research center with which Dr. Taub, a physician who specializes in the treatment of mesothelioma, was affiliated. SI ¶¶ 16–18, 23.[2] In exchange, Dr. Taub transmitted his patients' information (with their consent) to Silver, who passed the information along to Weitz & Luxenberg, P.C., a law firm with which Silver was affiliated. *Id.* ¶¶ 8(b), 19–23. Many of Dr. Taub's patients retained Weitz & Luxenberg, which, in turn, paid Silver more than $3 million in referral fees. *Id.* ¶ 24.

In the real estate scheme, Silver allegedly used his position as Speaker of the New York State Assembly to steer work from two real estate developers ("the Developers") to Goldberg & Iriyami ("Goldberg"), a law firm in which Silver's former counsel is a partner. SI ¶¶ 10–13. In exchange, Silver regularly met with lobbyists for and representatives of the Developers and "supported legislative proposals favorable to [the Developers]." *Id.* ¶ 13(b), (c), (d). The Developers had not previously engaged Goldberg, but, at Silver's urging, both engaged the firm for some of their tax certiorari business. *Id.* ¶ 13(a).[3] Goldberg, in turn, paid Silver approximately $700,000, representing a percentage of the fees it obtained from the Developers. *Id.* ¶ 14.

---

[1] The Court assumes familiarity with the facts of the case as adduced during the first trial, including the identity of individuals and firms that were identified during the first trial but are anonymized in the Superseding Indictment.

[2] Mesothelioma is a cancer caused almost exclusively by exposure to asbestos.

[3] "Tax certiorari" is the process by which property owners contest the assessment of property values for real estate tax purposes. SI ¶ 11.

Finally, in the money laundering scheme, the Superseding Indictment charges that Silver distributed "his crime proceeds across numerous high-yield investment vehicles not available to the general public," typically featuring high returns with minimal risk. SI ¶¶ 29–30. Beginning around 2006, Silver transferred approximately $642,000 from his bank account into one such investment; those funds had grown to over $1.4 million by January 2015. *Id.* ¶ 32. In 2011, when it became apparent that a change in law would require Silver to disclose his assets to the public, Silver allegedly transferred more than $340,000 in the investment from his name into the name of his wife to avoid public disclosure of the full amount of his investment. *Id.*

On November 30, 2015, a jury convicted Silver on all seven counts in the Superseding Indictment. *See* Verdict Sheet [Dkt. 137]. The Court denied Silver's motions for acquittal and a new trial and sentenced him to, *inter alia*, twelve years of imprisonment and three years of supervised release. *See* Post-Trial Opinion [Dkt. 294]; Amended Judgment in a Criminal Case [Dkt. 297]. On appeal, the Second Circuit found that, although the evidence at trial was sufficient to support conviction on all counts, this Court's jury instructions were improper in light of the Supreme Court's intervening decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016). The Second Circuit remanded the case for retrial. *See Silver*, 864 F.3d 102.

## II. DISCUSSION

Silver seeks to dismiss the Superseding Indictment on various grounds. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss the Superseding Indictment ("Def.'s Mem.") [Dkt. 353]; Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Superseding Indictment ("Reply") [Dkt. 357].

A defendant challenging the sufficiency of an indictment on a motion to dismiss faces a high hurdle. Pursuant to Federal Rule of Criminal Procedure 7, an indictment need only contain

"a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." "An indictment is sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (internal quotation marks omitted). "[T]o satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Stringer*, 730 F.3d at 124 (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)) (internal quotation marks omitted).

"'Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial[,] the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'" *United States v. Perez*, 575 F.3d 164, 166–67 (2d Cir. 2009) (quoting *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998)) (alteration omitted). Instead, an indictment's allegations are taken as true, and the Court reads the indictment in its entirety. *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

Under the "law of the case" doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002)) (internal quotation marks omitted). Relatedly, a defendant may not "relitigat[e] . . . issues previously waived by the defendant or decided by the appellate court." *Quintieri*, 306 F.3d at 1225. A court "may depart

from the law of the case for cogent or compelling reasons including an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson*, 564 F.3d at 99–100 (internal quotation marks and citation omitted).

