**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | S1 15 Cr. 93 (VEC) |
| SHELDON SILVER, | |
| Defendant. | |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SHELDON SILVER'S MOTION TO CONTINUE BAIL AND TO STAY FINANCIAL PENALTIES PENDING APPEAL

Michael S. Feldberg
Andrew Rhys Davies
Michael F. Westfal
Rebecca Ann Naeder

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 610-6300
Facsimile:   (212) 610-6399

*Attorneys for Defendant*

Dated:  August 21, 2018
        New York, New York

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     THE GOVERNMENT'S RESPONSE CONFIRMS THAT MR. SILVER HAS
RAISED A SUBSTANTIAL QUESTION THAT ENTITLES HIM TO BAIL
PENDING APPEAL .........................................................................................................2

       A.     At a Minimum, the Court of Appeals *Could* Confirm What It Held In Mr.
Silver's First Appeal—that the Government Needed to Prove an
Agreement to Exchange Official Acts for Bribes ....................................................3

       B.     The Government's New Argument that the Court Required a Quid-Pro-
Quo Agreement on the Hobbs Act Counts Raises a Further Substantial
Question for Appeal—Whether Mr. Silver Was Improperly Deprived of
the Right to Put On a Defense to the Charges Against Him ...................................6

       C.     The Government Cannot Render the Charging Errors Harmless by
Distorting the Evidentiary Record .........................................................................8

II.     THE COURT SHOULD GRANT MR. SILVER'S UNOPPOSED MOTION FOR
A STAY OF THE FINANCIAL PENALTIES PENDING APPEAL ..............................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*McDonnell v. United States*,
   136 S. Ct. 2355 (2016)..............................................................................4

*Pinkerton v. United States*,
   328 U.S. 640 (1946)................................................................................4

*Skilling v. United States*,
   561 U.S. 358 (2010)..........................................................................4, 5, 6

*United States v. Brewster*,
   508 U.S. 501, 536 (1972)........................................................................4

*United States v. Bruno*,
   661 F.3d 733 (2d Cir. 2011).................................................................4, 5

*United States v. Dean*,
   629 F.3d 257 (D.C. Cir. 2011)................................................................5

*United States v. Durham*,
   825 F.2d 716 (2d Cir. 1987)..................................................................8

*United States v. GAF Corp.*,
   928 F.2d 1253 (2d Cir. 1991).............................................................7, 8

*United States v. Morgan*,
   635 F. App'x 423 (10th Cir. 2015) .........................................................5

*United States v. Ring*,
   706 F.3d 460 (D.C. Cir. 2013).............................................................4, 5

*United States v. Rosen*,
   716 F.3d 691 (2d Cir. 2013).................................................................4, 5

**Other Authorities**

10th Cir. R. 32.1......................................................................................5

Mr. Silver respectfully submits this reply memorandum of law in further support of his motion to continue bail and to stay his financial penalties pending appeal (ECF No. 456, "Silver Mem."), and in response to the government's opposition brief (ECF No. 459, "Opp. Br.").

## INTRODUCTION

The only issue on this motion is whether Mr. Silver has raised a substantial question of law or fact that is likely to result in reversal or a new trial if decided in his favor. The government argues that he has not, because (a) the government need not prove even an implicit agreement to exchange official acts for bribes; (b) the jury was charged that it needed to find such an agreement for the Hobbs Act charges; and (c) any charging error is harmless because the government proved the required agreement. As shown below and in our opening brief, the government is wrong on all three points, but at a minimum there is little doubt that Mr. Silver's arguments raise a substantial question of law or fact likely to result in reversal or a new trial if decided in his favor. No more is required, so Mr. Silver's bail should be continued pending appeal.

The government's contention that it need not prove an agreement to exchange official acts for bribes is refuted by every case that has confronted this issue—including the United States Supreme Court and the Second Circuit in this case—except, arguably, for one Tenth Circuit summary order which does not even have precedential effect in the Tenth Circuit. It is also belied by the language of the government's opposition brief, which states that Mr. Silver "solicited and received bribes and extortion payments in the form of referral fees *in exchange for agreeing* to take and taking official actions"; that Mr. Silver "*agreed to take*, and did take, numerous official actions on behalf of Dr. Taub *in exchange for* lucrative leads"; that "*in exchange for* this stream of leads and resulting fees, Silver took a number of official acts"; and

that Mr. Silver "*agreed to* and did take official action on behalf of two real estate developers . . . *in exchange for* personal financial benefits." Opp. Br. at 2-4 (emphases added). The government cannot avoid using the language of agreement, because whether or not there was an agreement is the central issue in this case.