### A. The Superseding Indictment Is Not Limited to Mailings, Wires, Payments, and Transactions Made During the Limitations Period

Silver's first argument is that, because the various offenses in the Superseding Indictment are subject to five-year statutes of limitations, and because they are not continuing offenses, the Superseding Indictment must be "limited" to the extent that it relies on mailings, wires, payments, and transactions that occurred before February 19, 2010, which is five years before the first indictment was filed.[4] *See* Def.'s Mem. at 1–5; Reply at 3–5; Indictment [Dkt. 9].

. The Government argues that it can aggregate multiple mailings, wires, payments and transactions into single schemes under single counts of the respective criminal charges, and need only prove that some aspect of each scheme continued into the statute of limitations period. *See* Government's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Superseding Indictment ("Opp.") [Dkt. 356] at 5–7. Further, the Government argues that, to the extent this is essentially a motion *in limine* as to what mailings, wires, payments, and transactions the Government can use at trial, it should be denied because there is nothing unusual or improper about the use of such evidence. *Id*. at 7–8.

The Second Circuit "has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006)

---

[4] It is not entirely clear what remedy Defendant is seeking when he argues that the Superseding Indictment should be "limited" to actions during the limitations period. Def.'s Mem. at 1. An indictment is not subject to dismissal because it mentions acts outside the limitations period, but this argument is being raised as part of a motion that is styled as a motion to dismiss.

5

(citations and internal quotation marks omitted). *See also United States v. Kurniawan*, 627 F. App'x 24, 27 (2d Cir. 2015) (finding that defendant's "alleged string of mailings in furtherance of his scheme to defraud wine collectors by selling them counterfeit wine . . . could be characterized as part of a single continuing scheme.") (quoting *Olmeda,* 461 F.3d at 281) (internal quotation mark omitted). Additionally, as the Second Circuit confirmed in this very case, the Government "need only prove that some aspect of the particular *quid pro quo* scheme continued into the statute of limitations period." *Silver*, 864 F.3d at 122 (citations omitted).

The Court finds that the offenses were appropriately charged as single schemes. The Superseding Indictment contains the elements of the offenses charged and fairly informs Silver of the charges against which he must defend, enabling him to plead an acquittal or conviction as a bar to future prosecutions for the same offense. The Second Circuit's explicit determination in this case makes clear that the Government only needs to prove that some aspect of the schemes continued into the statute of limitations period. The Superseding Indictment alleges that conduct associated with the schemes took place within the statute of limitations period, and the Government plans to offer "ample evidence of conduct within [the statute of limitations] period" to satisfy its proof obligation. Opp. at 7; *see, e.g.*, SI at ¶¶ 13, 23, 33, 35, 37, 39, 41, 43. The Court agrees with the Government that consideration of such evidence in the context of a motion to dismiss is premature.[5] In short, the Court finds no basis to dismiss or "limit" the Superseding Indictment; it is sufficient under Rule 7.

---

[5] Although the Second Circuit did not address the money laundering charge in its *Silver* opinion, the Court finds that multiple money laundering transactions may also properly be consolidated into a single count. *See United States v. Moloney*, 287 F.3d 236, 241 (2d Cir. 2002). And although Silver correctly notes that the Superseding Indictment alleges that he began laundering money as early as 2006, it also alleges eight specific transactions, *all* of which occurred *after* February 19, 2010. *See* SI ¶ 45. It is irrelevant to the propriety of the Superseding Indictment that it alleges Silver began laundering his illicit proceeds in 2006 when it is clear that the Government only seeks to convict him based on transactions within the statute of limitations period. Whether evidence of pre-2010 money laundering may be admitted at trial is a different question that does not relate to whether Defendant's motion to

6

To the extent that Silver's motion might be construed as a motion *in limine*, the Court declines to address it at this time, as the Court has entered a separate schedule for such motions. *See* Scheduling Order [Dkt. 349]. But the Court notes that "a statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) (citations omitted).