And the government's argument that the Court charged the jury that it had to find an agreement to convict on the Hobbs Act charges is refuted by the Court's own statement at the charging conference that the Court did not agree with the defense position that Hobbs Act extortion requires an agreement: "I don't agree with you on that."  Tr. at 1621.

The government's contention that it did prove an agreement is refuted by the evidence. As the testimony cited by the government demonstrates, Dr. Taub never testified that he had an agreement with Mr. Silver; to the contrary, he testified to his own unilateral thoughts and hopes. And the government has no answer to the unrebutted testimony of the real estate developers that they had no agreement with Mr. Silver, and in fact did not even know he was receiving referral fees.

Finally, the government offers no response at all to Mr. Silver's argument that the financial penalties should be stayed pending appeal. That unopposed motion should therefore be granted for the reasons set forth in Mr. Silver's motion.

## <u>ARGUMENT</u>

### I.     THE GOVERNMENT'S RESPONSE CONFIRMS THAT MR. SILVER HAS RAISED A SUBSTANTIAL QUESTION THAT ENTITLES HIM TO BAIL PENDING APPEAL

The government does not claim that Mr. Silver presents a flight risk or danger to the community or that his appeal is for the purpose of delay. *See* Silver Mem. at 3-5. Therefore, Mr. Silver is entitled to bail pending appeal unless this Court is convinced that he has *no* substantial question of law or fact that is likely to result in reversal or an order for a new trial. *See id.* at 2.

The government's opposition confirms the existence of a substantial appellate issue: the Court's quid-pro-quo charge is correct only if a long line of controlling authority is ignored, on the basis that all of those appellate courts did not mean what they said when they held that the government must prove the existence of an agreement to exchange official acts for bribes.

The government now tacitly recognizes that it overreached in opposing a charge that would have required a finding that Mr. Silver entered into an quid-pro-quo agreement. Remarkably, the government now claims that the Court *did* give a quid-pro-quo-*agreement* charge with respect to the Hobbs Act counts. Accepting that argument, the government has just conceded that Mr. Silver was improperly deprived of his right to put on a defense to the charges against him, when the Court—at the government's urging—prevented him from arguing that he never entered into an agreement with the alleged bribe payors.

Finally, the government cannot render the substantial legal issues insubstantial by arguing that the charging errors were harmless because the government's argument rests on a wholly unsupportable and distorted view of the evidence at trial.

### A.    At a Minimum, the Court of Appeals *Could* Confirm What It Held In Mr. Silver's First Appeal—that the Government Needed to Prove an Agreement to Exchange Official Acts for Bribes

As Mr. Silver has repeatedly shown, there is—at a minimum—a substantial argument that the jury should have been charged that it could not convict on the honest services fraud or Hobbs Act charges unless Mr. Silver entered into an agreement to exchange official acts for bribes. *See* Silver Mem. at 5-21. That is what the Second Circuit held in Mr. Silver's first appeal. *See id.* at 6. And that is what a long line of controlling authority has held. *See id.*

The core of the government's legal argument is that all of these courts did not really mean what they said—that, as the Court put it at the charging conference, when the Court of Appeals said the government needed to prove an agreement, it did not "mean there has to be an

agreement, in the sense of an actual agreement." Tr. at 1567. It is sufficient for purposes of this

motion that the Court of Appeals could well hold that it meant precisely what it said, and that it

might not be prepared to dismiss a long line of case law as merely the product of "[l]oose

language by the Supreme Court." Tr. at 1570.[1]

The government is on no firmer ground with its argument that it need never prove an

agreement unless it charges a conspiracy. *See* Opp. Br. at 11. The very case on which the

government relies acknowledges that for some offenses "the agreement of two persons is

necessary for the completion of the substantive crime." *Pinkerton v. United States*, 328 U.S. 640,

643 (1946). And as Mr. Silver has shown, the Court of Appeals (in this case) and the Supreme

Court (in *Skilling v. United States*, 561 U.S. 358 (2010)) have resolved appeals based on the

principle that collusion (or conspiracy), is what distinguishes a bribe from mere undisclosed self-

dealing. *See* Silver Mem. at 9. Although the government may wish it otherwise, appellate rulings

are no less binding because they appear in sections of the opinion discussing "the facts." Opp.

Br. at 11.