### B. The Superseding Indictment Sufficiently Alleges Quid Pro Quo Arrangements

#### i. As-Opportunities-Arise Bribery

Silver first asserts that *McDonnell* overruled the "as opportunities arise" theory of bribery alleged in the Superseding Indictment. *See* Def.'s Mem. at 5–7; Reply at 5–7. The Government disagrees. Opp. at 8–10.

The Second Circuit has held that, with regards to federal bribery-related crimes (including Hobbs Act extortion and honest services fraud), "the requisite *quid pro quo* for the crimes at issue may be satisfied upon a showing that a government official received a benefit in exchange for his promise to perform official acts or to perform such acts as the opportunities arise." *United States v. Ganim*, 510 F.3d 134, 142 (2d Cir. 2007). This type of scheme is sometimes referred to as the "retainer theory" of bribery. *See, e.g.*, *United States v. Ring*, 628 F. Supp. 2d 195, 208 (D.D.C. 2009) (citing, *inter alia*, *Ganim*, 510 F.3d at 147–50).

Silver is mistaken when he argues that *McDonnell* found the "retainer" or "as opportunities arise" theory of bribery impermissible. *McDonnell* held only that the matter on which official action is *ultimately* taken must be specific and focused, as evidenced by the

---

dismiss should be granted. Accordingly, Silver has advanced no basis to dismiss this count of the Superseding Indictment.

7

contrast the Supreme Court drew between acts taken to further "Virginia business and economic development" (too diffuse to be an "official act") and the decision to initiate particular research studies (sufficiently focused to be an "official act"). 136 S. Ct. at 2374. The Court acknowledged that, under its precedents, "a public official is not required to actually make a decision or take an action . . . ; it is enough that the official agree to do so." *Id*. at 2370–71 (citing *Evans v. United States*, 504 U.S. 255, 268 (1992)). "A jury could, for example, conclude that an agreement was reached if the evidence shows that the public official received a thing of value knowing that it was given *with the expectation that the official would perform an 'official act' in return*." *Id*. at 2371 (citing *Evans*, 504 U.S. at 268) (emphasis added).

In describing the background of the case, the Supreme Court noted that Governor McDonnell had been "indicted for accepting payments, loans, gifts, and other things of value . . . in exchange for performing official actions on an as-needed basis, as opportunities arose . . . ." 136 S. Ct. at 2364–65. The Court made *no other mention* of the fact that McDonnell had been charged on a retainer theory, and it is apparent that the retainer theory was of no import to the Court's decision relative to the proper definition of "official act" under section 201.[6]

Accordingly, the Superseding Indictment permissibly alleges an as-opportunities-arise theory of bribery.

### ii. The Asbestos Scheme

Silver next contends that the Superseding Indictment fails to sufficiently allege an official act as to the asbestos scheme. *See* Def.'s Mem. at 7–13; Reply at 7–8. More specifically, he

---

[6] As a matter of public policy, it is incomprehensible that Congress would not have intended for bribes paid as "retainers" to be unlawful. The purpose of the anticorruption statutes is broadly to ensure honesty in government. Whether a government official takes a bribe for a specific act known at the time the bribe is paid or takes a bribe to compromise the public good as the opportunity arises to assist the bribe-giver is of no moment—both are corrupt and both corrode the very foundation of good government.

8

alleges that the three alleged acts that occurred within the limitations period are not official acts, and that the alleged official acts prior to the limitations period are not sufficient to sustain a conviction because they are outside the limitations period. *See* Def.'s Mem. at 7–13.

The Government, while reserving the right to argue that the three post-2010 acts were official acts, asserts that the official act supporting the charge need not occur in the limitations period so long as some aspect of the scheme continued into the limitations period. *Id*. at 10–12. The Government specifically points to several paragraphs of the Superseding Indictment that allege continuing aspects of the scheme, including Silver's demand for additional referrals from Dr. Taub at a meeting on May 25, 2010; his continued receipt of mesothelioma leads from Dr. Taub; and the official proclamation that he sponsored honoring Dr. Taub in May 2011. *Id*. at 11 (citing SI ¶¶ 22, 23(d), 24, 25).