As Mr. Silver has repeatedly shown, *see, e.g.,* ECF No. 353 at n.13, *United States v.*

*Rosen*, 716 F.3d 691 (2d Cir. 2013), *United States v. Bruno*, 661 F.3d 733 (2d Cir. 2011), and

*United States v. Ring*, 706 F.3d 460 (D.C. Cir. 2013), offer no support for the government's

theory that Mr. Silver could turn an innocent payment into a bribe through his unilateral intent.

*Rosen* and *Bruno* support Mr. Silver's view of the law. *Bruno* explicitly references the

---

[1]     The government's cases actually undermine its argument. For example, in *United States
v. Brewster*, the Supreme Court described bribery as the "taking or agreeing to take money for a
*promise* to act in a certain way" and held that the government need not prove that the defendant
"fulfilled the alleged illegal *bargain*." 408 U.S. 501, 526 (1972) (emphasis added); *see also
McDonnell v. United States*, 136 S. Ct. 2355, 2371 (2016) ("*The agreement* need not be explicit,
and the public official need not specify the means that he will use to perform his end of *the
bargain*.") (emphasis added).

requirement to prove an "agreement" or "exchange," and in a case against a public official, the

Second Circuit made specific findings as to the sufficiency of the evidence of the bribe payor's

intent. *Bruno*, 661 F.3d at 743-45. *Rosen*, too, in a section entitled "Quid Pro Quo Agreements"

summarizes the evidence that, in that case, supported the finding that the defendants had entered

into "an illegal quid pro quo agreement." *Rosen*, 716 F.3d at 699-703. And *Ring* addressed the

situation where "a public official is charged with *soliciting* a bribe." 706 F.3d at 468 (discussing

*United States v. Dean*, 629 F.3d 257, 259 (D.C. Cir. 2011)). As the government has conceded on

the record, Mr. Silver was not charged with soliciting bribes.  *See* Tr. at 1658 ("There is no such

thing as a solicitation charge as charged in this case. It does not exist. That is an invention of the

defense.").

The only remaining support for the government's argument is a summary order—*United

States v. Morgan*, 635 F. App'x 423, 431 (10th Cir. 2015). Even if the cited language in *Morgan*,

*see* Opp. Br. at 12, could be read to support the government's unprecedented bribery theory, the

case is inapposite because the defendant, unlike Mr. Silver, was charged with *soliciting* bribes,

where a public official's one-sided intent can be sufficient, 635 F. App'x at 431 n.13. And, in

any event, as an unpublished decision, *Morgan* is not even binding in the Tenth Circuit, let alone

before this Court. *See* 10th Cir. R. 32.1.

Finally, the government casually labels Mr. Silver's due-process argument "frivolous,"

but the fact remains that nothing put Mr. Silver—or anyone else—on notice that (a) a public

official can be convicted of bribery for being influenced, even just a little bit, by industry-

standard referral fees received in his permitted outside employment, or (b) a public official can

be bribed by payments the supposed bribe payors did not know existed.  *Cf. Skilling*, 561 U.S. at

412 (rejecting void-for-vagueness argument because it was "'as plain as a pikestaff'" that the

conduct was illegal) (internal citation omitted). Contrary to the government's argument, *see* Opp. Br. at 13, the absence of any precedent for such a prosecution supports Mr. Silver's argument, not the government's opposition. And the notion that decades of appellate case law—the materials that notify citizens of what the law is—can be retroactively dismissed as "loose language," *see supra* at 4, further heightens the due process violation here.

The briefing on this motion confirms that, at a minimum, there is a substantial issue to be addressed on appeal as to whether the jury was correctly charged on the quid-pro-quo element. As the government aptly put it during the charging conference, this "will be a nice issue on appeal." Tr. at 1598. No more is required. Mr. Silver's bail should be continued pending appeal.

> **B.      The Government's New Argument that the Court Required a Quid-Pro-Quo Agreement on the Hobbs Act Counts Raises a Further Substantial Question for Appeal—Whether Mr. Silver Was Improperly Deprived of the Right to Put On a Defense to the Charges Against Him**

Hedging its bets in an attempt to defend the Hobbs Act convictions even if the charging error results in reversal of the honest services fraud convictions, the government now asserts that the Court *did* instruct the jury that it needed to find an agreement or a "meeting of the minds" to convict Mr. Silver of Hobbs Act extortion. *See* Opp. Br. at 18. The government is absolutely wrong, but its argument—if accepted—confirms that Mr. Silver was improperly prevented from putting on a defense to the charges against him when the Court prevented him from defending himself on the ground that there was no agreement.