As mentioned above, the Second Circuit determined that "the Government need not prove that an official act occurred within the statute of limitations period. The Government need only prove that some aspect of the particular *quid pro quo* scheme continued into the statute of limitations period." *Silver*, 864 F.3d at 122 (citations omitted).

The Court finds that the Superseding Indictment sufficiently alleges a *quid pro quo* arrangement as to the asbestos scheme. In particular, the Superseding Indictment properly alleges an as-opportunities-arose bribery scheme that began in about 2003 and continued until 2014, including activities that constitute aspects of the scheme that continued into the statute of limitations period. *See* SI ¶¶ 22–25. As discussed in the prior section, *McDonnell* has no bearing on the Superseding Indictment's sufficiency, and the "as opportunities arise" theory of bribery remains good law in this Circuit. Looking to the Superseding Indictment as a whole, the Court finds that the honest services fraud and Hobbs Act allegations with regards to the asbestos

9

scheme are sufficient under Rule 7. *See* SI ¶¶ 16–25, 33–35, 40–41. To the extent that Silver argues that the post-2010 acts alone are insufficient to establish a *quid pro quo* arrangement between Silver and Dr. Taub, *see, e.g.*, Reply at 7–8, such an argument is irrelevant. The Government need not rely solely on post-2010 acts to prove its case. Whether it can prove that there was a scheme that included a *quid pro quo* arrangement and that the scheme continued into the limitations period is for the jury to decide; it is of no moment in the Court's determination as to the sufficiency of the Superseding Indictment. Nor will the Government need to prove that, within the limitations period, Silver performed official acts as part of the *quid pro quo* arrangement in order to satisfy its burden of proof. It need only prove that the scheme continued into the limitations period.

### iii. The Real Estate Scheme

Silver challenges the Superseding Indictment as to the real estate scheme, raising arguments as to the various official acts the Government identified as being relevant to this scheme. *See* Def.'s Mem. at 13–23; Reply at 8–14. As to Silver's vote on the Rent Act in 2011, he asserts that evidence from the first trial showed that the Developers were unaware at the time of the vote that Silver was being paid referral fees by Goldberg; those allegations, therefore, are insufficient, he argues, because a party who is so deceived cannot pay a bribe. Def.'s Mem. at 15–19, 22–23; Reply at 8–10. Next, he argues that the Superseding Indictment's allegations as to his role on the Public Authorities Control Board ("PACB") are insufficient because the Government does not explicitly allege that, as purportedly required by *McDonnell*, Silver exercised that power. Def.'s Mem. at 19–20. Silver argues that his opposition to a methadone clinic's planned location is insufficient because it is not included in the Superseding Indictment,

10

and he only took a public position on it, not any official act (and because, again, the Developers were unaware of the referral fees). *Id*. at 20–22.[7]

The Government contends that these arguments are largely based on evidence from the first trial that cannot be considered here, as the Superseding Indictment contains no allegations as to when the Developers learned of the referral fees. Opp. at 12–13. What is in the Superseding Indictment, it argues, is sufficient to state a claim. *Id*. at 13–14. The Government further contends that, to the extent the Court might consider such facts, Silver's argument as to the Developers' knowledge of the referral fees is legally incorrect because, *inter alia*, the Developers did not need to understand precisely how Silver was benefitting from the scheme and because it is Silver's intent, not the Developers', that is central to the charged offenses. *Id*. at 14–17. As to Silver's remaining arguments, the Government notes that *McDonnell* is a case about the adequacy of jury instructions, not the adequacy of allegations in an indictment, so it is misplaced to argue that somehow *McDonnell* would render the Superseding Indictment insufficient. *Id*. at 18–19. The Government asserts that Silver's reading of the PACB allegations ignores the totality of the Superseding Indictment's allegations. *Id*. at 18. And as to the methadone clinic, the Government notes that this is essentially a motion *in limine* in that it attempts to limit evidence used at trial, which is not the proper function of a motion to dismiss. *Id*. at 18 n.4.