There is no basis for the government's new argument—that the Court actually instructed the jury that it needed to find a quid-pro-quo agreement before it could convict on the Hobbs Act counts. Mr. Silver requested, on the Hobbs Act counts, an instruction that the government needed to prove "that Mr. Silver performed or agreed to perform an official act in exchange for the extorted property, that is, a bribe." *See* ECF No. 397-1, at 3. The government opposed that

instruction. *See* Tr. at 1597-98. The Court acknowledged Mr. Silver's request for a Hobbs Act instruction requiring the jury to find "an agreement," but unambiguously rejected it, stating "I don't agree with you on that." *Id.* at 1621.

Thus, on the Hobbs Act counts as on the honest services fraud charges, the jury was not instructed that the government needed to prove an agreement to exchange official acts for bribes. To be sure, the Court compounded that error in the honest-services fraud context by going on to tell the jury that the alleged bribe payor's state of mind was irrelevant. But the sentence the government cherry picks from the Hobbs Act charge, *see* Opp. Br. at 16, said nothing about an agreement, and therefore did nothing to correct the Court's erroneous failure to provide the requested instruction.[2] Nor can the government now plausibly claim that the jury was given a meaningfully different instruction on the Hobbs Act counts, given its representations to the jury "that the core of all these offenses is the same." Tr. at 1952.

If, however, the Court were to credit the government's new argument—that the jury *was* required to find a quid-pro-quo agreement to convict on the Hobbs Act—then Mr. Silver is entitled to bail pending appeal because the government thereby concedes that Mr. Silver was improperly prevented from defending himself on the ground that he did *not* enter into an agreement to exchange official acts for bribes.

Mr. Silver had—and has—a constitutional right to present a defense to the charges against him. *See, e.g., United States v. GAF Corp.*, 928 F.2d 1253, 1262-63 (2d Cir. 1991) (reversing conviction on the basis that the district court "precluded the defendants from receiving

---

[2]     The government's interpretation of the Court's Hobbs Act instruction also fails to account for the instruction that "if you find that Mr. Silver accepted the property intending, at least in part, to take official action in exchange for those payments as the opportunity arose, *then this element has been satisfied*."  ECF No. 399 at 26 (emphasis added).  If the jury followed this instruction, as the government directed it to, Opp. Br. at 17, then it necessarily was *not* required to find an agreement between Mr. Silver and the supposed bribe payors.

fair consideration of their defense"); *United States v. Durham*, 825 F.2d 716, 718-20 (2d Cir.

1987) (reversing conviction where district court's failure to include specific intent defense theory

in its jury instruction "could have caused the jury to conclude that the defense theory was not

valid under the law, and, accordingly, should not be considered"). Yet the Court—at the

government's urging—(a) precluded the defense from arguing that Mr. Silver never entered into

a quid-pro-quo agreement—including by sustaining an objection during the opening statement;

(b) refused to instruct the jury that Mr. Silver's defense was that he never entered into a quid-

pro-quo agreement; and (c) allowed the government to argue throughout its summation that a

quid-pro-quo does *not* require proof of an agreement between Mr. Silver and the supposed bribe

payors and that the only state of mind that matters is that of Mr. Silver. If—as the government

now claims—the jury *was* instructed to find a quid-pro-quo agreement, then all of these rulings

erroneously precluded Mr. Silver from answering the charges against him, raising a further

substantial issue for appeal.

### C.   The Government Cannot Render the Charging Errors Harmless by Distorting the Evidentiary Record

The government now seeks to skate around the legal errors it induced the Court to make

by arguing that it does not matter because there was sufficient evidence of an agreement.[3] There

---

[3]   Mr. Silver does not address all of the errors and omissions in the government's lengthy "Statement of Facts," *see* Opp. Br. at 2-8, because most of it has nothing to do with this motion and is not even referenced in the government's argument, *see id.* at 8-18. Among the more striking points, however, the government points to Mr. Silver's failure to specifically list Goldberg & Iryami on his annual disclosure forms as evidence of his "secrets and lies that continued until soon before his arrest." Opp. Br. at 5-6. But the government fails to note that at his first trial, Lisa Reid testified that Mr. Silver only needed to list "law practice" as the source of outside income on his disclosure forms, and that the government induced the Court to preclude her testimony at Mr. Silver's second trial by misrepresenting that the government inadvertently failed to object to that testimony at the first trial. *See* ECF No. 405, at 16-17, n.3. The government also claims that it proved that Mr. Silver "used the power of his office, *and the promise and threat of official action*, to get Glenwood and Witkoff to send their tax certiorari business to the Goldberg Firm, which netted him hundreds of thousands of dollars in kickbacks."

is no basis for this argument, which is entirely inconsistent with how the government framed its case during trial, telling the Court: "It is not our allegation that Mr. Silver entered into a quid pro quo arrangement with Glenwood and Witkoff or Dr. Taub with regard to bribery.  That is just not our theory. " Tr. at 1568.