To start, the Court agrees with the Government that Silver's arguments are largely based on evidence adduced at the first trial, the sufficiency of which is not properly considered on a

---

[7] Silver argues in his Reply that the Court cannot consider the transfer of the tax certiorari business to Goldberg as constituting a bribe to him because the Superseding Indictment alleges that the referral fees were the bribe. Reply at 10–12. The Court will not consider this argument because it was first raised in Defendant's Reply. *See, e.g.*, *United States v. Gross*, No. 15-CR-769 (AJN), 2017 WL 4685111, at *33 (S.D.N.Y. Oct. 18, 2017). It appears to be an argument that there will be a variance if the Government attempts to argue at trial that the *quid pro quo* was, at some point, the transfer of tax certiorari business to Goldberg rather than the resulting payment of referral fees to Silver. While the argument is premature, the Court's initial reaction is that Silver is slicing the allegations against him too thinly.

11

motion to dismiss. *See Perez*, 575 F.3d at 166–67 (citation omitted).[8] Accordingly, Silver's argument that the Developers did not know of the referral fees at one time or another is irrelevant to the Court's assessment of the Superseding Indictment, as no such facts are adduced there. The Court thus does not reach the parties' arguments as to the legal import of such facts.

Additionally, the Court finds that Silver's arguments purportedly based on *McDonnell* are misplaced. *McDonnell* involved the definition of "official act" as used in jury instructions for bribery charges, and made no law as to what an indictment must allege. *See generally* 136 S. Ct. 2355. *McDonnell* does not require the Superseding Indictment to have specific allegations as to how Silver exercised his PACB authority. Nonetheless, the Court notes that the Superseding Indictment's description of Silver's PACB powers is contained sub-paragraph (f) of paragraph 13, and paragraph 13 begins by stating that "[i]n exchange for his receipt of illegal payments through [Goldberg], SHELDON SILVER, the defendant, took numerous actions . . . ," so that a reading of the Superseding Indictment in its entirety suggests that a subset of the actions Silver took on behalf of the Real Estate Developers were taken through his position on the PACB. *See* SI ¶ 13. As to the methadone clinic, such an argument is premature and irrelevant as there is no mention of the clinic in the Superseding Indictment. And to the extent that Silver generally argues a lack of official acts during the statute of limitations period, *see* Reply at 12–14, the Court has already explained that this is irrelevant; it is sufficient if some aspect of the alleged scheme continues into the limitations period. Further, the determination whether a specific action constitutes an official act is a jury question, and it is not relevant at this stage of the proceedings.

---

[8] The Government asserts that it has continued to investigate the case and has not made a full proffer of the evidence that it intends to present at the retrial. Opp. at 14 n.1.

Reviewing the Superseding Indictment as a whole, the Court finds that it sufficiently alleges a *quid pro quo* arrangement as to the real estate scheme's honest services fraud and extortion counts. *See* SI ¶¶ 10–15; 36–39; 42–43.

### C. The Hobbs Act Count is Sufficiently Pled

Silver renews an argument made prior to his first trial that, in order to allege extortion, an indictment must allege both the acquisition of property and the deprivation of property. His argument is based on his reading of *Sekhar v. United States*, 570 U.S. 729 (2013). Def.'s Mem. at 23–25; Reply at 14–16. He acknowledges that the Court has previously rejected this argument, but asserts that the Second Circuit's opinion reflects confusion regarding the Hobbs Act charges. *Id*. at 23–24 (citing Opinion & Order, July 24, 2015 ("MTD I Opinion") [Dkt. 46] at 4–10; Post-Trial Opinion at 18–22). Silver also argues that the Government's theories of extortion are confusing and irreconcilable because it is pursuing both "traditional" and "bribery" theories of extortion in the same trial. Def.'s Mem. at 26–29; Reply at 16.[9]

The Government contends that the Court has already addressed and rejected Silver's "deprivation" argument and that the Defendant has raised no new arguments worthy of revisiting this issue. Opp. at 19–20. The Government also insists that, while both forms of extortion are criminal under *Evans*, a request that the Government proceed as to a particular theory is properly made as a motion *in limine* or as part of a request to charge. In any event, the Government argues, the Superseding Indictment alleges and the Government has proceeded and intends to proceed on a bribery theory. *Id*. at 20–22.