The government tacitly concedes, as it must, that the charging errors were *not* harmless as to the real estate charges, because there was *no* evidence to prove an agreement between Mr. Silver and the real estate developers. *See* Opp. Br. at 14-16. The supposed bribe payors provided consistent, unrebutted testimony that they did not send business to Goldberg & Iryami in exchange for official action from Mr. Silver. *See* ECF No. 456, at 13-14.

And as to the asbestos charges, the harmlessness argument rests on unsupportable distortions of Dr. Taub's testimony. The government is simply wrong that Dr. Taub "testified that he understood that there *was* an agreement[.]" Opp. Br. at 2 (emphasis in original). Despite an extraordinary number of preparation sessions with the government, Dr. Taub never testified about any "agreement." Tr. at 227-414. The government is also wrong that Dr. Taub testified "that *he and Silver* had an 'implicit understanding' that he would exchange mesothelioma referrals for official action from Silver." Opp. Br. at 14 (emphasis added). Dr. Taub testified that whatever "understanding" he was referencing—and he never managed to articulate it in any comprehensible fashion—existed solely within his own head and was never communicated to Mr. Silver. *See* Tr. at 273-74, 381 ("A: . . . It was my understanding. Q: Just you? A: Yes."). Further, any doubt about the sufficiency of Dr. Taub's evidence to prove an agreement to

---

Opp. Br. at 4 (emphasis added). There is no evidence that Mr. Silver ever *promised* official action to Glenwood or Witkoff or that he ever *threatened* them in any way, shape, or form. Finally, the government asserts that the reason Mr. Silver stopped funding Dr. Taub's research was because of a change in disclosure rules, Opp. Br. at 4, when the evidence established that the updated disclosure rules started in March 2007, Tr. at 568, and the second HCRA grant to Dr. Taub was signed in April 2007 and approved in June 2007. GX 368-3.

exchange official acts for bribes is dispelled by his clear, unrebutted testimony that when he sent referrals to Mr. Silver, he did not expect anything in return. Tr. at 372. The charging error is therefore far from harmless.

## II.   THE COURT SHOULD GRANT MR. SILVER'S UNOPPOSED MOTION FOR A STAY OF THE FINANCIAL PENALTIES PENDING APPEAL

Mr. Silver has shown that the Court should stay his financial penalties pending appeal. As Mr. Silver demonstrated, although a stay would not harm the public interest, Mr. Silver and his wife would suffer irreparable harm absent a stay. If Mr. Silver is successful on appeal, the Court will be unable either to undo the sale of the family home or to discharge the tax liability that would arise if Mr. Silver were to liquidate his pension to pay the penalties. *See* Silver Mem. at 15-17.

The government offers no response at all to Mr. Silver's request for a stay of his financial penalties pending appeal. The Court should therefore grant that stay for the reasons set forth in Mr. Silver's motion.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Mr. Silver's motion for continued bail pending appeal and stay the fine and forfeiture order.  In the event the Court denies this motion, to afford the Court of Appeals time to evaluate Mr. Silver's arguments in a non-emergency setting, Mr. Silver respectfully requests that the Court continue his bail and stay his surrender date and the payment of the fine and forfeiture order until thirty days after the Court of Appeals has denied a motion for bail and/or for a stay.

Dated:  August 21, 2018                                  Respectfully submitted,
            New York, New York


                                                                  /s/ Michael S. Feldberg
                                                                 Michael S. Feldberg
                                                                 Andrew Rhys Davies
                                                                 Michael F. Westfal
                                                                 Rebecca Ann Naeder

                                                                 ALLEN & OVERY LLP
                                                                 1221 Avenue of the Americas
                                                                 New York, NY 10020
                                                                 Telephone:  (212) 610-6300
                                                                 Facsimile:  (212) 610-6399

                                                                 *Attorneys for Defendant*