---

[9] The Defendant's argument is premised on his theory that although "the Hobbs Act covers both traditional extortion and bribery extortion 'under color of official right' after *Evans*, the two charges are inherently conflicting and mutually exclusive." Def.'s Mem. at 26. The Court disagrees with Silver's premise that there is a bright line between traditional bribery and traditional "color of right" extortion. What begins as a bribe scheme can easily morph into a traditional extortion scheme if the payor becomes afraid of retribution if he quits paying. Indeed, it takes no imagination to posit that at any given time, the payor may both be willing to pay for the benefits he is obtaining (traditional bribery) and be afraid to quit paying for fear of retribution (traditional extortion).

13

As explained in the Court's prior opinion, "the Court does not read the *dicta* in *Sekhar* describing 'deprivation' to add an element to Hobbs Act extortion; instead, this Court reads the Supreme Court's language in *Sekhar* merely to underscore the requirement that the victim must transfer the extorted property to the perpetrator (or to a third party as directed by the perpetrator)." Post-Trial Opinion at 18–19 (citations omitted). The Court declines to address this argument further, regardless of Silver's reading of the Second Circuit's opinion, which he explicitly notes did not address this point. *See* Def.'s Mem. at 23 n.15.

As for electing a particular extortion theory, the Court agrees with the Government that such a determination would be, at best, premature, and is not a basis to dismiss the Superseding Indictment. Nonetheless, the Government appears to concede that it is proceeding on a bribery theory of extortion and will continue to do so; Defendant acknowledges that resolves the issue. *See* Opp. at 21–22; Reply at 16.

### D. The Forfeiture Is Not Subject to Dismissal

Finally, Silver argues that because the Superseding Indictment alleges that he received approximately $3.9 million in illegal proceeds but the forfeiture entered after the first trial was $5.4 million, the forfeiture allegations should be dismissed to the extent that they seek forfeiture beyond the $3.9 million in ill-gotten gains alleged in the Superseding Indictment. His theory is that the excess amounts are not traceable to the charges. *See* Def.'s Mem. at 29–30; Reply at 17.

The Government agrees that any forfeiture must be traceable to the offenses, but asserts that there is no basis to dismiss the Superseding Indictment on such grounds because an indictment need not specify an amount of money that is sought to be forfeited. Opp. at 22.

The amount of forfeiture ordered at Silver's first trial is irrelevant to his second trial, and is particularly irrelevant on a motion to dismiss the Superseding Indictment. Forfeiture must be

traceable to an unlawful activity, for which the Government must establish a nexus by a preponderance of the evidence, *see, e.g.*, *United States v. Goldberg*, 661 F. App'x 33, 37 (2d Cir. 2016) (citations omitted), *cert. denied*, 137 S. Ct. 1105 (2017).  To establish a basis for forfeiture, an indictment must contain "notice to the defendant that the government will seek the forfeiture of property as part of any sentence . . . [but the indictment] need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks."  Fed. R. Crim. P. 32.2.  If Silver is convicted again, he certainly may challenge the amount of any forfeiture at sentencing, but the Superseding Indictment sufficiently puts him on notice that the Government will seek forfeiture.  There is no basis to limit the maximum amount that Silver may be required to forfeit.

### III. CONCLUSION

For the foregoing reasons, the Defendant's Motion is DENIED.  The Clerk of Court is respectfully requested to terminate the open motion at Docket Number 351.

**SO ORDERED.**

**Date:  March 20, 2018**　　　　　　　　　　　　　　　　　_____
**New York, New York**　　　　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

15